Marcia Hofmann (SBN 250087)
Law Office of Marcia Hofmann
25 Taylor Street
San Francisco, CA 94102
Telephone: (415) 830-6664
marcia@marciahofmann.com

D. Victoria Baranetsky (*pro hac vice application pending*)
FREEDOM OF THE PRESS FOUNDATION
601 Van Ness Ave., Suite E731
San Francisco, CA 94102
Telephone: (415) 767-5566
victoriabaranetsky@gmail.com

Attorneys for Plaintiff
FREEDOM OF THE PRESS FOUNDATION

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FREEDOM OF THE PRESS FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>Defendant. | **COMPLAINT FOR INJUNCTIVE RELIEF** |

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief. Plaintiff seeks the expedited processing and release of records requested from the Federal Bureau of Investigation concerning the procedures by which the Bureau issues National Security Letters and exigent letters to investigate members of the press. There is no dispute that the requested records concern a matter about which there is "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 5 U.S.C. § 552(a)(6)(E)(v)(II); 28 C.F.R. § 16.5(d)(1)(iv). Therefore, Plaintiff is statutorily entitled to the expedited treatment it seeks.

**PARTIES**

2. Plaintiff Freedom of the Press Foundation ("FPF") is a non-profit organization established under the laws of the State of California, with its primary office in San Francisco, California. The organization's mission is to advocate for government transparency and accountability by preserving the rights guaranteed to the press under the First Amendment and fortifying the public's right to know. As part of that mission, FPF campaigns for policy changes to protect members of the media, educates the public about government protocols and procedures involving the press, and supports the development of technology to protect investigative newsgathering. FPF also uses FOIA to obtain and publish documents detailing government activities that impinge on press freedom.

3. Defendant Department of Justice ("DOJ") is a Department of the Executive Branch of the United States Government. DOJ is an "agency" within the meaning of 5 U.S.C. §552(f)(1). The Federal Bureau of Investigation ("FBI") and Office of Information Policy ("OIP") are components of DOJ.

**JURISDICTION**

4. The Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

**VENUE AND INTRADISTRICT ASSIGNMENT**

5. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

6. Assignment to the San Francisco division is proper pursuant to Local Rule 3-2(c) and (d) because a substantial portion of the events giving rise to this action occurred in this district and division, where Plaintiff is located.

//

//

//

## FACTUAL BACKGROUND

### The DOJ's Guidelines for Obtaining Information About the Media and Recent Surveillance of Journalists in Leak-Related Investigations

7. The DOJ maintains special regulatory guidelines instructing federal officers how to gather information about members of the news media during investigations, which are codified at 28 C.F.R. § 50.10 (hereafter "Media Guidelines," discussed more below). To protect the First Amendment interests of the press, the Media Guidelines require agents to observe advance procedures before they can compel production of reporters' telephone records and other information about members of the press.

8. The Media Guidelines have recently undergone two revisions in the wake of public criticism of the Obama Administration's heightened focus on journalists in investigations of leaked classified information.

9. To date, the Administration has filed criminal charges against eight government whistleblowers for allegedly leaking classified information to members of the media in violation of the Espionage Act of 1917, 18 U.S.C. §§ 793 and 798. All previous presidential administrations combined have filed Espionage Act charges in only three leak-related cases.

10. On May 13, 2013, the Associated Press revealed that the DOJ had secretly seized telephone records for at least twenty phone lines used by the media organization's reporters and editors to communicate with confidential sources and others. Letter from Gary Pruitt, Executive President and CEO, Associated Press, to Attorney General Eric Holder, Department of Justice (May 13, 2013), http://www.ap.org/Images/Letter-to-Eric-Holder_tcm28-12896.pdf. At that time, the U.S. Attorney's Office in the District of Columbia was conducting an ongoing investigation into the leak of information about a Central Intelligence Agency operation disrupting of a Yemen-based terrorist plot. The AP condemned the government's conduct as a "serious interference" with its First Amendment rights. *Id.*; *see also* Charlie Savage and Leslie Kaufman, *Phone Records of Journalists Seized by U.S.*, N.Y. TIMES, May 13, 2013, at A1, http://nyti.ms/1xVYWfe.

