BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
MARCIA BERMAN
Assistant Branch Director
ANDREW M. BERNIE, D.C. Bar No. 995376
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, D.C. 20530
Telephone:  (202) 616-8488
Facsimile:  (202) 616-8470
Email: andrew.m.bernie@usdoj.gov

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FREEDOM OF THE PRESS FOUNDATION,<br><br>                     Plaintiff,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF<br>JUSTICE,<br><br>                   Defendant. | Civil Action No. 15-cv-03503-HSG<br><br>**DEFENDANT'S NOTICE OF MOTION<br>AND MOTION FOR SUMMARY<br>JUDGMENT; MEMORANDUM IN<br>SUPPORT OF MOTION**<br><br>Date: August 18, 2016<br>Time: 2:00 p.m.<br>Place: Courtroom 10, 19th Floor<br>Judge: Hon. Haywood S. Gilliam Jr. |

# TABLE OF CONTENTS

NOTICE OF MOTION .................................................................................................. 1

MOTION FOR SUMMARY JUDGMENT ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................. 1

BACKGROUND .......................................................................................................... 2

ARGUMENT ............................................................................................................... 4

I.      Legal Standard ................................................................................................ 4

II.     The FBI Conducted an Adequate Search for Responsive Records ................ 5

III.    The FBI Has Properly Withheld Information Under Applicable Exemptions ...... 6

    A.  The FBI Properly Withheld Information Pursuant to Exemption 1 ................ 8

    B.  The FBI Properly Withheld Information Pursuant to Exemption 3 .............. 11

    C.  The FBI Properly Withheld Information Pursuant to Exemption 5 .............. 13

        1.    Records Withheld Pursuant to the Deliberative Process Privilege ............... 14

        2.    Records Withheld Pursuant to the Attorney-Client Privilege ..................... 17

    D.  The FBI Properly Withheld Information Pursuant to Exemption 7(E) ......................... 18

        1.    Operational   Directives   Concerning   Sensitive   Investigative
Techniques and Strategies ......................................................... 21

        2.    Investigative Focus of Specific Investigations ............................ 22

        3.    Secure FBI E-mail Addresses, Faxes, Telephone Numbers ........ 23

        4.    FBI Internal Techniques and Procedures .................................... 24

IV.     The FBI Released All Reasonably Segregable Information ............................... 24

CONCLUSION ........................................................................................................... 24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**CASES**

*ACLU v. Dep't of Defense*,
  628 F.3d 612 (D.C. Cir. 2011)........................................................................ 8, 12

*Allard K. Lowenstein Int'l Human Rights Project v. DHS*,
  626 F.3d 678 (2d Cir. 2010) ...................................................................... 20

*Asian Law Caucus v. DHS*,
  No. C 08-00842 CW, 2008 WL 5047839 (N.D. Cal. Nov. 24, 2008)................................... 20, 22

*Assembly of the State of Cal. v. U.S. Dep't of Commerce*,
  968 F.2d 916 (9th Cir. 1992) .................................................................... 14, 15

*Baldrige v. Shapiro*,
  455 U.S. 345 (1982) ........................................................................... 11

*Berman v. CIA*,
  501 F.3d 1136 (9th Cir. 2007) ...................................................................... 7

*Center for Nat'l Sec. Studies v. U.S. Dep't of Justice*,
  331 F.3d 918 (D.C. Cir. 2003)...................................................................... 7

*Church of Scientology Int'l v. IRS*,
  995 F.2d 916 (9th Cir. 1993) ..................................................................... 18

*CIA v. Sims*,
  471 U.S. 159 (1985) .......................................................................... 12, 13

*Citizens Comm'n on Human Rights v. FDA*,
  45 F.3d 1325 (9th Cir. 1995)....................................................................... 5

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001) ............................................................................ 14

*Dunaway v. Webster*,
  519 F. Supp. 1059 (N.D. Cal. 1981).............................................................. 19

*FBI v. Abramson*,
  456 U.S. 615 (1982) ............................................................................. 7

*Frugone v. CIA*,
  169 F.3d 772 (D.C. Cir. 1999)...................................................................... 7

*George v. IRS*,
  No. C05-0955 MJJ, 2007 WL 1450309 (N.D. Cal. May 14, 2007) ...................................... 4

*Halperin v. CIA*,
  629 F.2d 144 (D.C. Cir. 1980).................................................................... 11

*Hamdan v. U.S. Dep't of Justice*,
  797 F.3d 759 (9th Cir. 2015) ................................................................... 7, 11

*Hunt v. CIA*,
  981 F.2d 1116 (9th Cir. 1992) .................................................................. 8, 11

*In re Apollo Grp., Inc. Sec. Litig.*,
  251 F.R.D. 12 (D.D.C. 2008) ..................................................................... 17

*In re Sealed Case*,
  737 F.2d 94 (D.C. Cir. 1984)..................................................................... 17

*Jewett v. U.S. Dep't of State*,
  No. 11-cv-1852, 2013 WL 550077 (D.D.C. Feb. 14, 2013) .......................................... 23

*John Doe Agency v. John Doe Corp.*,
  493 U.S. 146 (1989) .............................................................................. 6

*Johnson v. Exec. Office for U.S. Attorneys*,
  310 F.3d 771 (D.C. Cir. 2002).................................................................... 24

