1  BENJAMIN C. MIZER
   Principal Deputy Assistant Attorney General
2  MARCIA BERMAN
   Assistant Branch Director
3  ANDREW M. BERNIE, D.C. Bar No. 995376
   Trial Attorney
4  United States Department of Justice
   Civil Division, Federal Programs Branch
5  20 Massachusetts Avenue NW
   Washington, D.C. 20530
6  Telephone:  (202) 616-8488
   Facsimile:  (202) 616-8470
7  Email: andrew.m.bernie@usdoj.gov
8
9  *Attorneys for Defendant*

10

11              **UNITED STATES DISTRICT COURT**

12        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13                **SAN FRANCISCO DIVISION**

14  FREEDOM OF THE PRESS FOUNDATION,    )    Civil Action No. 15-cv-03503-HSG
                                        )
15                          Plaintiff,  )    **DEFENDANT'S REPLY TO**
                                        )    **PLAINTIFF'S OPPOSITION TO**
16        v.                            )    **DEFENDANT'S MOTION FOR**
                                        )    **SUMMARY JUDGMENT**
17  UNITED STATES DEPARTMENT OF         )
    JUSTICE,                            )    **AND**
18                                      )
                            Defendant.  )    **MEMORANDUM OF POINTS AND**
19                                      )    **AUTHORITIES IN OPPOSITION**
                                        )    **TO PLAINTIFF'S CROSS-MOTION FOR**
20                                      )    **SUMMARY JUDGMENT**

21                                           Date: August 18, 2016
                                             Time: 2:00 p.m.
22                                           Place: Courtroom 10, 19th Floor
                                             Judge: Hon. Haywood S. Gilliam Jr.
23

24  _____

25

26

27

28

1
2

# <u>TABLE OF CONTENTS</u>

3

INTRODUCTION ................................................................................................................ 1

4
5

ARGUMENT ..................................................................................................................... 3

6

I.      The FBI Conducted an Adequate Search for Responsive Records ........................ 3

7

II.     The FBI Has Met FOIA's Procedural Requirements ............................................. 6

8
9

III.    The FBI Properly Withheld Information Pursuant to Exemption 1 ....................... 8

10
11

IV.     The FBI Properly Withheld Information Pursuant to Exemption 3 ..................... 11

12

V.      The FBI Properly Withheld Information Pursuant to Exemption 5 ..................... 12

13

        1.   Deliberative Process Privilege ................................................................ 12

14
15

        2.   Attorney-Client Privilege ....................................................................... 15

16

VI.     The FBI Properly Withheld Information Pursuant to Exemption 7(E) ................ 17

17
18

VII.    The FBI Has Not Waived These Exemptions By Official Acknowledgment ...................... 21

19
20

VIII.   The FBI Released All Reasonably Segregable Information ................................. 23

21

IX.     *In Camera* Review is Unwarranted ..................................................................... 24

22
23

CONCLUSION ................................................................................................................ 25

24
25
26
27
28

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

i

# TABLE OF AUTHORITIES

## Cases

*ACLU v. Dep't of Def.*,

    628 F.3d 612 (D.C. Cir. 2011)...................................................................... 24

*Am. Ass'n of Women, Inc. v. Dep't of Justice*,

    --- F. Supp. 3d ----, 2016 WL 958147 (D.D.C. 2016) ................................. 12

*Blanton v. Dep't of Justice*,

    64 F. App'x 787 (D.C. Cir. 2003) ................................................................. 8

*CIA v. Sims*,

    471 U.S. 159 (1985) ..................................................................................... 12

*Council on Am.-Islamic Relations, California v. FBI*,

    749 F. Supp. 2d 1104 (S.D. Cal. 2010) ......................................................... 9

*Dep't of Justice v. Tax Analysts*,

    492 U.S. 136 (1989) ....................................................................................... 5

*Donham v. U.S. Forest Service*,

    No. 07-111, 2008 WL 2157167 (S.D. Ill. May 21, 2008) ........................... 13

*Ebersole v. United States*,

    No. 06-2219, 2007 WL 2908725 (D. Md. Sept. 24, 2007) .......................... 14

*Elec. Frontier Found. v. Dep't of Justice*,

    892 F. Supp. 2d 95, 99-100 (D.D.C. 2012) ................................................ 10

*Elec. Frontier Found. v. Dep't of Justice*,

    No.: 4:11-cv-05221-YGR, 2014 WL 3945646 (N.D. Cal. Aug. 11, 2014)................................. 22

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

ii

*Eslaminia v. FBI*,

    No. C 99-03249 MHP, 2011 WL 5118520 (N.D. Cal. Oct. 28, 2011)........................................ 10

*Fitzgibbon v. CIA*,

    911 F.2d 755 (D.C. Cir. 1990).......................................................................................... 22

*Foster v. Dep't of Justice*,

    933 F. Supp. 687 (E.D. Mich. 1996) ............................................................................... 20

*FTC v. Grolier Inc.*,

    462 U.S. 19 (1983) ........................................................................................................... 14

*Gallant v. NLRB*,

    26 F.3d 168 (D.C. Cir. 1994)............................................................................................. 6

*Grunfeld & Herrick v. U.S. Customs Serv.*,

    709 F.2d 41 (11th Cir. 1983) ............................................................................................. 5

*Hale v. DOJ*,

    973 F.2d 894 (10th Cir. 1992) ......................................................................................... 20

*Halperin v. CIA*,

    629 F.2d 144 (D.C. Cir. 1980).......................................................................................... 9

*Hamdan v. Dep't of Justice*,

    797 F.3d 759 (9th Cir. 2015) ............................................................................... 8, 11, 23

*In re Apollo Grp., Inc. Sec. Litig.*,

    251 F.R.D. 12 (D.D.C. 2008) .......................................................................................... 13

*In re Sealed Case*,

    737 F.2d 94 (D.C. Cir. 1984)........................................................................................... 17

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

iii

*Iturralde v. Comptroller of Currency*,

    315 F.3d 311 (D.C. Cir. 2003) .................................................................................................... 4

*Judicial Watch, Inc. v. Dep't of Justice*,

    No. 11-500, 2011 WL 3664353 (D.D.C. Aug. 22, 2011) ............................................................ 4

*Keys v. Dep't of Justice*,

    830 F.2d 337 (D.C. Cir. 1987) .................................................................................................... 7

*Lahr v. Nat'l Transp. Safety Bd.*,

    569 F.3d 964 (9th Cir. 2009) ................................................................................................... 3, 4

*Lane v. Dep't of Interior*,

    523 F.3d 1128 (9th Cir. 2008) .................................................................................................. 24

*Laroche v. SEC*,

No. C 05-4760 CW, 2006 WL 2868972 (N.D. Cal. Oct. 6, 2006) .................................................. 6

*Larson v. Dep't of State*,

    565 F.3d 857 (D.C. Cir. 2009) .................................................................................................. 11

*Lead Indus. Ass'n, Inc. v. OSHA*,

    610 F.2d 70 (2d Cir. 1979) ......................................................................................................... 5

*Lewis v. IRS*,

    823 F.2d 375 (9th Cir. 1987) .................................................................................................... 24

*Lewis-Bey v. Dep't of Justice*,

    595 F. Supp. 2d 120 (D.D.C. 2009) ......................................................................................... 20

*Lion Raisins v. Dep't of Agric.*,

    354 F.3d 1072 (9th Cir. 2004) .................................................................................................. 24

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

iv

*MacLean v. Dep't of Def.*,

    No. 04-CV-2425, slip op. at 8-9 (S.D. Cal. June 6, 2005) ........................................................... 14