11. Six days later, media outlets reported that the DOJ had investigated James Rosen,

chief Washington correspondent for Fox News, in connection with a possible leak of classified information by a government contractor. Ann E. Marimow, *A Rare Peek Into a Justice Department Leak Probe*, WASHINGTON POST, May 19, 2013, http://wapo.st/115Hzqg. The DOJ reportedly "used security badge access records to track the reporter's comings and goings from the State Department," "traced the timing of his calls with a State Department security advisor," and "obtained a search warrant for the reporter's personal email." *Id.* When applying for that search warrant to the court, an investigative agent characterized Rosen in an affidavit as an "aider, abettor, and/or co-conspirator" to the leak in violation of the Espionage Act. *Id.*

12. Furthermore, Pulitzer Prize-winning *Washington Post* reporter Barton Gellman believes the FBI obtained his phone records through a National Security Letter. Darren Samuelsohn, *Barton Gellman Aware of Risks,* POLITICO, Feb. 25, 2014, http://www.politico.com/blogs/media/2014/02/barton-gellman-ready-for-doj-183998.html.

13. Reports of the DOJ's investigation of journalists from the Associated Press and Fox News have prompted government watchdogs, news agencies, and First Amendment scholars to express grave concern about the DOJ's surveillance of the press. *See, e.g.*, ACLU and Human Rights Watch, *The Impact of Digital Surveillance on Journalists, Lawyers, and Human Rights Defenders* (2014); Ann E. Marimow, *Justice Department's Scrutiny of Fox News Reporter James Rosen in Leak Case Draws Fire*, WASHINGTON POST, May 20, 2013, http://wapo.st/18ZTg9P; Leonard Downie Jr. and Sara Rafsky, *The Obama Administration and the Press*, COMMITTEE TO PROTECT JOURNALISTS, Oct. 10, 2013, https://cpj.org/x/5729.

14. Members of Congress have also voiced alarm about the DOJ's investigation of journalists in criminal leak-related matters. Letter from Chairman Bob Goodlatte, United States House Judiciary Committee, and Chairman F. James Sensenbrenner, Jr., Crime, Terrorism, Homeland Security, and Investigations Subcommittee, to Attorney General Eric Holder, Department of Justice (May 29, 2013), http://judiciary.house.gov/index.cfm/press-releases?ID=1B5AA9A4-C8E0-B782-473E-C7B3BF895DD2; *see also House Republicans Challenge Holder Testimony on Reporter Surveillance*, FOXNEWS.COM, May 29, 2013, http://fxn.ws/12OsiNz.

**The FBI's Longstanding and Well Documented Misuse of National Security Letters and Exigent Letters, Including in Leak-Related Investigations**

15. 18 U.S.C. § 2709 authorizes the FBI to issue National Security Letters ("NSLs") to obtain subscriber information, toll billing records, and transactional records from wire or electronic communications service providers in national security investigations. The FBI issues these NSLs without any prior judicial review, and Section 2709(c) allows the FBI to impose an indefinite nondisclosure order on an NSL recipient.

16. Section 2709 NSLs are a highly controversial investigative tool. Indeed, this Court has held that parts of the NSL statutory framework are facially unconstitutional because they violate the First Amendment and separation of powers principles. *In re NSL*, 930 F. Supp. 2d 1064, 1081 (N.D. Cal. 2013). That decision is stayed pending an appeal in which the Ninth Circuit is considering three consolidated cases challenging the constitutionality of the NSL statutory framework. *Under Seal v. Lynch*, Nos. 13-15957, 13-16731, 13-16732 (9th Cir. argued Oct. 8, 2014). At least one other action is currently pending in this Court disputing the constitutionality of the framework. *Twitter, Inc. v. Lynch*, No. 4:14-cv-04480-YGR (N.D. Cal. filed Oct. 7, 2014).

17. The Department of Justice Office of Inspector General ("OIG") has issued two reports exhaustively documenting the FBI's widespread, systematic misuse of NSLs between 2003 and 2006. *See generally* Department of Justice Office of the Inspector General, *A Review of the Federal Bureau of Investigation's Use of National Security Letters* (March 9, 2007) ("2007 Report"); Department of Justice Office of the Inspector General, *A Review of the FBI's Use of National Security Letters: Assessment of Corrective Actions and Examination of NSL Usage in 2006* (March 2008) ("2008 Report").[1]

18. While the FBI adopted some corrective measures in response to the OIG's findings, a follow-up report issued in 2014 found that the FBI may have continued to issue NSLs beyond the scope permitted by Section 2709. Department of Justice Office of the Inspector General, *A Review of the Federal Bureau of Investigation's Use of National Security Letters: Assessment of Progress*

[1] The OIG reports cited in this complaint are available at www.usdoj.gov/oig.

*in Implementing Recommendations and Examination of Use in 2007 through 2009* viii (Aug. 2014) ("2014 Report").