*Kowack v. U.S. Forest Serv.*,

766 F.3d 1130 (9th Cir. 2014) ........................................................................... 15
*Lahr v. Nat'l Transp. Safety Bd.,*
    569 F.3d 964 (9th Cir. 2009) ...................................................................... 5, 6
*Lane v. Dep't of Interior,*
    523 F.3d 1128 (9th Cir. 2008) ......................................................................... 7
*Larson v. Dep't of State,*
    565 F.3d 857 (D.C. Cir. 2009) ....................................................................... 12
*Lewis-Bey v. U.S. Dep't of Justice,*
    595 F. Supp. 2d 120 (D.D.C. 2009) .............................................................. 23
*Light v. U.S. Dep't of Justice,*
    968 F. Supp. 2d 11 (D.D.C. 2013) ............................................................. 4, 23
*Maricopa Audubon Soc'y v. U.S. Forest Serv.,*
    108 F.3d 1089 (9th Cir. 1997) .................................................................. 14, 15
*Marks v. U.S. Dep't of Justice,*
    578 F.2d 261 (9th Cir. 1978) ........................................................................... 5
*Mayer Brown LLP v. IRS,*
    562 F.3d 1190 (D.C. Cir. 2009) ..................................................................... 20
*Mead Data Cent., Inc. v. U.S. Dep't of the Air Force,*
    566 F.2d 242 (D.C. Cir. 1977) ....................................................................... 17
*Minier v. CIA,*
    88 F.3d 796 (9th Cir. 1996) ....................................................................... 7, 12
*Montrose Chem. Corp. v. Train,*
    491 F.2d 63 (D.C. Cir. 1974) ......................................................................... 15
*N.Y. Times Co. v. U.S. Dep't of Defense,*
    499 F. Supp. 2d 501 (S.D.N.Y. 2007) ............................................................ 12
*N.Y. Times Co. v. Dep't of Justice,*
    872 F. Supp. 2d 309 (S.D.N.Y. 2012) ............................................................ 12
*Nat'l Wildlife Fed'n v. U.S. Forest Serv.,*
    861 F.2d 1114 (9th Cir. 1988) .................................................................. 14, 15
*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975) ...................................................................................... 14
*People for the Am. Way Found. v. Nat'l Park Serv.,*
    503 F. Supp. 2d 284 (D.D.C. 2007) .............................................................. 17
*PHE, Inc. v. U.S. Dep't of Justice,*
    983 F.2d 248 (D.C. Cir. 1993) ....................................................................... 22
*Pratt v. Webster,*
    673 F.2d 408 (D.C. Cir. 1982) ....................................................................... 19
*Pub. Emps. for Envtl. Responsibility v. Int'l Boundary & Water Comm'n,*
    740 F.3d 195 (D.C. Cir. 2014) ....................................................................... 20
*Rosenfeld v. DOJ,*
    57 F.3d 803 (9th Cir. 1995) ........................................................................... 19
*Sack v. CIA,*
    49 F. Supp. 3d 15 (D.D.C. 2014) ................................................................... 12
*Safecard Servs., Inc. v. SEC,*
    926 F.2d 1197 (D.C. Cir. 1991) ....................................................................... 7
*Salisbury v. United States,*
    690 F.2d 966 (D.C. Cir. 1982) ....................................................................... 11
*Soghoian v. U.S. Dep't of Justice,*
    885 F. Supp. 2d 62 (D.D.C. 2012) ................................................................. 22
*Tax Analysts v. IRS,*
    117 F.3d 607 (D.C. Cir. 1997) ....................................................................... 17

*Wilkinson v. FBI*,
 633 F. Supp. 336 (C.D. Cal. 1986) ................................................................................... 19
*Yonemoto v. Dep't of Veterans Affairs*,
 686 F.3d 681 (9th Cir. 2012) ............................................................................................ 4

**STATUTES**

5 U.S.C. § 552 ......................................................................... 2, 4, 9, 11, 14, 18, 19, 24
12 U.S.C. § 3414 ............................................................................................................... 2
15 U.S.C. § 1681u ............................................................................................................ 2
15 U.S.C. § 1681v ............................................................................................................ 2
18 U.S.C. § 2709 .............................................................................................................. 2
50 U.S.C. § 3162 .............................................................................................................. 2
50 U.S.C. § 3024 ...................................................................................................... 12, 13

**RULES**

Fed. R. Civ. P. 56 ............................................................................................................. 1
Civil L.R. 56 ..................................................................................................................... 1

**REGULATIONS**

46 Fed. Reg. 59941 (Dec. 4, 1981) ................................................................................. 2
75 Fed. Reg. 707 (Jan. 5, 2010) ...................................................................................... 9


**OTHER AUTHORITIES**

Exec. Order No. 12333 .................................................................................................... 2
Exec. Order No. 13526 ........................................................................................ 9, 10, 11
S. Rep. No. 813 .............................................................................................................. 14
S. Rep. No. 1200 ............................................................................................................ 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on August 18, 2016, at 2:00 p.m. in the United States Courthouse at San Francisco, California, the United States Department of Justice ("DOJ" or "Defendant"), by and through undersigned counsel, will bring for hearing a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and Civil L.R. 56 in this Freedom of Information Act ("FOIA") action.  The hearing will take place before the Honorable Haywood S. Gilliam Jr. in Courtroom 10, on the 19th floor of 450 Golden Gate Avenue, San Francisco, CA 94102. The motion is based on this notice, the memorandum of points and authorities that follows, all pleadings and papers filed in this action, and such oral argument and evidence as may be presented at the hearing on the motion.

## MOTION FOR SUMMARY JUDGMENT

Defendant respectfully requests that the Court grant its Motion for Summary Judgment because, as explained in the accompanying Memorandum of Points and Authorities, Defendant has fully complied with its obligations under FOIA.

## MEMORANDUM OF POINTS AND AUTHORITIES

This action concerns a FOIA request by plaintiff Freedom of the Press Foundation ("FPF" or "Plaintiff") to the Federal Bureau of Investigation ("FBI"), a component of DOJ, for records concerning the FBI's procedures for issuing national security letters ("NSLs") or exigent letters to obtain information regarding any member of the media.  Defendant is entitled to summary judgment because the FBI has fully complied with its obligations under FOIA.  The FBI conducted a reasonable search for records responsive to Plaintiff's FOIA request, and released all responsive records not covered by one or more FOIA exemptions.  Moreover, the FBI properly withheld

records pursuant to FOIA Exemptions 1, 3, 5, and 7(E), 5 U.S.C. §§ 552 (b)(1), (b)(3), (b)(5), and (b)(7)(E).[1]  Therefore, Defendant's motion for summary judgment should be granted.

## BACKGROUND

The President of the United States has charged the FBI with primary authority for conducting counterintelligence and counterterrorism investigations in the United States.  *See* Exec. Order No. 12333 §§ 1.14(a), 3.4(a), 46 Fed. Reg. 59941 (Dec. 4, 1981).  To assist the FBI in obtaining information as part of such investigations, Congress enacted 18 U.S.C. § 2709 nearly thirty years ago to empower the FBI to issue an NSL, a type of administrative subpoena.  Other federal statutes also authorize government authorities to issue NSLs in connection with counterintelligence and counterterrorism investigations.  *See* 12 U.S.C. § 3414(a)(5); 15 U.S.C. §§ 1681u-1681v; 50 U.S.C. § 3162

In a letter dated March 10, 2015, FPF submitted a FOIA request to the FBI seeking the following records:

(A) the extensive regime, rules, guidelines, or infrastructure that oversees the issuance of NSLs or exigent letters to obtain records regarding a member of the media;

(B) the current procedures that FBI agents must undertake in advance of issuing a NSL or Exigent Letter to obtain records regarding any member of the media, including any pre-approval process;

(C) the current procedures that FBI agents must undertake after issuing a NSL or Exigent Letter to obtain records regarding any member of the media, including any mandatory subsequent reporting process; and

(D) any changes in FBI policy, procedure, or practice after the issuance of the U.S. Dept. Of Justice, *Report on Review of News Media Policies* (2013) and U.S. Dept. of Justice,

---

[1]  As discussed further below, the FBI also redacted certain materials pursuant to Exemptions 6 and 7(C) and withheld other documents as duplicative; Plaintiff has indicated that it does not intend to challenge these withholdings.  *See* p. 4, *infra*.

*Updated Policy Regarding Obtaining Information From, or Records of, Members of the News Media; and Regarding Questioning, Arresting, or Charging Member of the News Media* (2015).

*See* Declaration of David M. Hardy ("Hardy Decl." or the "Hardy Declaration") ¶ 8 & Ex. A (the "FOIA Request" or the "Request"). The Request went on to state that it "includes but is not limited to memoranda, reports, correspondence, and presentation or training materials generated between January 2009 and present." Request at 2.