*Maguire v. Mawn*,

    No. 02 Civ. 2164, 2004 WL 1124673 (S.D.N.Y. May 19, 2004) ................................................ 20

*Maydak v. DOJ*,

    254 F. Supp. 2d 23 (D.D.C. 2003) ............................................................................................. 21

*Maynard v. CIA*,

    986 F.2d 547 (1st Cir. 1993) ......................................................................................................... 8

*Mead Data Cent., Inc. v. Dep't of the Air Force*,

    566 F.2d 242 (D.C. Cir. 1977).......................................................................................................... 6

*Military Audit Project v. Casey*,

    656 F.2d 724 (D.C. Cir. 1981).......................................................................................................... 9

*Morley v. CIA*,

    508 F.3d 1108 (D.C. Cir. 2007)....................................................................................... 7, 9, 10, 11

*Nation Magazine v. U.S. Customs Serv.*,

    71 F.3d 885 (D.C. Cir. 1995)........................................................................................................... 4

*Oglesby v. Dep't of the Army*,

    920 F.2d 57 (D.C. Cir. 1990)........................................................................................................... 3

*People for the Am. Way Found. v. Nat'l Park Serv.*,

    503 F. Supp. 2d 284 (D.D.C. 2007).............................................................................................. 13

*Pickard v. Dep't of Justice*,

    653 F.3d 782 (9th Cir. 2011)......................................................................................................... 22

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

v

*Pub. Emps. for Envtl. Responsibility v. Bloch*,

    532 F. Supp. 2d 19 (D.D.C. 2008) ........................................................................... 13

*Public Citizen v. Dep't of State*,

    11 F.3d 198 (D.C. Cir. 1993) ................................................................................... 22

*Queen v. Gonzales*,

No. Civ. A. 96-1387, 2005 WL 3204160 (D.D.C. Nov. 15, 2005) .................................... 8

*SafeCard Servs., Inc. v. SEC*,

    926 F.2d 1197 (D.C. Cir. 1991) ................................................................................. 6

*Schlesinger v. CIA*,

    591 F. Supp. 60 (D.D.C. 1984) .................................................................................. 9

*Shapiro v. Dep't of Justice*,

    37 F. Supp. 3d 7 (D.D.C. 2014) ........................................................................... 8, 10

*Shores v. FBI*,

    185 F. Supp. 2d 77 (D.D.C. 2002) ........................................................................... 20

*Sussman v. U.S. Marshals Serv.*,

    494 F.3d 1106 (D.C. Cir. 2007) ............................................................................... 23

*Vaughn v. United States*,

    936 F.2d 862 (6th Cir.1991) ...................................................................................... 6

*Washington Post v. Dep't of Def.*,

    766 F. Supp. 1 (D.D.C. 1991) ................................................................................... 8

*Weisberg v. U.S. Dep't of Justice*,

    745 F.2d 1476 (D.C. Cir. 1984) ................................................................................. 3

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

vi

*Whitaker v. CIA*,

    64 F. Supp. 3d 55 (D.D.C. 2014) ................................................................................. 12

*Wolf v. CIA*,

    473 F.3d 370 (D.C. Cir. 2007) ............................................................................... 9, 22

*Zemansky v. EPA*,

    767 F.2d 569 (9th Cir. 1985) ...................................................................................... 4

## **Statutes**

5 U.S.C. § 552(a)(2) ................................................................................................. 1, 5

5 U.S.C. § 552(b)(7) ..................................................................................................... 18

5 U.S.C. § 552(a)(4)(B) ............................................................................................... 25

50 U.S.C. § 3024(i)(1) ............................................................................................ 11, 12

## **Other Authorities**

Executive Order 13526 .............................................................................................. 8, 9

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

vii

**INTRODUCTION**

Summary judgment in favor of the Department of Justice is proper.  In response to the Freedom of Information Act ("FOIA") request at issue in this case (the "FOIA Request" or "Request"), the Federal Bureau of Investigation ("FBI") conducted a multi-pronged search that included three separate agency components deemed reasonably likely to have records responsive to the FOIA Request.  Freedom of the Press Foundation ("FPF" or "Plaintiff") challenges that search by complaining that one particular document was not accounted for in the FBI's *Vaughn* submission, but a search need not uncover every allegedly responsive document to be adequate under FOIA.  In any event, the unclassified version of the document Plaintiff references has already been released by the FBI under 5 U.S.C. § 552(a)(2) (and the FBI thus was not required to make it available in response to the FOIA Request), and a draft appendix section mentioned by Plaintiff was referenced in the Government's *Vaughn* Index.  Plaintiff's remaining search-related arguments amount to speculation about the possible existence of unidentified additional documents, which is not a basis for challenging the adequacy of the FBI's search.

The FBI has also shown that its assertion of FOIA Exemptions 1, 3, 5, and 7(E) are fully supported.  As a threshold matter, Plaintiff's complaints about the procedural adequacy of the FBI's declaration and *Vaughn* Index are without merit, and numerous courts have accepted similar submissions from the FBI and from other agencies.  With regard to information withheld under Exemption 1, the Hardy Declaration amply satisfies the Government's burden to show that the small amount of classified material at issue—which comprises intelligence sources and methods—was properly classified.  And even if this Court were to accept Plaintiff's invitation to second-guess the FBI's classification decisions (which, respectfully, it should not), the same material was also properly withheld under Exemption 3 pursuant to the National Security Act of 1947.

The FBI also properly withheld a set of materials under Exemption 5 pursuant to the deliberative process privilege and attorney-client privilege.    The deliberative process

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

1

withholdings—which consist primarily of drafts that were not adopted as the final version of the documents at issue, as well as internal FBI emails—were entirely appropriate and Plaintiff's challenges to them are without merit.   The FBI likewise correctly withheld pursuant to the attorney-client privilege communications between and among FBI counsel and the agency's client employees reflecting the seeking and/or providing of legal advice with respect to National Security Letters ("NSLs") as well as training slides reflecting specific pieces of legal advice to FBI clients related to the FBI's use of NSLs as an investigative technique or procedure.   Finally, as set forth in the Hardy Declaration and explained further below, the FBI properly invoked Exemption 7(E) to protect its investigatory techniques, procedures, and guidelines authorized for use by the FBI to pursue its law enforcement missions.

Plaintiff's further speculation that withheld information has been specifically acknowledged by the FBI in released portions of its DIOG is without merit.   That particular waiver doctrine is limited and there is no basis for applying it here; to the contrary, in processing the FOIA Request the FBI conducted an item by item comparison to the most current, publicly released version of the DIOG to ensure that the redactions taken in this case matched those in the DIOG.   And by representing that a line by line review was conducted to identify non-exempt information and by breaking down the exempted material into detailed categories, the FBI satisfied its obligation to demonstrate that it released all reasonably segregable non-exempt information.   Summary judgment is warranted.[1]

---

[1]   The Reporters Committee for Freedom of the Press and thirty-seven additional media organizations have submitted an amicus brief in support of Plaintiff's opposition to Defendant's motion for summary judgment.   The amicus brief largely consists of a discussion as to why the signatory media organizations believe the subject matter of the FOIA Request is important to the media and the public.   Although the Government has no reason to doubt the sincerity of amici's views, the brief is not relevant to the issues presented by the parties' motions—the adequacy of the FBI's search and the validity of its exemption claims.