19. In a separate report prompted by the findings in the 2007 and 2008 Reports, the OIG determined that the FBI also issued hundreds of so-called "exigent letters" and used other informal methods to obtain telephone records from three major telephone carriers without serving prior legal process. 2007 Report at 87-98; *see generally* Department of Justice Office of the Inspector General, *A Review of the Federal Bureau of Investigation's Use of Exigent Letters and Other Informal Requests for Telephone Records* (Jan. 2010) ("2010 Report").

20. The exigent letters were not authorized by any law, flouted internal FBI policy, and violated the Attorney General's Guidelines for FBI National Security Investigations and Foreign Intelligence Collection. 2007 Report at 95-99; 2010 Report at 10-11.

21. The OIG identified at least three media leak investigations in which the FBI improperly used an exigent letter and grand jury subpoenas to obtain telephone records or calling activity information for telephone numbers assigned to reporters. 2010 Report at 89-122.

22. The FBI issued the exigent letter to obtain toll billing records of reporters for the *Washington Post* and *New York Times*. 2010 Report at 37.

23. While the DOJ's Media Guidelines detail procedures for issuing subpoenas in media-related investigations, the procedures do not address the use of NSLs or exigent letters to obtain information about members of the press.

24. With respect to the three media leak investigations discussed in the 2010 Report, the OIG found that the FBI failed to comply with the Media Guidelines and DOJ policy requiring "Attorney General approval and a balancing of First Amendment interests and the interests of law enforcement before issuing subpoenas for the production of reporters' telephone toll billing records." 2010 Report at 89.

25. The OIG recommended that the FBI and the Department implement specific controls and procedures to correct the misuses of investigative authority detailed in the 2007, 2008, and 2010 reports. 2014 Report at viii.

26. According to the 2014 Report, the FBI did in fact implement "specific [new]

procedures" in 2011 for investigations involving the media (as indicated by the citation to 28 C.F.R. § 50.10):

> Response: Shortly after the issuance of our Exigent Letters Report, the FBI and the Department stated their intention to review current policies and procedures governing [redacted]. When the FBI reissued the DIOG in October 2011, the FBI incorporated specific procedures for [redacted]. These procedures require: ( [redacted]. Further, in a circumstance where the [redacted] during the course [redacted], the procedures require that the FBI obtain the approval of the Attorney General pursuant to 28 C.F.R. § 50.10.

2014 Report at 179.

27. The OIG also recommended that the FBI's procedures for obtaining information about members of the media should be reviewed by the DOJ because of "significant First Amendment issues."

> In addition, we determined that the FBI should take further steps to address our recommendation concerning [redacted]. In our Exigent Letters Report, we found that the FBI conducted [redacted] the FBI had obtained in response to an exigent letter. The FBI agents [redacted]. Because of the significant First Amendment interests implicated by such [redacted], as well as operational considerations such as obtaining cooperation when necessary in future exceptional circumstances, we recommended that the Department re-evaluate the policies governing the [redacted] and consider under what circumstances FBI personnel may conduct [redacted], including whether approval by senior FBI officials at the level of an Assistant Director or higher should be required for the conduct of [redacted].
>
> Since that time, on July 12, 2013, the Department issued a report, *Report on Review of News Media Policies*, which made revisions to the Department's policies regarding investigations that [redacted]. Although this report did not specifically address [redacted], we believe the FBI should consult with the Department to determine whether the recent policy changes warrant any revisions to the DIOG's procedures for conducting [redacted], including the approval level required before such [redacted].

2014 Report at 192.

28. These excerpts suggest that the FBI has specific procedures for obtaining information about journalists through NSLs or exigent letters that are not specifically addressed in the Media Guidelines, and are therefore unknown to the public.

**The DOJ's Recently Updated Media Guidelines Fail to Include Procedures for Issuing National Security Letters or Exigent Letters**

29. On July 12, 2013, in response to criticism from the press, public, and members of Congress about increased investigation of the media in leak-related investigations, the DOJ issued a report stating that the Department would update the Media Guidelines. Department of Justice, *Report on Review of News Media Policies*, July 2013, http://www.justice.gov/iso/opa/resources/2202013712162851796893.pdf.

30. In a statement to the *New York Times*, a DOJ spokesman said that although the updated Media Guidelines would not include procedures for issuing NSLs to obtain information about members of the media, the FBI's issuance of NSLs is subject to an "extensive oversight regime." Charlie Savage, *Holder Tightens Rules on Getting Reporters' Data*, N.Y. TIMES, July 12, 2013, at A1, http://nyti.ms/1SLxxbJ.