On March 20, 2015, the FBI acknowledged receipt of FPF's Request and, on that same date, the FBI granted expedited processing of the FOIA Request. Hardy Decl. ¶¶ 9-10 & Exs. B-C. Having received no further response to its Request, FPF filed an administrative appeal to the Office of Information Policy ("OIP") on May 18, 2015. *Id.* ¶ 11 & Ex. D. OIP responded to the appeal in a letter dated July 15, 2015, advising FPF that, since no adverse determination had yet been made by the FBI, there was no action for OIP to consider on appeal. *Id.* ¶ 13 & Ex. F. On July 30, 2015, FPF filed this action. *See* Doc. 1 ("Compl." or "Complaint"). The Complaint asserts a violation of FOIA for wrongful withholding of non-exempt records, and seeks injunctive relief with respect to the release and disclosure of the requested documents. Compl. ¶¶ 44-47.

After the Complaint was filed, the FBI informed FPF, in a letter dated December 22, 2015, that the agency had identified 302 pages and was releasing 156 pages, withholding certain information pursuant to Exemptions 1, 3, 5, 6, 7(C), and 7(E). Hardy Decl. ¶ 15 & Ex. G. The FBI further advised Plaintiff that it was consulting with another agency concerning certain documents, and would correspond with FPF regarding those documents when the consultation was completed. *Id.* On January 6, 2016, the FBI advised Plaintiff that it had completed its consultation with that agency (which was OIP); the FBI further indicated that that it had identified another 134 pages and was releasing 72 pages, withholding certain information pursuant to Exemptions 5, 6, 7(C), and

7(E).  *Id.* ¶ 16 & Ex. H.  The FBI also advised FPF that the documents enclosed with the letter represented the final release of information responsive to FPF's FOIA request.  *Id.*

In total, the FBI identified 436 pages responsive to Plaintiff's request.  Hardy Decl. ¶ 5.  Of those 436 pages (62 of which were referred to OIP for consultation), 57 were released in full, 171 were released in part, 156 were withheld in full pursuant to applicable FOIA exemptions, and 52 were withheld as duplicates of pages already processed.  *Id.*

On March 21, 2016, Defendant provided FPF with a draft declaration and *Vaughn* index explaining the FBI's search for responsive records and describing the basis for the FBI's withholdings, in an attempt to narrow the disputed issues.  *See* Doc. 28 at 2.  FPF subsequently informed Defendant that that it does not intend to challenge any redactions made pursuant to Exemptions 6 and 7(C), nor the withholding of duplicative records.  *Id.* at 5.  Defendant now moves for summary judgment on the remaining issues in this case, in accordance with the briefing schedule previously ordered by the Court.  *See* Doc. 26.

<u>**ARGUMENT**</u>

## I.      Legal Standard

"Because facts in FOIA cases are rarely in dispute, most such cases are decided on motions for summary judgment."  *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 688 (9th Cir. 2012); *see also George v. IRS*, No. C05-0955 MJJ, 2007 WL 1450309, at *2 (N.D. Cal. May 14, 2007), *aff'd*, 344 F. App'x 309 (9th Cir. Aug. 17, 2009) (noting that "district courts typically decide FOIA cases on summary judgment").  A court reviews an agency's response to a FOIA request de novo.  5 U.S.C. § 552(a)(4)(B).  "The defendant in a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information."  *Light v. U.S. Dep't of Justice*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013).

**II.      The FBI Conducted an Adequate Search for Responsive Records**

On summary judgment in a FOIA case, the agency must demonstrate that "it has conducted a search reasonably calculated to uncover all relevant documents." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 986 (9th Cir. 2009).  "[A]ffidavits describing agency search procedures are sufficient for purposes of summary judgment . . . if they are relatively detailed in their description of the files searched and the search procedures, and if they are nonconclusory and not impugned by evidence of bad faith." *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995) (quotation marks omitted).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the ***search*** for those documents was ***adequate***." *Id.* (quotation marks omitted) (emphasis in original); *see also Marks v. U.S. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978) (no requirement that an agency search every division or field office on its own initiative in response to a FOIA request when the agency believes responsive documents are likely to be located in one place).

The Hardy Declaration demonstrates that the FBI conducted an adequate search for records responsive to Plaintiff's FOIA Request.  As the Declaration explains, in response to a typical FOIA request seeking information about particular investigative subjects the FBI ordinarily conducts an index search of its Central Records System ("CRS").  Hardy Decl. ¶ 17.  The FBI determined, however, that Plaintiff's Request was not conductive to a CRS search.  *Id.*  The FBI reached this conclusion because the CRS is an investigative tool in which FBI employees record index terms in files that are useful to a particular investigation—such as names of individuals, organizations, companies, publications, activities, or foreign intelligence matters or programs.  *Id.*  The CRS indices, however, are not a repository for procedural and policy records, such as the documents pertaining to the FBI's alleged utilization of NSLs or exigent letters to obtain records regarding a member of the media, which FPF seeks in this action.  *Id.*  Because FPF's Request did not seek investigative or administrative records pertaining to a specific individual, organization, company or

DEFENDANT'S NOTICE OF MOTION, MOTION FOR SUMMARY JUDGMENT, AND
MEM. IN SUPPORT, CASE NO. 15-CV-03503-HSG

event, the FBI determined that it did not lend itself to the CRS searches the FBI ordinarily conducts in response to FOIA requests.  *Id.*

The FBI accordingly conducted a more targeted search outside the CRS.  Hardy Decl. ¶ 18. The FBI's Record/Information Dissemination Section ("RIDS") sent an Electronic Communication ("EC") to the FBI's Discovery Processing Unit ("DPU") attaching the FOIA Request and requesting copies of all FBI records falling within a specified date range pertaining to the procedures and oversight of NSLs or Exigent Letters issued by the FBI to obtain records regarding members of the media.  *Id.* ¶ 19.  The DPU identified its Offices of General Counsel ("OGC") as the components reasonably likely to have records potentially responsive to FPF's Request and accordingly contacted each of the OGC branches:  the National Security Law Branch, the Litigation Branch, the Investigative and General Law Branch.  *Id.* ¶ 20.  Each branch, in turn, reached out to all the units within their respective branch and tasked them with searching for responsive records.  *Id.*  These offices identified responsive material which was sent to RIDS for processing.  *Id.*  Finally, RIDS reviewed the FBI's Domestic Investigations and Operations Guide ("DIOG") for responsive material, and identified one section (which addresses NSLs) as potentially responsive.  *Id.* ¶ 21.

By reviewing the agency's DIOG as well as conducting an individualized inquiry of those FBI components that were deemed most likely to have potentially responsive records, the FBI "conducted a search reasonably calculated to uncover all relevant documents."  *Lahr*, 569 F.3d at 986.  Therefore, Defendant is entitled to summary judgment on this issue.

**III.    The FBI Has Properly Withheld Information Under Applicable Exemptions**

The FOIA represents a balance struck by Congress "between the right of the public to know and the need of the Government to keep information in confidence."  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted).  Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and

provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982).  Although these exemptions are to be "narrowly construed," *id.* at 630, courts must not fail to give them "meaningful reach and application," *John Doe*, 493 U.S. at 152.