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

2

1

## ARGUMENT

2

**I.      The FBI Conducted an Adequate Search for Responsive Records**

3

4          On summary judgment in a FOIA case, the agency must demonstrate that "it has conducted

5     a search reasonably calculated to uncover all relevant documents."  *Lahr v. Nat'l Transp. Safety

6     Bd.*, 569 F.3d 964, 986 (9th Cir. 2009).    A FOIA search need not be exhaustive, nor must it

7     uncover every responsive document.  Rather, an agency is entitled to summary judgment if it can

8     show "that it made a good faith effort to conduct a search for the requested records, using methods

9     which can be reasonably expected to produce the information requested."  *Oglesby v. Dep't of the

10    Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  "[T]he issue to be resolved is not whether there might

11    exist any other documents possibly responsive to the request, but rather whether the *search* for

12    those documents was *adequate*."  *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C.

13    Cir. 1984).  "In demonstrating the adequacy of the search, the agency may rely upon reasonably

14    detailed, nonconclusory affidavits submitted in good faith."  *Id.*

15         The FBI's search in response to the FOIA Request in this case met that standard.  The FBI's

16    Record/Information Dissemination Section ("RIDS") sent an Electronic Communication to its

17    Discovery Processing Unit ("DPU") requesting copies of all FBI records created on or before

18    August 10, 2015 pertaining to the procedures and oversight of NSLs or Exigent Letters issued by

19    the FBI to obtain records regarding members of the media; the DPU determined that its Offices of

20    General Counsel would be the components reasonably likely to have potentially responsive

21    records, and it contacted the Offices of General Counsel within its National Security Law,

22    Litigation, and Investigative and General Law branches.  Hardy Decl. ¶¶ 19-20; Second Decl. ¶ 7.

23    Each of those branches reached out to all the units within their respective components, tasked them

24    with searching for responsive records, and sent responsive material to RIDS for processing.  Hardy

25    Decl. ¶ 20.   The FBI also identified one DIOG section, which addresses NSLs, as potentially

26    responsive, and it provided that section to FPF in redacted form.  *Id.* ¶ 7; Hardy Decl. ¶¶ 21, 26.

27

28

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

3

The FBI's search was reasonably calculated to locate records responsive to Plaintiff's FOIA Request.

Although Plaintiff challenges the FBI's search, Plaintiff makes only two limited arguments directed solely at the *results* of the search.  Specifically, Plaintiff asserts that the search was inadequate because the Government failed to identify one particular allegedly responsive document (Annex G to the DIOG), and because the search did not uncover any responsive documents specifically dated prior to September 15, 2011.  *See* ECF No. 37 ("Opp.") at 12-13.  But it is well established that "the adequacy of a FOIA search is generally determined not by the *fruits* of the search, but by the *appropriateness of the methods* used to carry out the search."  *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (emphases added); *accord Lahr*, 569 F.3d at 987 (citing cases, including *Iturralde*, standing for the same principle); *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985) (quoting statement in *Weisberg* that "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request but rather whether the *search* for those documents was *adequate*"); *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995) ("Of course, the failure to turn up this document does not alone render the search inadequate; there is no requirement that an agency produce all responsive documents."); *Judicial Watch, Inc. v. Dep't of Justice*, No. 11-500, 2011 WL 3664353, at *4 (D.D.C. Aug. 22, 2011) (noting that "an agency's failure to find a particular document does not undermine the determination that the search was adequate").  "After all, particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them."  *Iturralde*, 315 F.3d at 315.  Because Plaintiff has failed to identify any flaw in the process by which the FBI conducted its search, the FBI is entitled to summary judgment on the adequacy of its search.

In any event, Plaintiff's allegations concerning two purported omissions are insubstantial and do not raise a genuine issue of material fact concerning the adequacy of the FBI's search.

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

4

Plaintiff argues that the FBI "failed to identify Annex G to the DIOG, which specifies the procedures for issuing NSLs to obtain telephone records of members of the news media and news organizations—and is directly responsive to FPF's request."  Opp. at 13.  But the FBI has already—under 5 U.S.C. § 552(a)(2)—made publicly available an unclassified version of that Annex; indeed, Plaintiff *attaches* that document as an exhibit to its supporting Declaration.  *Id.* "Under subsection (a)(3) [of FOIA], the general provision covering the disclosure of agency records, an agency need not make available those materials that have already been disclosed under subsections (a)(1) and (a)(2)."  *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 152 (1989); *see also Grunfeld & Herrick v. U.S. Customs Serv.*, 709 F.2d 41, 42 (11th Cir. 1983) (agency complied with FOIA by posting requested information at a customshouse); *Lead Indus. Ass'n, Inc. v. OSHA,* 610 F.2d 70, 86 (2d Cir. 1979) (agency not required under FOIA to send copies of records that had appeared previously in report published by the agency).  Far from being "egregious," Opp. at 13, the FBI's omission of this publicly available document was entirely consistent with FOIA.  And although the updated DIOG Classified Appendix – Section G-12 was not identified, a draft version was located as a result of the search and is referenced in the FBI's *Vaughn* Index.  *See* Second Decl. ¶ 7 n.4.

Plaintiff's only other challenge to the search consists of its observation that, although the Request sought records generated between January 2009 and March 10, 2015, Hardy Decl. ¶ 8, "the records identified by the FBI appear to be primarily from 2014 and 2015, with the earliest definitively dated record from September 15, 2011."  Opp. at 13.  But while Plaintiff speculates that "[i]t does not appear that the FBI's search for responsive records covered the full time period specified in FPF's request," *id.* at 14, the FBI's search covered all documents created on or before August 10, 2015 (the date RIDS initiated the search), a period that is *broader* than that listed in the FOIA Request.  *See* Second Decl. ¶ 7.  Plaintiff notes that the FBI revised and updated the DIOG in October 2011, Opp. at 14, but, as previously mentioned, a draft update to Annex G was referenced

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

5

in the *Vaughn* Index.  Plaintiff surmises that additional responsive documents from earlier periods exist, but offers nothing more than guesswork in support of this conjecture.   These arguments fail because they consist of "[m]ere speculation that as yet uncovered documents may exist," which "does not undermine the finding that the agency conducted a reasonable search for [records]." *SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1201 (D.C. Cir. 1991); *accord  Laroche v. SEC*, No. C 05-4760 CW, 2006 WL 2868972, at *4 (N.D. Cal. Oct. 6, 2006), *aff'd*, 289 F. App'x 231 (9th Cir. 2008).

Because the FBI conducted a reasonable search for responsive records and Plaintiff's various complaints about that search are without merit, Defendant is entitled to summary judgment on this issue.

## II.      The FBI Has Met FOIA's Procedural Requirements

FPF further argues that the FBI's *Vaughn* submission fails to meet the procedural requirements necessary to sustain the agency's burden under FOIA.  *See* Opp. at 11-12.  This argument likewise lacks merit.  FPF notes that "when an agency seeks to withhold information it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply."  *Id.* at 11 (quoting *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).  But in meeting that burden, "materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994); *see also Vaughn v. United States*, 936 F.2d 862, 867 (6th Cir. 1991) (noting that "[a] court's primary focus must be on the substance, rather than the form, of the information supplied by the government to justify withholding requested information").

In this case, the FBI submitted a lengthy, detailed declaration setting forth coded categories of materials withheld pursuant to applicable FOIA exemptions.  Hardy Decl. ¶ 23.  It explained the

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

6

nature of the information withheld in each category and set forth the particular pages on which each code was applied. *Id.* ¶¶ 34-70. It provided copies of the partially withheld pages to FPF so that FPF could see where on the pages the codes were applied as well as the context of those withholdings. *Id.* ¶ 24. For pages withheld in full, the FBI supplied FPF with a Deleted Page Information Sheet which identifies the applicable FOIA exemption(s) relied upon to withhold the pages in full, as well as the Bates numbers for the withheld material. *Id.* The Declaration provided a separate description of each underlying document category and sub-category, *id.* ¶¶ 25-33, as well as a *Vaughn* Index providing a further description of the withheld material within each document category group (broken-down into sub-groupings to discuss the particular exemptions asserted), *id.* ¶ 22 & Ex. I. The FBI is now also submitting a Second Declaration that provides additional detail concerning the withheld materials, and further explains why the FBI properly asserted particular FOIA exemptions.