31. The DOJ published a final rule updating the Media Guidelines in the Federal Register on February 27, 2014. The rule did not address the FBI's procedures for issuing NSLs or exigent letters to obtain information about members of the press. Policy Regarding Obtaining Information From, or Records of Members of the News Media; and Regarding Questioning, Arresting or Charging Members of the News Media, 79 Fed. Reg. 10989-01 (Feb. 27, 2014) (amending 28 C.F.R. § 50.10).

32. In January 2015, several months after the OIG's 2014 Report confirmed that the FBI had new procedures for gathering information about the media, the DOJ published another final rule in the Federal Register amending the Media Guidelines. Again, the updated policy included no procedures for issuing NSLs or exigent letters to obtain information about members of the press. Updated Policy Regarding Obtaining Information From, or Records of Members of the News Media; and Regarding Questioning, Arresting or Charging Members of the News Media, 80 Fed.

Reg. 2819-01 (Jan. 21, 2015) (amending 28 C.F.R. § 50.10).

**Plaintiff's FOIA Request and Request for Expedited Processing**

33. In a letter to the FBI dated March 10, 2015, FPF requested under the FOIA all records from January 2009 to the present concerning:

> (A) the extensive regime, rules, guidelines, or infrastructure that oversees the issuance of NSLs or exigent letters to obtain records regarding a member of the media;
>
> (B) the current procedures that FBI agents must undertake in advance of issuing a NSL or exigent letter to obtain records regarding any member of the media, including any pre-approval process;
>
> (C) the current procedures that FBI agents must undertake after issuing a NSL or exigent letter to obtain records regarding any member of the media, including any mandatory subsequent reporting process; and
>
> (D) any changes in FBI policy, procedure, or practice after the issuance of the U.S. Department of Justice, *Report on Review of News Media Policies* (2013) and U.S. Department of Justice, *Updated Policy Regarding Obtaining Information From, or Records of, Members of the News Media; and Regarding Questioning, Arresting, or Charging Member of the News Media* (2015).

34. FPF asked that the processing of the request be expedited because disclosure of the requested documents is in the public interest and "[a] matter of widespread and exceptional media interest in which there exist[s] possible questions about the government's integrity which affect public confidence." 5 U.S.C. § 552(a)(6)(E)(v)(II); 28 C.F.R. § 16.5(d)(1)(iv).

35. By letter dated March 20, 2015, the FBI acknowledged receipt of FPF's FOIA request and informed FPF that its request for expedited processing had been granted.

36. To date, the FBI has not made a final determination on FPF's request.

37. By letter to OIP dated May 18, 2015, FPF appealed the FBI's constructive denial of the request.

38. By letter dated July 1, 2015, OIP acknowledged receipt of FPF's appeal on June 2, 2015.

39. By letter dated July 15, 2015, OIP informed FPF that the request was being

processed, but stated that no final determination had yet been made by the FBI.

40. In a telephone conversation on July 23, 2015, the FBI informed counsel for FPF that the processing of the request would take approximately seven months to complete.

41. The DOJ has not only failed to expedite the processing of FPF's request, but has also exceeded the generally applicable 20-day deadline for the processing of *any* FOIA request.

42. FPF has exhausted all applicable administrative remedies.

43. The DOJ has wrongfully withheld the requested records from FPF.

## CAUSE OF ACTION

### Violation of the Freedom of Information Act for Wrongful Withholding of Agency Records

44. Plaintiff repeats and realleges paragraphs 1-43.

45. The DOJ has wrongfully withheld agency records requested by Plaintiff by failing to comply with the statutory time limit for the processing of Plaintiff's FOIA request.

46. Plaintiff has exhausted the applicable administrative remedies with respect to the FBI's wrongful withholding of the requested records.

47. Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents.

//

//

//

//

//

//

//

//

//

//

**Requested Relief**

WHEREFORE, Plaintiff prays that this Court:

A. Order Defendant DOJ to process immediately the requested records in their entirety;

B. Order Defendant DOJ, upon completion of such expedited processing, to disclose the requested records in their entirety and make copies available to Plaintiff;

C. Provide for expeditious proceedings in this action;

D. Award Plaintiff its costs and reasonable attorneys fees incurred in this action; and

E. Grant such other relief as the Court may deem just and proper.

DATED: July 30, 2015

By /s/ Marcia Hofmann
Marcia Hofmann
Law Office of Marcia Hofmann
25 Taylor Street
San Francisco, CA 94102
Telephone: (415) 830-6664

D. Victoria Baranetsky *(pro hac vice pending)*
601 Van Ness Ave.
Suite E731
San Francisco, CA 94102
Telephone: (415) 767-5566

Attorneys for Plaintiff
FREEDOM OF THE PRESS FOUNDATION