A court may award summary judgment to an agency with regard to exemptions claimed on the basis of information provided in affidavits or declarations that describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemptions, and show that the justifications are not controverted by contrary evidence in the record or by evidence of [agency] bad faith." *Berman v. CIA*, 501 F.3d 1136, 1140 (9th Cir. 2007) (quotation marks omitted).  "If the affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, the district court need look no further." *Lane v. Dep't of Interior*, 523 F.3d 1128, 1135-36 (9th Cir. 2008) (quotation marks and citations omitted).  In evaluating an exemption claim, a court "must accord substantial weight to [the agency's] affidavits." *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996).  The Court must accord a presumption of good faith to agency declarations submitted in support of claimed exemptions. *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

Critically for purposes of this case, courts have also "emphasized" in FOIA cases "the importance of deference to executive branch judgments about national security secrets." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 773 (9th Cir. 2015); *see also Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926-27 (D.C. Cir. 2003) (recognizing that national security is "a uniquely executive purview"). That is so because courts have "limited institutional expertise on intelligence matters, as compared with the executive branch." *Hamdan*, 797 F.3d at 770; *see also Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999) (explaining that because "courts have little expertise in either international diplomacy or counterintelligence operations, [they] are in no position to dismiss the [agency's] facially reasonable concerns" about the harm that disclosure

DEFENDANT'S NOTICE OF MOTION, MOTION FOR SUMMARY JUDGMENT, AND
MEM. IN SUPPORT, CASE NO. 15-CV-03503-HSG

could cause to national security).  Accordingly, the Ninth Circuit has directed that, for exemptions related to national security, "the district court [is] required to accord 'substantial weight' to [the agency's] affidavits" as long as any such affidavits are not "controverted by contrary evidence in the record or by evidence of [agency] bad faith."  *Hunt v. CIA*, 981 F.2d 1116, 1119 (9th Cir. 1992); *see also ACLU v. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) (courts "must accord substantial weight to an agency's affidavit concerning the details of the classified status of [a] disputed record" because the courts "lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case") (citations omitted).

Judged against these standards, the Hardy Declaration and *Vaughn* Index included with Defendant's motion establish that Defendant is entitled to summary judgment on all of the exemptions claimed in this case.  The Hardy Declaration provides detailed justifications for all of the information the FBI withheld.  The Hardy Declaration details the nature of information withheld pursuant to the applicable FOIA exemption(s), provides a summary of the contents of the records, as well as a summary of the bases for withholdings.  *See* Hardy Decl. ¶¶ 25-70.  The Hardy Declaration is also accompanied by a *Vaughn* index providing a description of the withheld material within each document category group, further broken-down into sub-groupings to discuss the particular exemptions asserted.  *Id.* ¶ 22 & Ex. I ("Index").  Defendant is accordingly entitled to summary judgment with regard to the FBI's application of exemptions.

## A.      The FBI Properly Withheld Information Pursuant to Exemption 1

First, the FBI properly withheld classified information on seven pages—Bates pages FPF-294-295, 297-299, 301 and 302—pursuant to Exemption 1.[2]   This Exemption protects from

---

[2] Copies of the pages released in part and in full were consecutively numbered "FPF-1" through "FPF-436".  Hardy Decl. ¶ 24.  Pages withheld in their entirety (based on a FOIA exemption or as duplicates) were replaced by a "Deleted Page Information Sheet" identifying the reason relied upon to withhold the page in full, as well as the Bates numbers for the withheld material. *Id.*

disclosure records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1); *see also* Hardy Decl. ¶ 35.  Pursuant to Executive Order 13526, which "prescribes a uniform system for classifying, safeguarding, and declassifying national security information," an agency may classify information if the following conditions are met:

1.   an original classification authority is classifying the information;

2.   the information is owned by, produced by or for, or is under the control of the United States Government;

3.   the information falls within one or more of the categories of information listed in section 1.4 of [the Executive Order]; and

4.   the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, . . . and the original classification authority is able to identify or describe the damage.

Executive Order 13526 § 1.1(a), 75 Fed. Reg. 707 (Jan. 5, 2010); *see also* Hardy Decl. ¶ 38.

The Hardy Declaration demonstrates that the FBI has adhered to the procedures set forth in Executive Order 13526 in determining that the information withheld pursuant to Exemption 1 is classified.  *See* Hardy Decl. ¶ 39.  The Attorney General has designated Mr. Hardy as an original classification and declassification authority.  *See id.* ¶ 2.  Mr. Hardy ensured that all of the procedural requirements of Executive Order 13526 were followed for this FOIA request, including proper identification and marking of documents.  *See id.* ¶ 39.

The classified information withheld in this case also meets the substantive requirements of Executive Order 13526.  The withheld material contains information regarding intelligence activities, sources or methods, or cryptology, which is an authorized basis for classification, *see* Executive Order 13526 § 1.4(c); Hardy Decl. ¶¶ 41-44.  Information that reveals intelligence

sources or methods is protected from disclosure pursuant to section 1.4(c) of Executive Order 13526 and accordingly is protected by Exemption 1.   This information is needed by United States intelligence and counterintelligence agencies to carry out their missions, and must be kept confidential if the viability, productivity and usefulness of these intelligence sources and methods are to be preserved.  *Id.* ¶ 41.

Mr. Hardy determined that release of this information reasonably could be expected to cause serious damage to the national security of the United States, and therefore should be classified at the "Secret" level.  Hardy Decl. ¶ 40.  Mr. Hardy's Declaration explains further that disclosure would "(a) reveal the actual intelligence activity or method utilized by the FBI against specific types of targets; (b) disclose the intelligence-gathering capabilities of the method utilized by the FBI against the target types; and (c) provide an assessment of the intelligence source penetration of a specific target type during a specific period of time."  *Id.* ¶ 44.  The effects of disclosure would be to allow hostile entities to develop countermeasures to the FBI's practices, disrupting the FBI's intelligence-gathering practices, as well as undermining its ability to detect and apprehend violators of federal national security and criminal laws.  *Id.* ¶ 42.

In reaching these conclusions, Mr. Hardy evaluated the withheld information "in light of the body of information available to [him] concerning the national defense and foreign relations of the United States."   Hardy Decl. ¶ 45.  He considered both "the impact that disclosure of this information will have on other sensitive information contained elsewhere in the United States intelligence community's files," as well as "the impact that other information either in the public domain or likely known or suspected by present or potential adversaries of the United States would have upon the information [he] examined."  *Id.*  And Mr. Hardy's Declaration informs Plaintiff and the Court that, in his expert judgment, "any greater specificity in the descriptions and justifications set forth with respect to information relating to intelligence sources and methods of the United States could reasonably be expected to jeopardize the national security of the United States."  *Id.*

¶ 46.