The FBI's comprehensive *Vaughn* showing more than satisfies its obligations under FOIA. Indeed, courts have repeatedly accepted similar submissions from the FBI and from other agencies. *See, e.g.*, *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (explaining that "[w]e have never required repetitive, detailed explanations for each piece of withheld information—that is, codes and categories may be sufficiently particularized to carry the agency's burden of proof" and finding submission sufficient where "[a]lthough the CIA has not matched each redaction with a specific exemption, its *Vaughn* index does identify the exemptions claimed for each individual document," thus enabling "[plaintiff] and the court to identify the records referenced and understand the basic reasoning behind the claimed exemptions"); *Keys v. Dep't of Justice*, 830 F.2d 337, 349-50 (D.C. Cir. 1987) (finding submission adequate where "coded symbols categorized types of information that might fall under each of the FOIA exemptions," and rejecting arguments based on assertions "that the FBI has not provided an individualized justification for every single deletion" and "that the FBI used symbols (e.g., 'b7c-4') at the places of deletion, thereby referring to its more detailed

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

7

discussion, rather than fully repeating that discussion each and every time"); *Blanton v. Dep't of Justice*, 64 F. App'x 787, 789 (D.C. Cir. 2003) ("[T]he FBI's affidavit and the coding provided by the FBI otherwise adequately describes the documents and justifies the exemptions relied upon for each redaction or withheld document."); *Maynard v. CIA*, 986 F.2d 547, 559 n.13 (1st Cir. 1993) (explaining coded format and noting its approval by multiple courts); *Queen v. Gonzales*, No. Civ. A. 96-1387, 2005 WL 3204160, at *3 (D.D.C. Nov. 15, 2005) (FBI's declaration sufficient where "[f]or each page withheld in part, the FBI labeled each redaction with an exemption code" and "[i]n order to review the justification for each redaction, the reviewing party refers back to the Hardy Declaration, which describes the type of information withheld and provides the basis for redacting that type of information").   And as explained in the subsequent sections, Plaintiff's various contentions that the FBI did not sufficiently describe the nature of the information withheld and the bases for its exemption claims lack merit.   The FBI is thus entitled to summary judgment on the adequacy of its *Vaughn* submission.

III.     **The FBI Properly Withheld Information Pursuant to Exemption 1**

As explained in Defendant's s motion for summary judgment and in the Hardy Declaration, the FBI withheld a small amount of material—on seven pages of the 436 identified as responsive— that was classified pursuant to Executive Order 13526.   Mem. at 8-11; Hardy Decl. ¶ 40.   Judicial review of these Exemption 1 withholdings is limited.   "Information concerning matters of national security is exempt from disclosure under FOIA Exemption 1 so long as the information satisfies the substantive and procedural criteria set forth in an Executive Order."   *Shapiro v. Dep't of Justice*, 37 F. Supp. 3d 7, 23 (D.D.C. 2014); *see also Hamdan v. Dep't of Justice*, 797 F.3d 759, 773 (9th Cir. 2015) (noting that "the Supreme Court, our court, and other circuits have emphasized the importance of deference to executive branch judgments about national security secrets"). "Substantive review of classification decisions," moreover, "is quite deferential."   *Washington Post v. Dep't of Def.*, 766 F. Supp. 1, 6 (D.D.C. 1991)   Courts "accord substantial weight to an agency's

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

8

affidavit concerning the details of the classified status of the disputed record." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  This is especially true "in a national security case, in which the agency possesses necessary expertise to assess the risks of disclosure," *Schlesinger v. CIA*, 591 F. Supp. 60, 67 (D.D.C. 1984), and courts "lack the expertise necessary to second-guess . . . agency opinions,"  *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980). Therefore, in such a context, an agency's justification is sufficient "if it appears logical or plausible." *Wolf v. CIA*, 473 F.3d 370, 375 (D.C. Cir. 2007).

The Hardy Declaration establishes that Mr. Hardy is an original classification authority; the Declaration, moreover, avers that Mr. Hardy ensured that all of the procedural requirements of Executive Order 13526 were followed, including proper identification and marking of documents. *See* Hardy Decl. ¶¶ 2, 39.   The Declaration establishes that the withheld material contains information pertaining to intelligence sources and methods, an authorized basis for classification, *see* Executive Order 13526 § 1.4(c).  Mr. Hardy determined that release of this information reasonably could be expected to cause serious damage to the national security of the United States, and therefore should be classified at the "Secret" level.  Hardy Decl. ¶ 40.  Because the Hardy Declaration satisfies the FBI's burden to justify its Exemption 1 withholdings, the FBI is entitled to summary judgment on those withholdings.  Plaintiff's contrary arguments are unpersuasive and certainly "do[] not overcome the '*substantial weight*' the court must accord 'to an agency's affidavit concerning the details of the classified status of the disputed record.'"  *Morley*, 508 F.3d at 1124 (quoting *Military Audit Project*, 656 F.2d at 738) (emphasis originally supplied by *Military Audit Project*); *see also Council on Am.-Islamic Relations, California v. FBI*, 749 F. Supp. 2d 1104, 1109 (S.D. Cal. 2010).[2]

[2] Plaintiff argues that records responsive to its request could not reveal intelligence sources and methods because "FPF's request simply asks for the FBI's procedures for issuing NSL and exigent letters to obtain information about the news media" and "[t]he FBI's use of NSLs as an investigative tool is publicly acknowledged and well documented by the DOJ itself."  Opp. at 18. But of course, the fact that the existence of NSLs and certain matters concerning their use is

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff asserts that the FBI's Exemption 1 showing is nothing more than "a boilerplate explanation of why disclosure could be expected to cause serious damage to national security," *see* Opp. at 16, but that is not so.  Mr. Hardy explained that an intelligence activity or method "is needed by U. S. Intelligence/Counterintelligence agencies to carry out their missions" and that "confidentiality must be maintained with respect to the activity or method if the viability, productivity and usefulness of its information is to be preserved."   Hardy Decl. ¶ 41.  He stated that "the intelligence activities or methods withheld in this case . . . are still used by the FBI today." Hardy Decl. ¶ 42.  And the Hardy Declaration went on to note that disclosure of the information properly classified at the Secret level would "(a) reveal the actual intelligence activity or method utilized by the FBI against specific types of targets; (b) disclose the intelligence-gathering capabilities of the method utilized by the FBI against the target types; and (c) provide an assessment of the intelligence source penetration of a specific target type during a specific period of time."  *Id.* ¶ 44.  To prevail on an Exemption 1 claim, "little proof or explanation is required beyond a plausible assertion that information is properly classified[.]"  *Eslaminia v. FBI*, No. C 99-03249 MHP, 2011 WL 5118520, at *2 (N.D. Cal. Oct. 28, 2011) (quoting *Morley*, 508 F.3d at 1124).  The Hardy Declaration easily clears this low bar.  *See Elec. Frontier Found. v. Dep't of Justice*, 892 F. Supp. 2d 95, 99-100 (D.D.C. 2012); *Shapiro*, 37 F. Supp. 3d at 25 (declaration sufficient because "[i]t defines what constitutes an intelligence activity or method, and describes with reasonable detail the information withheld so as to demonstrate that Exemption 1 applies without revealing the exact information at issue") (internal citation omitted).