From the foregoing, Mr. Hardy concluded that the information withheld pursuant to Exemption 1 is "properly classified at the 'Secret' level." Hardy Decl. ¶ 40. This conclusion is well supported by the contents of his declaration, and his judgment that disclosure of that information would cause serious damage to the national security. Mr. Hardy's findings are entitled to "substantial weight," *Hunt*, 981 F.2d at 1119, and this Court's deference, *Hamdan*, 797 F.3d at 773; *see also Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980) ("[T]he court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions; to do so would violate the principle of affording substantial weight to the expert opinion of the agency."); *Salisbury v. United States*, 690 F.2d 966, 970 (D.C. Cir. 1982) ("'[T]he Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [effects] might occur as a result of public disclosure of a particular classified record.'") (quoting S. Rep. No. 1200, 93rd Cong., 2d Sess. 12 (1974)). The discussion above demonstrates that the FBI has met both the procedural and substantive requirements of Executive Order 13526. Therefore, the FBI has sustained its burden of justifying nondisclosure of information withheld pursuant to Exemption 1.

**B.      The FBI Properly Withheld Information Pursuant to Exemption 3**

The FBI also withheld information on seven pages pursuant to FOIA Exemption 3. Hardy Decl. ¶ 47 & Index at 2. Exemption 3 permits agencies to withhold from disclosure records that are "specifically exempted from disclosure by statute" "if that statute . . . establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Congress included Exemption 3 in FOIA to recognize the existence of collateral statutes that limit the disclosure of information held by the government, and to incorporate such statutes within FOIA's exemptions. *See Baldrige v. Shapiro*, 455 U.S. 345, 352-53 (1982); *Hamdan*, 797 F.3d at 775 ("Exemption 3 protects records exempt from disclosure pursuant to a separate statute.").

A "two-part inquiry determines whether Exemption 3 applies to a given case."  *Minier*, 88 F.3d at 801. "First, a court must determine whether there is a statute within the scope of Exemption 3. . . . Then, it must determine whether the requested information falls within the scope of the statute." *Id.*

In this case, the FBI invokes Section 102A(i)(1) of the National Security Act of 1947 (now codified at 50 U.S.C. § 3024(i)(1)) which requires the Director of National Intelligence to "protect from unauthorized disclosure intelligence sources and methods."  Hardy Decl. ¶ 49.  Pursuant to that statute, the FBI relied on Exemption 3 to withhold information pertaining to intelligence sources and methods.  *Id.* ¶ 50.  Mr. Hardy's declaration correctly notes that "this federal statute leaves no discretion to agencies about withholding from the public information about intelligence sources and methods," *id* ¶ 49, and such records must be withheld regardless of whether they are classified.  Section 102A(i)(1) indisputably qualifies as a valid Exemption 3 statute.  *See ACLU*, 628 F.3d at 619 ; *Larson v. Dep't of State*, 565 F.3d 857, 868 (D.C. Cir. 2009); *Sack v. CIA*, 49 F. Supp. 3d 15, 21 (D.D.C. 2014); *N.Y. Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 316-17 (S.D.N.Y. 2012); *N.Y. Times Co. v. Dep't of Defense*, 499 F. Supp. 2d 501, 512 (S.D.N.Y. 2007).  In fact, the Supreme Court has recognized the "wide-ranging authority" provided by the National Security Act to protect intelligence sources and methods.  *See CIA v. Sims*, 471 U.S. 159, 169-70, 177 (1985).  Thus, the only remaining question is whether the material withheld pursuant to Exemption 3 relates to intelligence sources and methods.  The Hardy Declaration demonstrates that it does.

Section 102A(i)(2)(A) provides that "the Director of National Intelligence shall establish and implement guidelines for the intelligence community for the . . . [c]lassification of information under applicable law, Executive orders, or other Presidential directives."  50 U.S.C. § 3024(i)(2)(A); *see also* Hardy Decl. ¶¶ 49-50.  The FBI is one of 17 member agencies comprising the Intelligence Community, and is therefore obligated to protect intelligence sources and methods.

*See id.*  Mr. Hardy reviewed the information withheld under Exemption 3 pursuant to Section 102A(i)(1), and determined that the FBI's intelligence sources and methods would be revealed if any of the withheld information were disclosed to FPF, concluding that "[d]isclosure of such information presents the potential for individuals to develop and implement countermeasures, which would result in the loss of significant intelligence/information relied upon by national policymakers and the [Intelligence Community]."  *Id.* ¶ 50; *see also* pp. 8-11, *supra* (describing Exemption 1 withholdings).

As the Supreme Court discussed in *Sims*, it is the duty of the responsible Executive Branch officials, "not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising" intelligence sources and methods.  471 U.S. at 180.  The Court observed that, in the National Security Act of 1947, Congress did not limit the scope of "intelligence sources and methods" in any way.  *Id.* at 169. Rather, it "simply and pointedly protected all sources of intelligence that provide, or are engaged to provide, information the [responsible agency] needs to perform its statutory duties with respect to [the relevant intelligence activities]."  *Id.* at 169-170.  Applying this deferential standard, the Hardy Declaration establishes that the documents withheld pursuant to Exemption 3 are, in fact, protected from disclosure.  The FBI is prohibited from disclosing the information under 50 U.S.C. § 3024(i)(1), and this information was thus properly withheld pursuant to Exemption 3 (and in conjunction with Exemptions 1 and 7(E) where applicable).  Hardy Decl. ¶ 50; *see also Sims*, 471 U.S. at 179 ("The decisions of the Director, who must of course be familiar with 'the whole picture,' as judges are not, are worthy of great deference given the magnitude of the national security interests and potential risks at stake.").  Defendant is entitled to summary judgment on this issue.

### C.   The FBI Properly Withheld Information Pursuant to Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or

letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C.

§ 552(b)(5).  Records are exempt from disclosure if they would be "normally privileged in the civil

discovery context."  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  Thus, Exemption 5

incorporates the privileges that are available to an agency in civil litigation, including the

deliberative process privilege.  *See id.* at 148-50.  Here the FBI withheld documents pursuant to the

deliberative process privilege and the attorney-client privilege.

### 1.   Records Withheld Pursuant to the Deliberative Process Privilege

The FBI withheld material discussed further below pursuant to the deliberative process

privilege.[3]  The deliberative process privilege is intended "to enhance the quality of agency

decisions, by protecting open and frank discussion among those who make them within the

Government."  *Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 9 (2001)

(citation omitted).  The privilege "rests on the obvious realization that officials will not

communicate candidly among themselves if each remark is a potential item of discovery and front

page news."  *Id.* at 8–9. "By maintaining the confidentiality of the give-and-take that occurs among

agency members in the formulation of policy, the deliberative process privilege under Exemption 5

encourages frank and open discussions of ideas, and, hence, improves the decisionmaking

process."  *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988); *see also*

*Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997) (purpose of the

deliberative process privilege "is to prevent injury to the quality of agency decisions") (quoting

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–51 (1975)).  "Congress [has] expressed concern

that if agencies were forced to 'operate in a fishbowl,' candid exchange of ideas within an agency

would cease and the quality of decisions would suffer."  *Assembly of the State of Cal. v. U.S. Dep't*

*of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992) (quoting S. Rep. No. 813, 89th Cong. 1st Sess. 9

---

[3] The deliberative process privilege has been asserted on the following Bates-numbered pages: FPF-4-87, 282, 284-285, 287-288, 290, 294-302, 305-306, 308, 312, 314, 316, 318, 320-321, 323-324, 326-346, 349, and 351-393.  Hardy Decl. ¶ 55 & n.22.