The Hardy Declaration and *Vaughn* Index is more than sufficient to satisfy Defendant's

publicly known does not mean that *all* information relating to the FBI's use of this investigative tool and responsive to Plaintiff's Request is publicly known.   Indeed, if Plaintiff believed otherwise, presumably it would not have submitted the FOIA Request or instituted this action. This speculation supplies no basis for second-guessing the FBI's classification decisions.

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

obligation to provide "a plausible assertion that information is properly classified."[3]  *Morley*, 508

F.3d at 1124.  Summary judgment on the Exemption 1 withholdings is warranted.[4]

## IV.    The FBI Properly Withheld Information Pursuant to Exemption 3

The FBI also properly withheld, under Exemption 3, portions of seven pages pursuant to 50

U.S.C. § 3024(i)(l).    Hardy Decl. ¶ 47.    The information withheld pursuant to 50 U.S.C.

§ 3024(i)(l) is the same information withheld pursuant to Exemption 1.    Under this exemption, the

FBI "need only show that the statute claimed is one of exemption as contemplated by Exemption 3

and that the withheld material falls within the statute."  *Larson v. Dep't of State*, 565 F.3d 857, 865

(D.C. Cir. 2009); *Hamdan*, 797 F.3d at 776 ("There is a two-step inquiry in deciding Exemption 3

questions.  We ask first whether the statute identified by the agency is a statute of exemption within

the meaning of Exemption 3, and then whether the withheld records satisfy the criteria of the

exemption statute.").  The FBI has met both of these two requirements.

As to the first requirement, Plaintiff acknowledges that Section 3024(i)(1) is a valid

Exemption 3 statute.  *See* Opp. at 15.  And with respect to the second, as noted in the previous

section, the Hardy Declaration amply establishes that the material withheld under Exemption 1 (the

same material withheld pursuant to Section 3024(i)(1) under Exemption 3) comprises intelligence

---

[3] To the extent the Court believes additional information is needed, the FBI is willing to provide an ex parte declaration upon request.  The FBI respectfully submits, however, that the information it has already submitted is more than sufficient to meet its minimal Exemption 1 burden, and that such a declaration would be unnecessary.

[4] Plaintiff contends that the FBI "fails to assert that the document would even reveal sources or methods—it merely states the withheld information pertains to them."  Opp. at 17 (emphases omitted) (citing Hardy Decl. ¶ 50). The cited paragraph in Mr. Hardy's declaration states, however, that Mr. Hardy "determined that the information withheld pursuant to Exemption (b)(3) in the records at issue comprise FBI's intelligence sources and methods."  Hardy Decl. ¶ 50; *see also Comprise*, Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/comprise (last visited July 13, 2016) (defining "comprise" to mean, inter alia, "to be made up of"); Hardy Decl. ¶ 50 (stating that disclosure of the information withheld under Exemption 1 would, inter alia, "reveal the actual intelligence activity or method utilized by the FBI against specific types of targets").

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

11

sources and methods.  The Exemption 3 analysis is no less deferential.    "[T]he CIA has 'very broad authority to protect all sources of intelligence information from disclosure.'"  *Whitaker v. CIA*, 64 F. Supp. 3d 55, 63-64 (D.D.C. 2014) (quoting *CIA v. Sims*, 471 U.S. 159, 168-69 (1985)).  "Because of this 'sweeping power,' courts are required to give 'great deference' to the CIA's assertion that a particular disclosure could reveal intelligence sources or methods."  *Id.*; *see also Am. Ass'n of Women, Inc. v. Dep't of Justice*, --- F. Supp. 3d ----, 2016 WL 958147, at *5 (D.D.C. 2016) ("deferring to Mr. Hardy's declaration" that "I have determined that the FBI's intelligence sources and methods would be revealed if any of the withheld information is disclosed to plaintiffs, and thus, the FBI is prohibited from disclosing the information under 50 U.S.C. § 3024(i)(1)"); *compare* Hardy Decl. ¶ 50 ("I have determined that the information withheld pursuant to Exemption (b)(3) in the records at issue comprise FBI's intelligence sources and methods.").  Defendant is thus entitled to summary judgment concerning the materials withheld pursuant to Section 3024(i)(1), even if the Court were to conclude (which it should not) that there is a genuine issue of material fact as to whether these same materials were properly classified under Exemption 1.[5]

## V.    The FBI Properly Withheld Information Pursuant to Exemption 5

### 1.    Deliberative Process Privilege

As set forth in Defendant's motion for summary judgment and in the Hardy Declaration, the FBI withheld five categories of information under the deliberative process privilege (four of which consist of drafts):  (1) a draft of the FBI's Policy Implementation Guide containing drafts of

---

[5]  Plaintiff points to one sentence of paragraph 50 of the Hardy Declaration, which FPF characterizes as asserting "that because Congress prohibits the disclosure of 'sources and methods,' disclosure of the records would comprise 'sources and methods.'"  Opp. at 17.  The Government acknowledges that this sentence in paragraph 50 was poorly worded and that the syllogism Plaintiff recites is indeed circular.  But the balance of the Hardy Declaration (the portions discussing Exemption 1 and Exemption 3, both of which were asserted over the same material), make clear that his conclusions were based on the content of the information, not the mere fact that Congress has prohibited disclosure of intelligence sources and methods.

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

12

operational directives; (2) a draft of DIOG operational directives; (3) a draft of the policy for obtaining information from members of the news media (and arresting, questioning, and charging news media members); (4) a draft of the Department of Justice's News Media Guidelines regarding issues pertaining to investigations of members of the media (as well as policy recommendations concerning certain issues relating to NSLs); and (5) portions of emails in which FBI employees were engaged in comments concerning various aspects of the Department of Justice's Media Guidelines.  *See* ECF No. 30 ("MSJ") at 16-17.  These records were properly withheld under the deliberative process privilege and none of Plaintiff's arguments persuade otherwise.

As to the draft materials, "draft documents by their very nature, are typically predecisional and deliberative, because they reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation either by their authors or by superiors."  *In re Apollo Grp., Inc. Sec. Litig.*, 251 F.R.D. 12, 31 (D.D.C. 2008), *aff'd on other grounds*, 329 F. App'x 283 (D.C. Cir. 2009) (non-FOIA case).  Accordingly, "drafts are commonly found exempt under the deliberative process exemption."  *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 303 (D.D.C. 2007); *see also Donham v. U.S. Forest Service*, No. 07-111, 2008 WL 2157167, at *5 (S.D. Ill. May 21, 2008) (finding draft documents to be "precisely the kind of documents that Exemption 5 and the deliberative process privilege seek to protect from disclosure"); *Pub. Emps. for Envtl. Responsibility v. Bloch*, 532 F. Supp. 2d 19, 22 (D.D.C. 2008) (protecting draft "position descriptions").  There is no reason for a different result in this case.  Within the draft Policy Implementation Guide pages, FBI employees were engaged in comments in order to help formulate the FBI's policies concerning the underlying topics.  Hardy Decl. Ex. I at 1.  And as Mr. Hardy's Second Declaration explains, the draft media guidelines appear as "attachments to inter and intra agency e-mails exchanged between personnel responsible for making policy decisions, containing predecisional policy recommendations."  Second Decl. ¶ 9.  "The pre-decisional nature of these items is evidenced by information released within the e-mails

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

13

and preceeding the documents that are subject to revision." *Id.*; *see also id.* (providing further analysis of the emails and explaining their predecisional and deliberative content).