1

2    (1965)).  Thus, the Ninth Circuit has emphasized that "exemption 5 'was intended to protect not

3    simply deliberative material, but also the deliberative *process* of agencies.'"  *Nat'l Wildlife Fed'n*,

4    861 F.2d at 1118 (quoting *Montrose Chem. Corp. of Cal. v. Train*, 491 F.2d 63, 71 (D.C. Cir.

4    1974)) (emphasis supplied by Ninth Circuit).

5            The deliberative process privilege "shields from disclosure documents that are both

6    'predecisional' and part of the agency's 'deliberative process.'"  *Kowack v. U.S. Forest Serv.*, 766

7    F.3d 1130, 1135 (9th Cir. 2014); *see also Maricopa Audubon Soc'y*, 108 F.3d at 1093; *Assembly of

8    the State of Cal.*, 968 F.2d at 920.  The Ninth Circuit has "adopted the D.C. Circuit's definition of

9    these terms."  *Maricopa Audubon Soc'y*, 108 F.3d at 1093.  Material is "predecisional" if it is

10   "antecedent to the adoption of agency policy."  *Nat'l Wildlife Fed'n*, 861 F.2d at 1117.

11   Predecisional documents are "prepared in order to assist an agency decisionmaker in arriving at his

12   decision' and may include 'recommendations [and] draft documents.'"  *Maricopa Audubon Soc'y*,

13   108 F.3d at 1093 (quoting *Assembly of the State of Cal.*, 968 F.2d at 920) (citation omitted).

14   Predecisional materials are "deliberative" if "disclosure of the materials would expose [the]

15   agency's decisionmaking process in such a way as to discourage candid discussions within the

16   agency and thereby undermine the agency's ability to perform its functions."  *Kowack*, 766 F.3d at

17   1135.  Materials need not include recommendations or express opinions to be considered

18   "deliberative."  Rather, "the District of Columbia Circuit has repeatedly interpreted exemption 5 to

19   protect documents that would reveal the *process* by which agency officials make these

20   determinations, whether or not the documents themselves contain facts [or] non-binding

21   recommendations regarding law and policy."  *Nat'l Wildlife Fed'n*, 861 F.2d at 1119 (collecting

22   cases).  The Ninth Circuit has also concluded that "the scope of the deliberative process privilege

23   should not turn on whether [the court] label[s] the contents of a document 'factual' as opposed to

24   'deliberative.'"  *Id.*

25           The Hardy Declaration and accompanying *Vaughn* index demonstrate that the FBI has

26

27

28       DEFENDANT'S NOTICE OF MOTION, MOTION FOR SUMMARY JUDGMENT, AND
         MEM. IN SUPPORT, CASE NO. 15-CV-03503-HSG

properly withheld documents that are subject to the deliberative process privilege. The FBI withheld 84 pages consisting of a draft of the FBI's Policy Implementation Guide, which contain drafts of operational directives instructing FBI employees on, among other things, how to properly use certain non-public FBI investigative procedures, techniques, and guidelines for conducting cyber investigations, how to articulate the basis for such investigations, and how to ensure that that such investigations comply with applicable laws and policies (these same pages were also withheld under Exemption 7(E) as investigative techniques and procedures). Index at 1.[4] Within these pages, FBI employees were engaged in comments in order to help formulate the FBI's policies concerning these topics. *Id.* Similarly, the FBI withheld nine pages pursuant to the deliberative process privilege consisting of a draft of DIOG operational directives.[5] These pages consist of drafts of operational directives instructing FBI employees on the proper use of certain non-public sensitive FBI procedures, techniques, and guidelines for conducting investigations. Index at 2. The FBI likewise withheld nineteen pages containing a draft of the policy for obtaining information from members of the news media (and arresting, questioning or charging members of the news media), Index at 8,[6] and forty three additional pages containing a draft of the Department of Justice's News Media Guidelines regarding issues pertaining to investigations of members of the media (as well as policy recommendations concerning certain issues relating to NSLs), Index at 8.[7] These sets of pages were properly withheld under the deliberative process privilege. "[D]raft documents by their very nature, are typically predecisional and deliberative, because they reflect only the tentative view of their authors; views that might be altered or rejected upon further

---

[4] These pages are the pages Bates-stamped FPF-4-87. Hardy Decl. ¶ 24 n.7 & Index at 1.

[5] These pages are the pages Bates-stamped FPF-294-302. Index at 1. Portions of these pages were withheld pursuant to other Exemptions.

[6] The pages containing a draft of this policy are the pages Bates-stamped FPF-326-344. Index at 8.

[7] These pages are the pages Bates-stamped FPF-351-393.

DEFENDANT'S NOTICE OF MOTION, MOTION FOR SUMMARY JUDGMENT, AND MEM. IN SUPPORT, CASE NO. 15-CV-03503-HSG

deliberation either by their authors or by superiors." *In re Apollo Grp., Inc. Sec. Litig.*, 251 F.R.D. 12, 31 (D.D.C. 2008) (non-FOIA case) (quotations omitted). Accordingly, "drafts are commonly found exempt under the deliberative process exemption." *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 303 (D.D.C. 2007).   Similarly here, disclosure of these deliberative draft materials would seriously undermine the quality and integrity of the FBI's decision-making, by deterring FBI employees from exercising candor in developing the FBI's policies, as well as on other topics.   Finally, the FBI withheld portions of pages pursuant to the deliberative process privilege to redact portions of emails in which FBI employees were engaged in deliberative comments concerning various aspects of the Department of Justice's Media Guidelines.  Index at 5-6.  These materials are likewise plainly covered by the deliberative process privilege.

### 2.   Records Withheld Pursuant to the Attorney-Client Privilege

The FBI is also withholding certain information pursuant to the attorney-client privilege. Hardy Decl. ¶ 53.[8]  To invoke the privilege, a party must demonstrate that the document it seeks to withhold: (1) involves "confidential communications between an attorney and his client"; and (2) relates to "a legal matter for which the client has sought professional advice."  *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977) (citing *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984)); *see also Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997).

In this case, the FBI protected email communications between and among FBI counsel as well as their FBI client employees, email communications which reflect the seeking and/or

---

[8]  The attorney-client privilege is being asserted to protect information on the following Bates pages: FPF-108-111, 120, 123, 134, 142, 150, 153, 211, 216-218, 223, 233, 236, 252, 262, 271, 275-276, 283, 292, and 405.  Hardy Decl. ¶ 53 & n.21.  In the draft declaration previously provided to Plaintiff, the FBI asserted that this information was covered by the attorney work-product doctrine.  Upon further consideration, however, the FBI has determined that the applicable privilege is the attorney-client privilege.

provision of legal advice concerning NSLs.  Hardy Decl. ¶ 54.  The FBI is also asserting the attorney-client privilege to protect legal advice provided by FBI attorneys in the form of training slides presented in a PowerPoint presentation for Legal Advisor Certification In-Service Training. *Id.*  The portions of this presentation redacted pursuant to the attorney-client privilege reflect specific pieces of legal advice to FBI clients concerning the agency's use of NSLs as an investigative technique or procedure.  These materials, therefore, are subject to the attorney-client privilege, and Defendant is accordingly entitled to summary judgment on its invocation of this privilege.