In response, Plaintiff principally argues that, as to at least some of the withheld materials, "the FBI has denied public access to the finished products of the agency's process through other exemption claims," and, according to FPF, "[t]he public's right to know and understand the FBI's NSL practices with respect to the press outweigh the FBI's interest in protecting draft versions of its policies." Opp. at 21. This argument reflects a misunderstanding of Exemption 5, which does not generally permit compelled disclosure of privileged information based on a party's supposed need for that material. *See, e.g.*, *FTC v. Grolier Inc.*, 462 U.S. 19, 28 (1983); *MacLean v. Dep't of Def.*, No. 04-CV-2425, slip op. at 8-9 (S.D. Cal. June 6, 2005) ("[S]ince there is no 'need' determination under FOIA, there is no room for this Court to balance the public's interest in disclosure against defendants' interest in protecting the deliberative process."), *aff'd on other grounds*, 240 F. App'x 751, 754 (9th Cir. 2007). Nor is there any basis in law or common sense for Plaintiff's apparent argument, *see* Opp. at 21, that, when an agency has *validly* withheld particular information from separate sources under other FOIA exemptions, a party is entitled to an agency's deliberative draft materials on the same subjects. In any event, as Mr. Hardy's Second Declaration explains, the withheld information is not the final decision on the areas at issue. Second Decl. ¶ 10; *see also Ebersole v. United States*, No. 06-2219, 2007 WL 2908725, at *5 (D. Md. Sept. 24, 2007) (protecting draft Memorandum of Understanding, noting that draft "does not memorialize a final agency decision").

Plaintiff's challenge to the emails withheld as deliberative is weaker still. As the FBI previously explained, within those emails FBI employees were engaged in deliberative comments concerning various aspects of the Department of Justice's Media Guidelines. Hardy Decl. Ex I at 5-6. Plaintiff contends that "the FBI improperly withheld portions of at least six pages of internal email exchanges between March 11, 2014 and July 28, 2015" because "[t]he email thread in early

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

14

February 2015 consists of an exchange in which an employee of the FBI's New Orleans office asks the Office of General Counsel ('OGC') for advice and guidance on agency procedures" (Plaintiff does not explain why, in its view, portions of the March 2014 exchange was improperly withheld). Opp. at 21-22.  But putting aside that most of the material redacted within this exchange was withheld pursuant to other FOIA exemptions, the portions of that exchange released to Plaintiff make clear that it involved intra-agency advice in response to a question from an FBI attorney, disclosure of which would reveal the agency's deliberative process on the issue discussed.  *See* ECF No. 39-5 at 287-39-6 at 2 (FPF 287-290).  The March 2014 email Plaintiff references likewise attaches a revision and requests that the recipients advise whether the information included in the redacted portion of that email is acceptable.  ECF No. 39-5 at 23 (FPF 285).  The Second Declaration provides further explanation concerning these emails as well as their predecisional and deliberative nature.  *See* Second Decl. ¶ 9.  Contrary to Plaintiff's arguments, the redacted documents released to FPF simply confirm that the FBI properly withheld these quintessentially deliberative materials.  Summary judgment on these withholdings is warranted.

> ### 2.   Attorney-Client Privilege

The FBI likewise properly withheld information in emails and training slides pursuant to the attorney-client privilege.  Mr. Hardy's declaration and *Vaughn* Index explained that the FBI protected email communications between and among FBI counsel as well as their FBI client employees which reflect the seeking and/or provision of legal advice concerning NSLs, as well as legal advice provided by FBI attorneys in the form of training slides.  Hardy Decl. ¶ 54.  Mr. Hardy's Second Declaration similarly notes that "[t]he FBI protected confidential communications between and among FBI counsel and their  FBI client employees reflecting the seeking and/or providing of legal advice with respect to NSLs" (while noting that the same information was also withheld pursuant to the deliberative process privilege), and that it "asserted the attorney client privilege to protect legal advice provided by OGC counsel in the form of training slides" which

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

15

1  "are advisory in nature and reflect specific pieces of legal advice to FBI clients related to the FBI's

2  use of NSLs as an investigative technique or procedure."  Second Decl. ¶ 12.[6]

3          These withholdings were proper.  As Plaintiff notes, the attorney-client privilege requires

4  that there be (1) a communication (2) between privileged persons. . . (3) in confidence, (4) for the

5  purpose of seeking, obtaining or providing legal advice.  Opp. at 23 (citing *United States v. Martin*,

6  278 F.3d 988, 999 (9th Cir. 2002)).  All four requirements are met here.  The emails and training

7  slides are obviously communications; they were shared among privileged persons (the FBI's

8  attorneys and the agency's client employees); they are confidential, *see* Hardy Decl. ¶ 53; and they

9  consist of legal advice on a specific topic that the FBI has identified (NSLs and their use by the

10  FBI).

11          Plaintiff faults the FBI for supposedly not providing enough information concerning "the

12  nature of the legal issues for which advice was being sought by the FBI," Opp. at 24, but the Hardy

13  Declaration and Second Declaration explain that the advice concerned NSLs and their use by the

14  FBI.  It is also utterly obvious on the face of the documents provided to Plaintiff that the withheld

15  material includes communications concerning legal matters, *see generally* ECF No. 39-1-39-5, and

16  FPF does not seriously argue otherwise.

17          Plaintiff also contends that "[t]he FBI makes no attempt to show how any of the materials

18  were kept confidential," Opp. at 25, but this argument likewise goes nowhere.  The Hardy

19  Declaration expressly states that the materials are confidential, and Plaintiff has not pointed to

20  anything that even remotely suggests otherwise.  Hardy Decl. ¶ 53; *see also* Second Decl. ¶ 12.

21  Plaintiff observes that both partially withheld PowerPoint presentations are marked unclassified,

22  but whether a document is *classified* is irrelevant to whether it is confidential in the sense used by

23  the attorney-client privilege.  Plaintiff also observes that the withheld material is not expressly

24

25  [6]  As the Second Declaration explains, the attorney-client privilege withholdings in both

26  PowerPoint presentations reflected confidential communications from OGC counsel to agency
   employees concerning legal issues.  Second Decl. ¶ 12.

27

28          DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
           OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

marked confidential, *id.*, but "an express request for confidentiality is not required" to invoke the privilege, *In re Sealed Case*, 737 F.2d 94, 102 (D.C. Cir. 1984).  FBI personnel were thus not required to mark attorney-client privileged communications as confidential to preserve the privilege, particularly since, once again, it is obvious on the face of the documents that the withheld material reflects confidential communications concerning a legal matter.[7]  The FBI is entitled to summary judgment as to these withholdings.

## VI.    The FBI Properly Withheld Information Pursuant to Exemption 7(E)

Finally, as detailed in Defendant's motion for summary judgment, the FBI properly withheld four specific categories of information pursuant to Exemption 7(E):   (1) operational directives; (2) information concerning the investigative focus of a specific investigation; (3) non-public secure internal e-mail addresses, faxes, and telephone numbers; and (4) guidelines, techniques and procedures for conducting law enforcement investigations related to NSLs.  Hardy Decl.  ¶¶ 66-70.  Plaintiff concedes that the withheld documents are "records or information compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7).  *See* Opp. at 25.  And Plaintiff does not challenge the FBI's withholding of secure email address, faxes, and telephone numbers.  *Id.* at 10.  The only issue to be decided is thus whether the remaining three categories of information are techniques and procedures for law enforcement investigations or prosecutions or guidelines the release of which could reasonably be expected to risk circumvention of the law.   The Hardy Declaration demonstrates that they are.