### D.      The FBI Properly Withheld Information Pursuant to Exemption 7(E)

The FBI withheld four categories of materials pursuant to Exemption 7(E).  Exemption 7(E) protects from disclosure "records or information compiled for law enforcement purposes" when production of the records or information "(E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7).

As a threshold issue when analyzing Exemption 7, the Court must make a determination as to whether the documents have a law enforcement purpose, which, in turn, requires examination of whether the agency serves a "law enforcement function."  *Church of Scientology Int'l v. IRS*, 995 F.2d 916, 919 (9th Cir. 1993).  The FBI has a clear law enforcement function because it "is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States."  Hardy Decl. ¶ 57.  In this Circuit, and in order to satisfy Exemption 7's threshold requirement, a government agency with a clear law enforcement mandate "need only establish a 'rational nexus' between

---

enforcement of a federal law and the document for which [a law enforcement] exemption is claimed." *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 808 (9th Cir. 1995) (citation and quotation omitted). "As long as the agency's basis for the 'rational nexus' is not 'pretextual or wholly unbelievable', a court 'should be hesitant to second guess a law enforcement agency's decision to investigate if there is a plausible basis for its decision.'" *Wilkinson v. FBI*, 633 F. Supp. 336, 343 (C.D. Cal. 1986) (quoting *Pratt v. Webster*, 673 F.2d 408, 421 (D.C. Cir. 1982)); *see also Dunaway v. Webster*, 519 F. Supp. 1059, 1076 (N.D. Cal. 1981) ("[A]n agency with a clear law enforcement purpose . . . need only be held to a minimal showing that the activity which generated the documents was related to the agency's function." (citations omitted)). That minimal standard is easily met here: there is a rational nexus between the responsive records withheld under Exemption 7 and the enforcement of federal law because "[t]he records at issue here were compiled as a result of the FBI's involvement in the procedures and oversight of [NSLs] or Exigent Letters issued by the FBI to obtain records regarding members of the media." Hardy Decl. ¶ 57. These records were compiled for a law enforcement purpose and, indeed, fall squarely within the law enforcement duties of the FBI.

Once an agency establishes the threshold requirement by demonstrating that the records or information at issue were compiled for law enforcement purposes, the agency must show that releasing the records or information would lead to one or more of the harms identified in subsections (A)-(F) of Exemption 7. To withhold information pursuant to Exemption (7)(E), the agency must demonstrate that release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions," or would "disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

Courts are divided as to whether the phrase "if such disclosure could reasonably be expected to risk circumvention of the law" applies only to "guidelines" or also applies to

"techniques and procedures."  *See, e.g.*, *Asian Law Caucus v. DHS*, No. C 08-00842 CW, 2008 WL 5047839, at *3 (N.D. Cal. Nov. 24, 2008) (noting that courts "have come out on  both sides of the issue" and saying that the Ninth Circuit has not "squarely addressed" it).   However, the better reasoned decisions recognize that providing categorical protection to "techniques and procedures" (i.e., not requiring a showing that "disclosure could reasonably be expected to risk circumvention of the law") is consistent with both the plain meaning of the statute and the history of the amendments to exemption (7)(E) in 1986.  *See Allard K. Lowenstein Int'l Human Rights Project v. DHS*, 626 F.3d 678, 681 (2d Cir. 2010) (finding that the "sentence structure of Exemption (b)(7)(E)" and "basic rules of grammar and punctuation dictate that the qualifying phrase modifies only the . . . 'guidelines' clause" and that "[a]ny potential ambiguity in the statute's plain meaning is removed . . . by the history of the statute's amendments").

Even if a showing that "disclosure could reasonably be expected to risk circumvention of the law" were required to protect "techniques and procedures" from disclosure, the "risk circumvention of the law" requirement presents a "low bar."  *See Pub. Emps. for Envtl. Responsibility v. Int'l Boundary & Water Comm'n*, 740 F.3d 195, 202, 204 n.4 (D.C. Cir. 2014) (saying that "it is not clear" that the issue of whether an agency needs to show that disclosure of a technique or procedure could reasonably be expected to risk circumvention of the law "matters much in practice" given the "low bar" for the circumvention requirement).   "[T]he text of exemption 7(E) is much broader" than other exemptions that "set a high standard."  *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009).  "Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] 'demonstrate[] logically how the release of [the requested] information might create a risk of circumvention of the law.'"  *See id*. (citation omitted).  Therefore, Exemption 7(E) "exempts from disclosure information that could ***increase the risks*** that a law will be violated or that past violators will escape legal consequences."  *See id*. at 1193 (emphasis in original).

1

2        Judged against these standards, the FBI has also properly withheld information pursuant to

3   Exemption 7(E).  This Exemption has been applied to the records at issue here to protect

4   information in the FBI's Policy Manuals consisting of specific internal investigatory techniques

5   and procedures, and guidelines used by the FBI to implement its methods, techniques and

6   procedures used in the course of its operations.  Hardy Decl. ¶ 62.  Revelation of these specific

7   investigative techniques, procedures, and guidelines could enable the targets of these measures to

8   avoid detection or develop countermeasures that would circumvent the FBI's law enforcement

9   efforts.  *Id.*   The Hardy Declaration provides as much information as the FBI has determined it can

10   provide regarding the withheld material, without disclosing the information the FBI seeks to

11   protect pursuant to Exemption 7(E).  *See id.*   The FBI withheld four specific categories of

12   information pursuant to this Exemption.  *Id.* ¶¶ 66-70. As explained below, the FBI's withholding

13   of the following information related to sensitive investigatory techniques, procedures, and

14   guidelines was proper.

15        1.    Operational Directives Concerning Sensitive Investigative Techniques and
                Strategies

16        In this category, the FBI withheld information to protect operational directives that identify

17   sensitive FBI procedures, techniques, and guidelines for conducting investigations pertaining to

18   NSLs or exigent letters to investigative members of the media, and which instruct FBI employees

19   on how to properly use those measures in conducting investigations.  Hardy Decl. ¶ 66.[9] This

20   information was properly withheld under Exemption 7(E).  *Id.*  Releasing such information would

21   inform the public at large of sensitive, unknown investigative techniques used by the FBI, as well

22   as particular unknown uses of them. *Id.* If the FBI were to provide such "a look inside the FBI's

23   law enforcement and national security 'playbook,'" individuals could predict how the FBI might

24        [9] Exemption (7)(E) was asserted to protect information in this category on the following
25   Bates pages: FPF-4-100, 104, 108-113, 115-119, 121-131, 134-146, 149, 210, 216-218, 220-226,
     228-232, 234-248, 253-266, 270, 272, 288-290, 294-302, 394-395, 397-399, 401-402 and 432-435.
26   Hardy Decl. ¶ 66 & n.24.