Plaintiff accuses the FBI of failing to sufficiently describe the withheld material, asserting that the Government's *Vaughn* showing amounts merely to boilerplate claims that particular documents contain "procedures, techniques, and guidelines" and that the release of this information "could reasonably be expected to risk circumvention of the law."  Opp. at 26.  But Plaintiff ignores

---

[7] Plaintiff notes that the Hardy Declaration and *Vaughn* index at various points recited the elements of the work product doctrine rather than the attorney-client privilege. The FBI acknowledges this error.  *See* Second Decl. ¶¶ 11 n.6 & 12.

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

17

both the FBI's coded categories explaining the nature of the material withheld, as well as the portions of the Hardy Declaration and *Vaughn* Index that describe particular documents.   For example, with respect to the draft Policy Implementation Guide, the FBI explained that the purpose of this document:

> is to provide instruction for the management and conduct of cyber investigations; to align operational guidelines with current registration and notification requirements; to articulate the basis for cyber investigations and specify the operational and procedural requirements within those investigations; and to ensure that investigations comply with any applicable laws, statutes, regulations, Attorney General's Guidelines . . . or any internal FBI policy, such as the [DIOG] or any other applicable or successor document(s).

Hardy Decl. ¶ 25.   And the FBI's explanation of the coded category applicable to this document explains that the document (as well as other materials withheld in this category) identifies sensitive FBI procedures, techniques, and guidelines for conducting investigations pertaining to NSLs or exigent letters to investigative members of the media, and which instruct FBI employees on how to properly use those measures to investigative members of the media.   *Id.* ¶ 66.   The Hardy Declaration goes on to explain that "the release of the (b )(7)(E) information in [this document and others in this category] would increase the risk that targets of investigations could avoid detection or develop countermeasures to circumvent the ability of the FBI to effectively use these information national security law enforcement techniques."   *Id.*   Likewise, the emails and documents from the DOJ Media Guidelines are described in detail in the Hardy Declaration, *id.* ¶¶ 27, 29, and this information, together with the coded categories describing the nature of the withheld materials, is more than sufficient to support the FBI's Exemption 7(E) withholdings.

In any event, although Defendant believes that its original *Vaughn* showing sufficiently described the information withheld pursuant to Exemption 7(E), the Second Declaration provides

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

18

extensive additional detail concerning these withholdings.  *See* Second Decl. ¶¶ 16-27.  As the Second Declaration explains, the operational directives withheld by the FBI concern such sensitive investigative matters as: the methods by which the FBI collects and analyzes information, *id.* ¶ 17; non-public filing numbers, classifications, procedures, and specific information required on forms that are placed in non-public databases, *id.* ¶ 18; the identities of individual offices or officers to whom certain information must be reported, *id.* ¶ 19; specific hypothetical scenarios and how FBI employees should respond to them, *id.* ¶ 20; particularly sensitive investigative matters for which additional notifications and authorizations are required, *id.* ¶ 21; FBI-specific terms and definitions, the release of which would supply criminals with information concerning the types of investigative activities subject to higher internal and external examination, *id.* ¶ 22; as well as technical or practical limitations in investigative techniques employed by the FBI, and temporal limitations imposed on the use of various investigative techniques, *id.* ¶¶ 24-25.  The Second Declaration also provides detailed and logical explanations as to why release of these materials could be expected to supply valuable information to criminals or otherwise risk circumvention of the law.  *Id.* ¶¶ 16-26. This information, together with the information in the original Hardy Declaration and *Vaughn* Index, is more than sufficient to satisfy the FBI's burden under Exemption 7(E), particularly in a national security context such as this one in which executive branch judgments are entitled to deference.

The remainder of Plaintiff's challenge to the FBI's invocation of Exemption 7(E) consists of its assertion that the FBI has improperly withheld information that is "routine and generally known."  *See* Opp. at 27.  But as a threshold matter, many of the purported examples identified by Plaintiff do not remotely fit this description.  For example, the FBI's analysis in the training slides of how agents should respond to particular hypothetical scenarios, ECF No. 39-1 at 30-39 (FPF-115-124); FPF-228-237, cannot reasonably be described as routine and generally known to the public; this analysis, moreover, is precisely the sort of material that would enable criminals to

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

19

assess how the FBI might respond to a particular set of facts.

More broadly, although FPF is obviously correct that the FBI's use of NSLs as an investigative technique is known, that does not mean that all information relating to the FBI's use of this tool (and the information it stresses to its employees on this topic) is known.   Indeed, courts have endorsed the withholding of the details of a number of commonly known procedures.  *See, e.g.*, *Lewis-Bey v. Dep't of Justice*, 595 F. Supp. 2d 120, 137 (D.D.C. 2009) (electronic surveillance techniques); *Shores v. FBI*, 185 F. Supp. 2d 77, 85 (D.D.C. 2002) (polygraph information); *Hale v. DOJ*, 973 F.2d 894, 902-03 (10th Cir. 1992) ("polygraph matters"), *vacated & remanded on other grounds*, 509 U.S. 918 (1993); *Foster v. Dep't of Justice*, 933 F. Supp. 687, 693 (E.D. Mich. 1996) (techniques and guidelines used in undercover operations); *Maguire v. Mawn*, No. 02 Civ. 2164, 2004 WL 1124673, at *3 (S.D.N.Y. May 19, 2004) (protecting details of bank's use of "bait money" even though technique is publicly known).  Withholding of such details is particularly justified where, as here, the investigative technique at issue (use of NSLs and exigent letters) "is meant to operate clandestinely, unlike [other techniques] that serve their crime-prevention purpose by operating in the open." *Maguire*, 2004 WL 1124673, at *3.

On pages 28-33 of their brief, Plaintiff also sets forth a number of specific withholdings that it believes comprise public information.  The Second Declaration provides a detailed discussion of the withholdings FPF identifies.  *See* Second Decl. ¶ 28.  As the Second Declaration explains, many of these withholdings involve such matter as "the FBI's interpretation and analysis of publicly available authorities and is used to articulate specific internal FBI procedures and case strategies," "the FBI's analysis of specific hypothetical scenarios," "hypothetical examples illustrating how FBI employees should analyze whether overproduction has occurred and what they should do in response," as well as other forms of interpretation and analysis.  *Id.*  FPF simply assumes that, because statutes governing NSLs and certain facts relating to the FBI's use of them are public, all of the FBI's intra-agency communications on this and related subjects are public as

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

20

well.  That assumption is unwarranted and the Second Declaration provides a logical and detailed explanation concerning the basis for withholding these materials under Exemption 7(E).   And although the FBI acknowledges that some of the withheld material on particular PowerPoint slides summarize publicly known information or discuss concepts and requirements that have been publicly disclosed, the Second Declaration explains that such information and discussion is intertwined with non-public information and/or the FBI's non-public analysis, guidance, and answers to hypothetical scenarios.  *Id.*; *cf. Maydak v. DOJ*, 254 F. Supp. 2d 23, 40 (D.D.C. 2003) ("Entire records are exempt from disclosure when it is shown that 'the exempt and nonexempt information are inextricably intertwined, such that the excision of exempt information would . . . produce an edited document with little informational value.'") (internal citations omitted).  Moreover,  to reveal particular "public information within these pages would provide potential criminals with a window into the FBI's strategies in that it would disclose legal requirements and other issues relating to NSLs that the FBI believes are important enough to stress to its field employees."  Second Decl. ¶ 29.  "Disclosure of such information would naturally tend to pose an increased risk for circumvention of the law."  *Id.*

The FBI is entitled to summary judgment with respect to its withholdings under Exemption 7(E).