27

28

respond to certain criminal and suspicious activities, learn the techniques the agency would likely employ in response to those activities, and would be able to preemptively modify their behavior to evade detection and disrupt the techniques, procedures, and strategies the FBI now uses.  *Id.* Indeed, the release of the records the FBI has withheld in this category would be particularly dangerous (and would allow individuals to form a picture of the FBI's strategies) because, in addition to revealing the FBI's procedures, techniques, and guidelines and explaining their proper use, the sources also consolidate diverse sources of information in one place.  *Id.*  Because release of this information would provide an opportunity to evade detection and circumvent the law, the FBI properly withheld these records under Exemption 7(E). *Id.*; *see also Asian Law Caucus*, 2008 WL 5047839, at *5 (disclosure of procedures for coordination with other law enforcement agencies properly withheld where revelation of this information "would permit persons to know what or who triggers an alert to another specific law enforcement agency," thus allowing them "to devise strategies to avoid these triggers"); *PHE, Inc. v. U.S. Dep't of Justice*, 983 F.2d 248, 250-51 (D.C. Cir. 1993) (holding that portions of FBI manual describing patterns of violations, investigative techniques, and sources of information available to investigators were protected by Exemption 7(E)); *Soghoian v. U.S. Dep't of Justice*, 885 F. Supp. 2d 62, 75 (D.D.C. 2012) (holding that information concerning investigative techniques to be used in conducting investigations properly withheld under Exemption 7(E)).

### 2.   Investigative Focus of Specific Investigations

In this category, the FBI withheld a portion of one page to protect information concerning the investigative focus of a specific investigation.[10]  Hardy Decl. ¶ 67.  (The FBI also withheld this same material under Exemptions 5, 6, and 7(C).  *Id.*)  This information was properly withheld under Exemption 7(E), since disclosure of the information withheld in this category would have

---

[10] Exemption (7)(E) was asserted to protect information in this category on the following Bates page:  FPF-290.  Hardy Decl. ¶ 67 & n.25.

significantly negative operational consequences, thus risking circumvention of the law.  Among other things, if individuals knew who the FBI was investigating or had investigated, they could be able to discern particular associations that could cause them to be the subjects of an FBI investigation and could take certain steps (such as cutting ties with these investigative subjects, or altering their behavior to find additional ways to pursue criminal activity) in order to evade suspicion.  *Id.*; *see also Lewis-Bey v. U.S. Dep't of Justice*, 595 F. Supp. 2d 120, 138 (D.D.C. 2009) (details of ATF electronic surveillance techniques, including the specific location where they were employed, were exempt from disclosure pursuant to (7)(E)).

### 3.   Secure FBI E-mail Addresses, Faxes, Telephone Numbers

In this category, the FBI withheld portions of 8 pages to redact non-public secure internal e-mail addresses, faxes, and telephone numbers.  Hardy Decl. ¶ 68.[11]  Disclosure of this information could reasonably be expected to risk circumvention of the law because it would expose the FBI's nonpublic data to hacking, misuse, exploitation, and unauthorized access, as well as unlawful viewing and manipulation of the FBI's data and misuse of the FBI's technology system. *Id.* Such "[c]ircumvention could take the form of hacking into the FBI systems using e-mail IP addresses, reading e-mails, learning the focus and direction of an investigation, altering behavior to evade detection, [and] mimicking of e-mail addresses to send false e-mails that could alter the direction and focus of an investigation."  *Id.* Release of the information would also allow individuals to disrupt the FBI's official business, and subject the FBI's employees to harassing phone calls, and facsimiles. *Id.* Courts have upheld the FBI's withholding of similar information pursuant to Exemption 7(E).  *See Light*, 968 F. Supp. 2d at 29; *Jewett v. U.S. Dep't of State*, No. 11-cv-1852, 2013 WL 550077, at *9 (D.D.C. Feb. 14, 2013).  Similarly here, the FBI is entitled to summary judgment with respect to the information in this category.

---

[11] Exemption (7)(E) was asserted to protect information in this category on the following Bates pages:  FPF-155, 209, 276, 281, 287, 289-290, and 400.  Hardy Decl. ¶ 68 & n. 26.

DEFENDANT'S NOTICE OF MOTION, MOTION FOR SUMMARY JUDGMENT, AND
MEM. IN SUPPORT, CASE NO. 15-CV-03503-HSG

### 4.     FBI Internal Techniques and Procedures

In this category, the FBI withheld parts of 24 pages to redact portions of NSL PowerPoint training presentations discussing guidelines, techniques and procedures for conducting law enforcement investigations used in the context of NSLs.[12]  Hardy Decl. ¶ 69.  Disclosure of this information could reasonably be expected to lead to circumvention of the law, because public revelation of the guidelines, techniques, and procedures used by the FBI in utilizing NSLs in law enforcement investigations—including specific circumstances triggering the use of a particular technique—would provide insights to individuals, allowing them to adjust their behaviors to avoid detection or develop countermeasures to undermine the effectiveness of the FBI's measures.  *Id.* ¶¶ 69-70.  This information was properly withheld under Exemption 7(E).

## IV.     The FBI Released All Reasonably Segregable Information

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).  The FBI has met that burden here because "[t]he FBI conducted a line by line review of the responsive records and has made every effort to provide plaintiff with all material in the public domain and has taken all reasonable efforts to ensure that no segregable, non-exempt portions were withheld from the plaintiff."  Hardy Decl. ¶ 24; *see Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776-77 (D.C. Cir. 2002) (agency demonstrated there was no reasonably segregable non-exempt information where it submitted affidavit showing that agency had conducted line-by-line review of each document withheld in full).

## CONCLUSION

The Court should grant Defendant's motion for summary judgment.

---

[12] Exemption (7)(E) was asserted to protect information in this category on the following Bates pages: FPF-108-111, 120, 123, 134, 142, 150, 153, 211, 216-218, 223, 233, 236, 252, 262, 269, 271, 275-276 and 292.  Hardy Decl. ¶ 69 & n.27.

1    DATED:  May 9, 2016                    Respectfully submitted,

2

3                                            BENJAMIN C. MIZER
                                             Principal Deputy Assistant Attorney General

4                                            MARCIA BERMAN
                                             Assistant Director, Federal Programs Branch
5

6                                            /s/
                                             ANDREW M. BERNIE (D.C. Bar #995376)
7                                            Trial Attorney
                                             U.S. Department of Justice
                                             Civil Division, Federal Programs Branch
8                                            20 Massachusetts Ave., N.W.
                                             Washington, D.C. 20530
9                                            Telephone: (202) 616-8488
                                             Facsimile: (202) 616-8470
10                                           E-mail: andrew.m.bernie@usdoj.gov

11                                           ATTORNEYS FOR DEFENDANT
                                             DEPARTMENT OF JUSTICE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28