## VII.    The FBI Has Not Waived These Exemptions By Official Acknowledgment

Plaintiff further states that "[s]ubstantial portions of section 18 and Annex G of the DIOG have already been publicly released by the FBI in unclassified form" and asserts that, to the extent any withheld information has been officially acknowledged, the FBI must disclose it.  Opp. at 34.  Plaintiff's speculation that the FBI has waived particular exemptions by official acknowledgment lacks merit.

An agency may be compelled to disclose information over a valid FOIA exemption claim only when the specific information at issue has already been fully, publicly, and officially

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

21

disclosed. *Wolf v. CIA*, 473 F.3d at 378. Plaintiff "bear[s] the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Id.* Plaintiff must show that (1) the requested information is "as specific as the information previously released;" (2) that the requested information "match[es] the information previously disclosed"; and (3) the information has "already . . . been made public through an official and documented disclosure." *Pickard v. Dep't of Justice*, 653 F.3d 782, 786 (9th Cir. 2011) (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990)). "Prior disclosure of similar information does not suffice" to negate the government's classification; "instead, the *specific* information sought by the plaintiff must already be in the public domain by official disclosure." *Wolf*, 473 F.3d at 378; *see also Public Citizen v. Dep't of State*, 11 F.3d 198, 203 (D.C. Cir. 1993) ("[A]n agency will not be held to have waived exemption 1 absent a showing by a FOIA plaintiff that the *specific information at issue* has been officially disclosed.").

The "official acknowledgement" test is a "stringen[t]" one, *Public Citizen*, 11 F.3d at 201-02, to be applied with "exactitude," *Wolf*, 473 F.3d at 378. The stringency of the test thus presents a "high hurdle" to Plaintiff out of deference to "the Government's vital interest in information relating to national security and foreign affairs." *Public Citizen*, 11 F.3d at 203. Cases applying these standards confirm the narrowness of the official-acknowledgment doctrine. *See, e.g.*, *Fitzgibbon v. CIA*, 911 F.2d 755, 765-66 (D.C. Cir. 1990) (a 1975 Congressional Committee report revealing the location of a specific CIA station did not operate as a waiver of information regarding the station's location *before or after* 1975); *Elec. Frontier Found. v. Dep't of Justice*, No.: 4:11-cv-05221-YGR, 2014 WL 3945646, at *6 (N.D. Cal. Aug. 11, 2014) (a request seeking the "specific identities of all telecommunications service providers that participated" in a government program was "not identical to" a putative official acknowledgement that there were "three different providers" involved).

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

22

Plaintiff cannot clear this "high hurdle."   Although Plaintiff notes generally that particular portions of the DIOG have been publicly released in unclassified form (and argues in other sections that certain types of information are known to the public), Plaintiff does not even identify any particular material withheld in this case that it believes meets the official-acknowledgment standard, much less demonstrate that this exceedingly demanding standard has been met.  And as Mr. Hardy's Second Declaration explains, the FBI reviewed the withholdings in this case "by making an item by item analysis" to the most recent, publicly released version of the DIOG in order to ensure that the material redacted in this case was not publicly disclosed in the DIOG. Second Decl. ¶ 5. The FBI thus has not waived its ability to assert FOIA exemption claims in this action.

## VIII.   The FBI Released All Reasonably Segregable Information

Plaintiff's contention that Defendant failed to release all reasonably segregable information, *see* Opp. at 34-35, is likewise without merit.  Defendant is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (internal citation omitted).  When the agency's affidavits are entitled to the presumption of good faith, a court need not conduct "a page-by-page review of an agency's work," but instead "may rely on [the] agency's declaration in making its segregability determination."  *Hamdan*, 797 F.3d at 779.

In support of its motion for summary judgment, the Hardy Declaration explained that "[t]he FBI conducted a line by line review of the responsive records and has made every effort to provide plaintiff with all material in the public domain and has taken all reasonable efforts to ensure that no segregable, non-exempt portions were withheld from the plaintiff."   Hardy Decl. ¶ 24.   In addition, the Hardy Declaration breaks the exempted material into categories, explaining in detail the content in each category and justification for its non-disclosure. *Id.* ¶¶ 25-70.   The nine-page *Vaughn* index further identified each document category group, described the contents of the

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

23

document category, and discussed the basis for each particular exemption asserted.  *Id.* ¶ 22 & Ex. I.[8]  When viewed together, the *Vaughn* Index and Hardy Declaration more than satisfy the FBI's burden on segregability, and reflect the FBI's efforts to only withhold information that is exempt or could not reasonably be segregated from exempt information.

## IX.  *In Camera* Review is Unwarranted

Plaintiff also asserts in cursory fashion that the Court should conduct an *in camera* review of withheld materials.  *See* Opp. at 35.  This Court should reject that request.  To be sure, district courts have discretion to determine whether it is appropriate to conduct *in camera* review of documents the government is withholding pursuant to applicable FOIA exemptions. *See* 5 U.S.C. § 552(a)(4)(B).  *In camera* inspection, however, should "not be resorted to lightly," *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987), and is "disfavored" where "the government sustains its burden of proof by way of its testimony or affidavits." *Lion Raisins v. Dep't of Agric.*, 354 F.3d 1072, 1079 (9th Cir. 2004).  "*In camera* inspection is particularly a last resort in national security situations like this case—a court should not resort to it routinely on the theory that it can't hurt." *ACLU v. Dep't of Def.*, 628 F.3d 612, 626 (D.C. Cir. 2011).  Because the Hardy Declaration and *Vaughn* Index as well as the Second Declaration submitted with this brief show that the FBI's invocation of FOIA exemptions is well supported, this is not the rare national security case in which *in camera* review is necessary as a "last resort." *See Lane v. Dep't of Interior*, 523 F.3d 1128, 1135-36 (9th Cir. 2008) (district court "need look no further" when the "affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption") (citation omitted).

---

[8] In what it styles as a segregability argument, Plaintiff criticizes the Government for not entering the partially redacted documents into the record.  Opp. at 34-35.  This attempt to fault the FBI falls flat.  The FBI provided these documents to Plaintiff, and has offered to make them available to the Court upon request.  *See* Hardy Decl. ¶ 24.

DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG

24

1

## CONCLUSION

2

3       The Court should grant Defendant's motion for summary judgment and deny Plaintiff's

motion for summary judgment.

4

5    DATED:  July 15, 2016                     Respectfully submitted,

6

7                                              BENJAMIN C. MIZER
                                               Principal Deputy Assistant Attorney General
8
                                               MARCIA BERMAN
9                                              Assistant Director, Federal Programs Branch

10                                             _/s/_____
                                               ANDREW M. BERNIE (D.C. Bar #995376)
11                                             Trial Attorney
                                               U.S. Department of Justice
12                                             Civil Division, Federal Programs Branch
                                               20 Massachusetts Ave., N.W.
13                                             Washington, D.C. 20530
                                               Telephone: (202) 616-8488
14                                             Facsimile: (202) 616-8470
                                               E-mail: andrew.m.bernie@usdoj.gov
15
                                               ATTORNEYS FOR DEFENDANT
16                                             DEPARTMENT OF JUSTICE

17

18

19

20

21

22

23

24

25

26

27

28
        DFT'S REPLY TO PLT'S OPP'N TO DEF'S MOT. FOR S. JUDG'T, AND MEM. IN
        OPP'N TO PLT'S CROSS-MOT. FOR S. JUDG'T, CASE NO. 15-CV-03503-HSG