1   Marcia Hofmann (Cal. Bar No. 250087)
    Zeitgeist Law PC
2   25 Taylor St.
    San Francisco, CA 94102
3   marcia@zeitgeist.law
    Telephone: (415) 830-6664
4
5   Ahmed Ghappour (Cal. Bar No. 255723)
    200 McAllister St.
6   San Francisco, CA 94102
    ghappour@uchastings.edu
7   Telephone: (415) 598-8605
8
9   Attorneys for Plaintiff
    FREEDOM OF THE PRESS FOUNDATION
10

11

12                   **UNITED STATES DISTRICT COURT**

13            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14                     **SAN FRANCISCO DIVISION**

15   FREEDOM OF THE PRESS FOUNDATION,     )   Case No. 3:15-cv-03503-HSG
                                          )
16                            Plaintiff,  )
                                          )   **PLAINTIFF'S REPLY TO**
17        v.                              )   **DEFENDANT'S OPPOSITION TO**
                                          )   **PLAINTIFF'S CROSS MOTION FOR**
18   UNITED STATES DEPARTMENT OF          )   **SUMMARY JUDGMENT**
     JUSTICE,                             )
19                                        )
                             Defendant.   )   Date:  August 18, 2016
20                                        )   Time:  2:00 p.m.
                                          )   Place:  Courtroom 10, 19th Floor
21                                        )   Judge: Hon. Haywood S. Gilliam, Jr.
                                          )
22                                        )
23   _____  )

24

25

26

27

28

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................................1

II.  STATEMENT OF ADDITIONAL FACTS ...................................................................1

III. ARGUMENT ................................................................................................................3

    A.  FPF IS ENTITLED TO SUMMARY JUDGMENT, AND THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED .......................................................... 3

        1.  The Government Failed to Conduct an Adequate Search for Records in Response to FPF's FOIA Request ........................................................ 3

        2.  The Government Has Failed to Make a Substantively Sufficient *Vaughn* Showing ................................................................................................ 5

        3.  The Government Has Improperly Withheld Agency Records Under Exemptions 1 and 3 ............................................................................... 6

        4.  The Government Has Improperly Withheld Agency Records Under Exemption 5 ........................................................................................... 7

        5.  The Government Has Improperly Withheld Agency Records Under Exemption 7(E) ..................................................................................... 11

        6.  The Government Has Officially Acknowledged Information Now Withheld Under Its Claimed Exemptions .............................................. 13

        7.  The Government Has Failed To Segregate Exempt Material from Non-Exempt Material ........................................................................................ 14

    B.  THE COURT SHOULD REVIEW THE DISPUTED RECORDS *IN CAMERA* ................................ 14

IV.  CONCLUSION ............................................................................................................15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ACLU v. FBI*,
    428 F. Supp. 2d 179 (D.D.C. 2006).................................................................................... 6

*Arthur Andersen & Co. v. IRS*,
    679 F.2d 254 (D.C. Cir. 1982)........................................................................................... 8

*Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State*,
    818 F. Supp. 1291 (N.D. Cal. 1992) ............................................................................... 14

*Billington v. Dep't of Justice*,
    69 F. Supp. 2d 128 (D.D.C. 1999)................................................................................... 11

*Campbell v. Dep't of Justice*,
    164 F.3d 20 (D.C. Cir. 1998) ............................................................................................. 3

*Campbell v. Dep't of Justice*,
    No. 89-cv-3016, 1996 WL 554511 (D.D.C. Sept. 19, 1996) ............................................. 11

*Church of Scientology v. Dep't of Army*,
    611 F.2d 738 (9th Cir. 1980) ..................................................................................... 14, 15

*Citizens Comm'n on Human Rights v. Food & Drug Admin.*,
    45 F.3d 1325 (9th Cir. 1995) ............................................................................................. 5

*Coastal States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980)....................................................................................... 7, 8

*Coleman v. DEA*,
    134 F. Supp. 2d 294 (D.D.C. 2015)................................................................................... 3

*Covington & Burling v. Food & Nutrition Serv. of U.S. Dep't of Agriculture*,
    744 F. Supp. 314 (D.C. Cir. 1990) ................................................................................... 10

*Elec. Frontier Found. v. Nat'l Sec. Agency*,
    No. 14-cv-03010-RS, 2016 WL 1059389 (N.D. Cal. March 18, 2016) ............................ 13

*Electronic Frontier Foundation v. CIA*,
    No. 09-3351 SBA, 2013 WL 5443048 (N.D. Cal. Sept. 30, 2013)...................................... 6

*Fitzgibbon v. CIA*,
    911 F.2d 755 (D.C. Cir. 1990)..................................................................................... 13, 14

*FTC v. Grolier Inc.*,
    462 U.S. 19 (1983) ........................................................................................................ 8, 9

*In re National Security Letters*,
    No. 16-518 (JEB) (D.D.C. July 25, 2016) ................................................................ 2

*In re Sealed Case*,
    121 F.3d 729 (D.C. Cir. 1997) ................................................................................... 9

*Iturralde v. Comptroller of Currency*,
    315 F.3d 311 (D.C. Cir. 2003) ................................................................................... 4

*Jordan v. Dep't of Justice*,
    591 F.2d 753 (D.C. Cir. 1978) ................................................................................... 7

*Judicial Watch, Inc. v. Dep't of Health & Human Serv.*,
    27 F. Supp. 2d 240 (D.D.C. 1998) ............................................................................ 9

*Judicial Watch, Inc. v. U.S. Postal Serv.*,
    297 F. Supp. 2d 252 (D.D.C. 2004) .......................................................................... 8

*Judicial Watch, Inc. v. U.S. Secret Serv.*,
    579 F. Supp. 2d 182 (D.D.C. 2008) ........................................................................ 11

*King v. Dep't of Justice*,
    830 F.2d 210 (D.C. Cir. 1987) ................................................................................... 5

*L.A. Times Communs. LLC v. Dep't of Labor*,
    483 F. Supp. 2d 975 (C.D. Cal. 2007) .................................................................... 14

*Lahr v. Nat'l Transp. Safety Bd.*,
    569 F.3d 964 (9th Cir. 2009) ..................................................................................... 9

*Lawyers' Comm. For Civil Rights of San Francisco Bay Area v. Dep't of the Treasury*,
    No. 07-2590 PJH, 2008 WL 448285 (N.D. Cal. Sept. 30, 2008) ........................... 14

*Lee v. FDIC*,
    923 F. Supp. 451 (S.D.N.Y. 1996) ............................................................................ 8

*Long v. IRS*,
    742 F.2d 1173 (9th Cir. 1984) ................................................................................... 6

*Mead Data Central, Inc., v. Dep't of the Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ........................................................................... 10, 14

*Minier v. CIA*,
    88 F.3d 796 (9th Cir. 1996) ....................................................................................... 6

*N.Y. Times Co. v. Dep't of Defense*,
    499 F. Supp. 2d 501 (S.D.N.Y. 2007) ....................................................................... 8

*National Wildlife Fed. v. U.S. Forest Serv.*,
    861 F.2d 1114 (9th Cir. 1988) ............................................................................... 7, 9

*Nevada v. Dep't of Energy*,
  517 F. Supp. 2d 1245 (D. Nev. 2007) ......................................................................... 8

*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ...................................................................................................... 9

*People of the State of Calif. v. EPA*,
  07-2055 JSW, 2008 WL 5384623 (N.D. Cal. Dec. 22, 2008) ................................. 8, 15

*Pub. Employees for Envtl. Responsibility v. EPA*,
  978 F. Supp. 955 (D. Colo. 1997) ............................................................................. 11

*Public Citizen v. Dep't of Health & Human Serv.*,
  975 F. Supp. 2d 81 (D.D.C. 2013) ............................................................................... 3

*Rosenfeld v. Dep't of Justice*,
  57 F.3d 803 (9th Cir. 1995) .................................................................................... 6, 11

*Rugiero v. Dep't of Justice*,
  257 F.3d 534 (6th Cir. 2001) ..................................................................................... 11

*Strang v. Collyer*,
  710 F. Supp. 9 (D.D.C. 1989) ...................................................................................... 8

*Under Seal v. Lynch*,
  Nos. 16-16067, 16-16081, 16-16082, & 16-16190 (9th Cir. 2016) ............................ 3

*United States v. Martin*,
  278 F.3d 988 (9th Cir. 2002) ..................................................................................... 10

*United States v. Rozet*,
  183 F.R.D. 662 (N.D. Cal. 1998) ................................................................................. 7

*Wiener v. FBI*,
  943 F.2d 972 (9th Cir. 1991) ............................................................................. 5, 6, 15

*Zemansky v. EPA*,
  767 F.2d 569 (9th Cir. 1985) ....................................................................................... 3

**FEDERAL STATUTES**

28 C.F.R. § 50.10 ................................................................................................................. 2

5 U.S.C. § 552 ........................................................................................................... *passim*

5 U.S.C. § 552(a)(2) ............................................................................................................ 4

5 U.S.C. § 552(a)(4)(B) ..................................................................................................... 15

5 U.S.C. § 552(b) .............................................................................................................. 14

5 U.S.C. § 552(b)(1) .................................................................................................... 1, 6, 7

5 U.S.C. § 552(b)(3) ........................................................................................................... 6, 7

5 U.S.C. § 552(b)(5) ........................................................................................................ *passim*

5 U.S.C. § 552(b)(7)(E) ......................................................................................... 1, 6, 11, 13

12 U.S.C. § 3414(a)(5)(A) ...................................................................................................... 13

15 U.S.C. § 1681v ................................................................................................................... 13

15 U.S.C. § 1681u(a) .............................................................................................................. 13

15 U.S.C. § 1681u(b) .............................................................................................................. 13

18 U.S.C. § 2709 .................................................................................................................... 13

### ADMINISTRATIVE MATERIALS

Annex G: Policy With Regard to the Issuance of Subpoenas to Members of the News Media;
    Subpoenas for Telephone Toll Records of members of the News Media, and the
    Interrogation, Indictment, or Arrest of, Members of the News Media, 45 Fed. Reg. 76436
    (Nov. 19, 1980) (amending 28 C.F.R. § 50.10)............................................................ *passim*

FBI's Domestic Investigations and Operations Guide (2013) ................................................. 2

Policy Regarding Obtaining Information From, or Records of Members of the News Media, and
    Regarding Questioning, Arresting or Charging Members of the News Media, 79 Fed. Reg.
    10989-01 (Feb. 27, 2014) (amending 28 C.F.R. § 50.10) ..................................................... 2

Updated Policy Regarding Obtaining Information From, or Records of Members of the News
    Media, and Regarding Questioning, Arresting or Charging Members of the News Media,
    80 Fed. Reg. 2819-01 (Jan. 21, 2015) (amending 28 C.F.R. § 50.10) .................................. 2

### OTHER AUTHORITIES

Cora Currier, *Secret Rules Make It Pretty Easy for the FBI to Spy on Journalists*, THE INTERCEPT
    (June 30, 2016)..................................................................................................................... 1

## I.    INTRODUCTION

In this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, the Freedom of the Press Foundation ("FPF") seeks the disclosure of records held by the Federal Bureau of Investigation ("FBI") concerning the agency's rules and procedures for obtaining records about members of the news media through National Security Letters ("NSLs"), a controversial form of administrative subpoena. The Department of Justice ("DOJ") asks the Court to sustain the FBI's decision to withhold a substantial portion of the requested material in part or whole.

The Court should not rule in the DOJ's favor. The FBI did not conduct an adequate search for records because it did not follow clear leads pointing to additional responsive documents. The FBI failed to offer a sufficiently detailed *Vaughn* showing to justify its withholdings under 5 U.S.C. § 552(b)(1), (3), (5), and (7)(E). The FBI has not carried its burden of demonstrating that it properly invoked each exemption to withhold redacted material, nor that it released all information that could be reasonably segregated from exempt portions. Instead, it appears that the Bureau has improperly withheld information to avoid public criticism and frustrate oversight of the FBI's use of NSLs in investigations involving members of the press. The Court should not condone this effort, particularly given the FBI's well-documented misuse of NSLs in the past.

Because the government has failed to meet its burden, the Court should deny the government's motion for summary judgment and grant the plaintiff's cross motion for summary judgment. FPF respectfully asks the Court to review all disputed material *in camera* and order the FBI to immediately disclose all improperly withheld records.

## II.    STATEMENT OF ADDITIONAL FACTS

On June 30, 2016, the Intercept published a leaked version of the FBI's rules for issuing NSLs to gather telephone toll records of members of the news media or media organizations. Cora Currier, *Secret Rules Make It Pretty Easy for the FBI to Spy on Journalists*, THE INTERCEPT (Suppl. Hofmann Decl. Ex. A). The leaked document, which the Intercept published in full, is a 2013

version of Appendix G to the FBI's Domestic Investigations and Operations Guide ("DIOG") ("Annex G") (Suppl. Hofmann Decl. Ex. B).

While the FBI has publicly claimed that its use of NSLs is governed by an "extensive oversight regime," Hofmann Decl. Ex. 9, the 2013 version of Annex G contains approval requirements that are far less robust than the FBI's procedures for obtaining information about journalists using other types of legal process (such as grand jury subpoenas or search warrants). Compare Suppl. Hofmann Decl. Ex. B with 28 C.F.R. § 50.10.[1] As a result, the FBI imposed fewer internal checks on the use of NSLs than on other law enforcement tools in media-related investigations—despite the fact that the FBI has a long history of misusing NSLs, and investigations into press activities present heightened First Amendment concerns. It remains unknown whether this is still the case today.

The content of the 2013 version of Annex G is benign and bureaucratic. The fact that the FBI has withheld this document from the public suggests that the FBI is invoking FOIA exemptions to shield itself from public criticism, embarrassment, and oversight—not to protect sensitive law enforcement investigative techniques or national security information.

Meanwhile, the courts continue to be troubled by the constitutional implications of NSL authority and whether the FBI's NSL procedures adequately protect individual rights. On July 25, 2016, a district court said that the FBI's current procedures for issuing nondisclosure orders with NSLs "leave several large loopholes" and "give the Court some pause" as to whether the procedures are lawful. *In re National Security Letters*, No. 16-518 (JEB), slip op. at 4-5 (D.D.C. July 25, 2016) (Suppl. Hofmann Decl. Ex. C). And litigation over the constitutionality of the NSL

---

[1] Three versions of 28 C.F.R. § 50.10 have been in force since 2013, all of which provide greater safeguards for journalists than the 2013 version of Annex G: Policy With Regard to the Issuance of Subpoenas to Members of the News Media; Subpoenas for Telephone Toll Records of members of the News Media, and the Interrogation, Indictment, or Arrest of, Members of the News Media, 45 Fed. Reg. 76436 (Nov. 19, 1980) (amending 28 C.F.R. § 50.10); Policy Regarding Obtaining Information From, or Records of Members of the News Media, and Regarding Questioning, Arresting or Charging Members of the News Media, 79 Fed. Reg. 10989-01 (Feb. 27, 2014) (amending 28 C.F.R. § 50.10); and Updated Policy Regarding Obtaining Information From, or Records of Members of the News Media, and Regarding Questioning, Arresting or Charging Members of the News Media, 80 Fed. Reg. 2819-01 (Jan. 21, 2015) (amending 28 C.F.R. § 50.10).

statutes is currently pending before the Ninth Circuit. *See Under Seal v. Lynch*, Nos. 16-16067, 16-16081, 16-16082, & 16-16190. The public interest in the information FPF seeks is as vital as ever.

## III.     ARGUMENT

### A.     FPF Is Entitled to Summary Judgment, and the Government's Motion for Summary Judgment Should Be Denied

The government has failed to satisfy its burden of proving that the FBI has released all non-exempt material in response to FPF's FOIA request. The Court should deny the DOJ's motion for summary judgment and grant FPF's cross motion for summary judgment, requiring the FBI to release all records it has improperly withheld under the FOIA.

#### 1.     The Government Failed to Conduct an Adequate Search for Records in Response to FPF's FOIA Request

The government concedes that its search failed to uncover responsive records at the heart of FPF's FOIA request—specifically, any final, non-draft version of Annex G, which contains the precise information FPF seeks. Suppl. Hardy Decl. ¶ 7 n.4.

An agency must conduct a search "reasonably calculated to uncover all relevant documents." *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985). And an agency is obligated to "revise its assessment of what is 'reasonable' in a particular case to account for leads that emerge during its inquiry." *Campbell v. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998); *see also Coleman v. DEA*, 134 F. Supp. 2d 294, 301-02 (D.D.C. 2015) (search inadequate when an agency does not follow "clear leads"); *Public Citizen v. Dep't of Health & Human Serv.*, 975 F. Supp. 2d 81, 97 (D.D.C. 2013) ("when leads to other documents arise during the course of a search for responsive records, the agency must expand the scope of its search"). The Court reviews the reasonableness of a search based on "what the agency *knew at its conclusion*," not what the agency might have guessed at the beginning. *Campbell*, 164 F.3d at 28 (emphasis added).

Records released through this litigation show that multiple personnel within the FBI's Office of General Counsel ("OGC") helped to update Annex G in 2014 and again in 2015—just weeks before FPF submitted its FOIA request. FPF-282-85 at Hofmann Decl. Ex. 10. While OGC discovered a draft version of Annex G dating from 2015 in the course of its search, it did not

follow that lead to search for any final version of Annex G from that time—nor from 2014, though e-mail correspondence provided another clear lead that should have been pursued. Suppl. Hofmann Decl. Ex. B; Hofmann Decl. Ex. 7. Publicly available documents show that past versions of Annex G existed in 2013 and 2011, but the FBI did not manage to identify any responsive records related to those documents, either.

This failure is not limited to Annex G. The FBI identified a draft version of the FBI's Policy Implementation Guide as responsive to FPF's FOIA request (FPF-4-87). Yet a final version of that document was not located during the search for responsive records.

This is not a situation in which responsive documents were simply "missed" or "accidentally lost or destroyed." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). The FBI's repeated failure to identify final versions of documents responsive to FPF's request despite obvious leads strains credulity and suggests that the search was not conducted in good faith. Instead, it seems that the FBI selectively identified only draft versions of these records as responsive, which enabled the agency to maximize the potential FOIA exemptions it could claim and increase the likelihood that it would not be compelled to release the documents.

The government also contends that it had no obligation to identify the 2011 unclassified version of Annex G as responsive because that document has already been disclosed to the public pursuant to 5 U.S.C. § 552(a)(2). Def. Reply & Opp'n at 5. This argument overlooks the fact that a substantial portion of that document is redacted and therefore has not actually been made available to the public. Pl. Opp'n & Cross Mot. Summ. J. at 13. And it does not account for the FBI's failure to identify any final version of Annex G from 2013, 2014, or 2015.

The inadequacy of the search is even more glaring in light of the government's claim that it searched for responsive records over a greater time period than FPF specified in its request. Def. Reply & Opp'n at 5-6. FPF asked for records created between January 2009 and March 10, 2015, but the FBI says it searched all documents before August 10, 2015. Def. Reply & Opp'n at 5. The additional five months at the end of the time range does not explain the near complete absence of responsive documents before 2014, even though the FBI overhauled the DIOG in 2011 and

updated Annex G repeatedly after that year.[2] Nor does the fact that the FBI located a draft version of Annex G demonstrate that the agency's search covered the full time period FPF specified, as the government suggests. Def. Reply & Opp'n at 5-6; Suppl. Hardy Decl. ¶ 7 n.4. That draft is attached to a February 25, 2015 e-mail. It does not indicate that the FBI searched for responsive documents before that date. Suppl. Hardy Decl. ¶ 7 n.4.

The adequacy of a search is "judged by a standard of reasonableness" in which the court "constru[es] the facts in the light most favorable to the requestor." *Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995). The FBI's search for responsive records was not performed in a manner that was reasonably calculated to uncover all relevant documents, and was inadequate.

### 2. The Government Has Failed to Make a Substantively Sufficient *Vaughn* Showing

The government emphasizes that its *Vaughn* showing satisfied procedural requirements. Def. Reply & Opp'n at 6-8. FPF does not take issue with the *form* of the government's *Vaughn* showing, but rather its *substance.*

An agency must not only identify each document withheld and the statutory exemption claimed, but also provide "a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991). A *Vaughn* showing cannot sustain summary judgment where it is "conclusory, merely recit[es] statutory standards, or [is] too vague or sweeping." *King v. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987); *Zemansky*, 767 F.2d at 571.

As discussed throughout FPF's opposition and cross motion and below, the FBI's *Vaughn* showing does not provide sufficient detail to carry the agency's burden.

---

[2] As FPF noted, the records identified by the FBI appear to be primarily from 2014 and 2015, with the earliest definitively dated record from September 15, 2011. Pl. Opp'n & Cross Mot. Summ. J. at 13; Hardy Decl. Ex. I. Three records listed in the *Vaughn* index are undated, and the FBI has provided no further detail on reply about when these documents were created.

### 3. The Government Has Improperly Withheld Agency Records Under Exemptions 1 and 3

The government invoked Exemptions 1 and 3 to withhold seven pages of a draft version of Annex G, asserting that it contains classified intelligence information that also constitutes "intelligence sources and methods." Hardy Decl. ¶¶ 34-50; Hardy Decl. Ex. I at 2.[3]

The FBI did not offer much particularized explanation for these withholdings to begin with, Hardy Decl. at ¶¶ 40-50, and gives no further detail on reply. Instead, the government argues that the Court is obligated to accept the FBI's representations and may not second-guess them. Def. Reply & Opp'n at 8-12. In fact, while an agency's affidavits are entitled to deference, the Court reviews Exemption 1 and 3 claims de novo and "make[s] its own decision" about whether the agency has properly invoked them. *ACLU v. FBI*, 428 F. Supp. 2d 179, 188 (D.D.C. 2006); *see also Long v. IRS*, 742 F.2d 1173, 1182 (9th Cir. 1984).

To prevail on summary judgment, the FBI must give "a particularized explanation" of how a document's disclosure "would damage the interest protected by the claimed exemption." *Wiener*, 943 F.2d at 977; *Rosenfeld v. Dep't of Justice*, 57 F.3d 803, 807 (9th Cir. 1995). That justification must be "sufficiently detailed" and not "bear any indicia of unreliability." *ACLU*, 429 F. Supp. 2d at 188. Here, the FBI has made no effort to tailor its Exemption 1 and 3 justifications to the material at issue, relying instead on a categorical description of the redacted material and a broad characterization of anticipated consequences of disclosure. This type of conclusory statement falls short of the specific, particularized justification required by the FOIA. *See Electronic Frontier Foundation v. CIA*, No. 09-3351 SBA, 2013 WL 5443048, at *10 (N.D. Cal. Sept. 30, 2013).

Furthermore, the FBI is required to give a logical explanation for why the information it seeks to withhold falls within the claimed exemption. *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996). The FBI concedes that the Exemption 3 justification provided in its first declaration was "poorly worded" and offered "circular" logic. Def. Reply & Opp'n at 12 n.5. This is not the type of justification that satisfies an agency's burden. But the FBI does not supplement it or provide

---

[3] According to the supplemental Hardy declaration, the pages withheld in full under Exemptions 1 and 3, in addition to Exemptions 5 and 7(E), are the seven following Bates pages: FPF-294-295, 297-299, and 301-302. Suppl. Hardy Decl. ¶ 7 n.4.

greater detail on reply. Instead, the DOJ asks the Court to simply accept it and rule in the government's favor. Def. Reply & Opp'n at 12 n.5.

More troubling still, the 2011 version of Annex G belies the FBI's claim that it properly invoked Exemptions 1 and 3 to withhold all seven pages of the draft version of Annex G. The FBI asserted Exemption 1 to redact only a small amount of the 2011 version of Annex G, and did not invoke Exemption 3 at all.[4] Hofmann Decl. Ex. 7. To the extent information in the draft version is the same as information in the unclassified version, it has been officially acknowledged by the FBI and must be disclosed.

### 4. The Government Has Improperly Withheld Agency Records Under Exemption 5

The government has failed to show that it properly invoked the deliberative process privilege and the attorney-client privilege to withhold records under Exemption 5.

#### (a) The Government Has Failed to Show that Agency Records Were Properly Withheld Pursuant to the Deliberative Process Privilege

An agency can properly invoke the deliberative process privilege only for material that is both predecisional, meaning "antecedent to the adoption of agency policy," and deliberative, meaning "related to the process by which the policies are formulated." *National Wildlife Fed. v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988) (quoting *Jordan v. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978)). A document may be predecisional at the time it is created, yet "lose that status if it is adopted, formally or informally, as the agency position on an issue[.]" *United States v. Rozet*, 183 F.R.D. 662, 666 (N.D. Cal. 1998) (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). For each withheld document, it is the agency's burden to establish "the character of the decision, the deliberative process involved, and

---

[4] The FBI makes clear on reply that Exemption 3 has been asserted here because "[t]he FBI's practice is to now add Exemption (b)(3) to classified information concerning sources and methods. Therefore, for the current draft version, (b)(3) was also applied to certain information on the withheld in full [sic] draft pages." Suppl. Hardy Decl. ¶ 7 n.4. Thus, the FBI automatically applied Exemption 3 when it invoked Exemption 1.

the role played by the documents in the course of that process." *Strang v. Collyer*, 710 F. Supp. 9, 11 (D.D.C. 1989), *aff'd*, *Strang v. DiSeo*, 899 F.2d 1268 (D.C. Cir. 1990).

The government leans heavily on the fact that it characterized the withheld documents as drafts in invoking the deliberative process privilege. Def. Reply & Opp'n 13-14. But an agency's labeling of a document as a draft "does not end the inquiry." *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257 (D.C. Cir. 1982) (citing *Coastal States Gas Corp.*, 617 F.2d at 866). The word "draft" "is not talismanic": the Court must consider the actual nature of the document and the role it played in the decision-making process to determine whether the privilege applies. *Nevada v. Dep't of Energy*, 517 F. Supp. 2d 1245, 1264-65 (D. Nev. 2007); *see also Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 261 (D.D.C. 2004) ("drafts are not presumptively privileged"); *N.Y. Times Co. v. Dep't of Defense*, 499 F. Supp. 2d 501, 515 (S.D.N.Y. 2007) (the fact that a document is a draft does not make it exempt from disclosure when the agency does not establish the role played in a decision-making process); *Lee v. FDIC*, 923 F. Supp. 451, 458 (S.D.N.Y. 1996) (draft document improperly withheld where agency "merely reiterated the legal parameters for considering a document potentially exempt" and failed to show privilege applied "given the content of the document"); *People of the State of Calif. v. EPA*, 07-2055 JSW, 2008 WL 5384623 at *5, 18, 30 & 36 (N.D. Cal. Dec. 22, 2008) (finding draft documents exempt from disclosure "where appropriate" only after *in camera* review).

No matter what the FBI labels a record, the agency bears the burden of showing that the content of the document is actually deliberative *and* predecisional to invoke the privilege. It does not matter whether withheld documents were "attachments to inter and intra agency e-mails exchanged between personnel responsible for making policy decisions, containing predecisional policy recommendations." Suppl. Hardy Decl. ¶ 9. The attachments are distinct and separate documents that can be withheld only if they are predecisional and deliberative.

The government contends that Exemption 5 does not permit disclosure of privileged information upon a party's showing of need for the material. Def. Reply & Opp'n at 14.[5] To the

---

[5] The government relies primarily on *FTC v. Grolier Inc.*, 462 U.S. 19, 28 (1983) for the proposition that "Exemption 5 . . . does not generally permit compelled disclosure of privileged

contrary, as the D.C. Circuit has found, "courts must balance the public interests at stake in determining whether the [deliberative process] privilege should yield in a particular case, and must *specifically consider the need of the party seeking privileged evidence*." *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997) (emphasis added). The privilege "disappears altogether" when there is "any reason" to believe that the documents will shed light on government misconduct. *Id.*[6] Here, there is ample evidence that the FBI has misused its authority to issue NSLs in the past. Hofmann Decl. Exs. 11-14. The withheld documents will shed light on whether the FBI has implemented internal controls to prevent that misuse or whether conditions are ripe for such misuse to continue—particularly in investigations involving members of the news media.

Finally, the government urges the Court to uphold its assertion of the deliberative process privilege to withheld portions of an e-mail thread from early February 2015 in which an employee of the FBI's New Orleans office asks OGC for advice and guidance on agency procedures. FPF-287-290 at Hofmann Decl. Ex. 10. But the privilege "does not apply to an agency's final opinions, statements of policy and interpretations definitively adopted by the agency, and any other documents having 'the force and effect of law.'" *National Wildlife Fed.*, 861 F.2d at 1122 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975)). The plain text of the e-mail exchange shows that OGC had adopted a final position on a matter and was informing other members of the agency how to comply with that policy. The deliberative process privilege does not extend to information reflecting a final agency position or to post-decisional records explaining a decision already made. *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 981 (9th Cir. 2009). *See also Judicial Watch, Inc. v. Dep't of Health & Human Serv.*, 27 F. Supp. 2d 240, 245 (D.D.C. 1998)

---

information based on a party's supposed need for that material." Def. Reply & Opp'n at 14. To the contrary, the Supreme Court said that work-product materials "are immune from discovery *unless the one seeking discovery can show substantial need*" for those materials in subsequent litigation. *Id.* at 27 (emphasis added). The fact that materials are released to a party who demonstrates such need does not make them routinely available to others who might later request them pursuant to the FOIA. *Id.* at 28. Thus, *Grolier* does not foreclose the possibility of compelled disclosure of privileged information withheld under Exemption 5 based on a sufficient demonstration of public interest by the requester.

[6] Nor does *MacLean v. Dep't of Defense* suggest otherwise. That case involved no allegations or evidence of government malfeasance. 240 Fed. Appx. 751, 754 (9th Cir. 2007).

("deliberative process privilege does not protect documents that merely state or explain agency decisions"); *Covington & Burling v. Food & Nutrition Serv. of U.S. Dep't of Agriculture*, 744 F. Supp. 314, 318 (D.C. Cir. 1990) (deliberative process privilege "does not apply to postdecisional explanatory documents").

### (b) The Government Has Failed to Show that Agency Records Were Properly Withheld Pursuant to the Attorney-Client Privilege

The government clarifies on reply that it invokes the attorney-client privilege (and not the attorney work-product privilege) to withhold portions of 32 pages. Suppl. Hardy Decl. ¶¶ 11-12. For the attorney-client privilege to apply, the FBI must show that there was 1) a communication 2) between privileged persons (such as attorney and client) 3) in confidence, 4) for the purpose of seeking, obtaining or providing legal advice. *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). It is the government's burden to establish *all* elements of a claimed exemption to prevail on summary judgment. *See, e.g.*, *Mead Data Central, Inc., v. Dep't of the Air Force*, 566 F.2d 242, 362 (D.C. Cir. 1977) ("the FOIA places the burden on the Government to prove the applicability of a claimed privilege," so the Court "could not assume" that a document was confidential for purposes of the attorney-client privilege).

Even with the additional justifications in the supplemental Hardy declaration, the FBI has not provided enough factual detail to determine whether it properly asserted the attorney-client privilege. The government explains that the partially-withheld PowerPoint slides were presented by OGC counsel to "the client," described as "FBI employees." Suppl. Hardy Decl. ¶ 12. The *Vaughn* showing does not establish which or how many FBI personnel attended the training. If the presentations were presented to a broad group of FBI employees, those communications would not be limited to privileged persons. *See Covington & Burling*, 744 F. Supp. at 322 (finding information confidential when it was distributed to only four high-level agency officials and not shared with "administrative lackeys."). Thus, the FBI has still failed to meet its burden.

For all these reasons, the government has not shown that it properly asserted the deliberative process and attorney-client privileges to withhold information under Exemption 5.

### 5.     The Government Has Improperly Withheld Agency Records Under Exemption 7(E)

The government does not acknowledge the four DOJ Inspector General reports detailing the FBI's misuse of NSLs—but the fact remains that many specifics about the FBI's use of this law enforcement tool are well known and have been publicly acknowledged by the DOJ. Hofmann Decl. Exs. 11-14.

As an initial matter, an agency cannot withhold material to conceal an investigative technique that is routine and generally known to the public. *Rosenfeld*, 57 F.3d 815. *See also Rugiero v. Dep't of Justice*, 257 F.3d 534, 551 (6th Cir. 2001) (Exemption 7(E) "protects [only] techniques and procedures not already well-known to the public"); *Billington v. Dep't of Justice*, 69 F. Supp. 2d 128, 140 (D.D.C. 1999) (Exemption 7(E) generally does not protect "commonly known law enforcement practices, such as wiretaps or use of post office boxes"), *affirmed in part, vacated in part on other grounds*, 233 F.3d 581 (D.C. Cir. 2000); *Pub. Employees for Envtl. Responsibility v. EPA*, 978 F. Supp. 955, 962-63 (D. Colo. 1997) (procedures for conducting mail covers and intercepting communications were commonly known law enforcement methods improperly withheld under Exemption 7(E)), *appeal dismissed voluntarily*, No. 97-1384 (10th Cir. Nov. 25, 1997); *Campbell v. Dep't of Justice*, No. 89-cv-3016, 1996 WL 554511 at *10 (D.D.C. Sept. 19, 1996) (ordering disclosure of information about law enforcement use of pretextual phone calls where information was not "obscure or secret"), *reversed on other grounds*, 164 F.3d 20 (D.C. Cir. 1998); *Judicial Watch, Inc. v. U.S. Secret Serv.*, 579 F. Supp. 2d 182, 188-89 (D.D.C. 2008) (names of White House visitors, dates of visits, and person visited are not categorically protected because "it is difficult to imagine" how disclosure "would reveal the way in which the investigation was conducted").

Moreover, the FBI admits that it has asserted Exemption 7(E) to withhold a variety of details about NSLs that are already publicly known. *See, e.g.*, Suppl. Hardy Decl. ¶¶ 13, 27-28. Regardless, the agency baldly claims that this information is inextricably intertwined with exempt information and offers specious rationales for why disclosure would enable would-be criminals to circumvent the law. Many of these arguments seem to boil down to an effort to thwart public

scrutiny of this contentious form of administrative subpoena. For example:

- The FBI claims that disclosing the "legal standard" for "relevance" would enable criminals "to avoid scrutiny and detection by the FBI." Suppl. Hardy Decl. ¶ 17 n.9. This is like arguing that the public should not be allowed to know the legal standard for probable cause because it would enable criminals to avoid police apprehension. In fact, public knowledge of the "relevance" standard would promote better oversight and accountability of the FBI's use of NSLs, which is vital given the FBI's record of misuse.

- The FBI argues that public disclosure of NSL approval requirements would expose FBI officials to "social engineering," thus allowing criminals to "circumvent the law." Suppl. Hardy Decl. ¶ 19. It makes no sense that criminals could "game" the FBI's approval process to avoid the issuance of an NSL. This is like saying the public should not be permitted to know the basic process by which grand juries operate because a criminal could somehow use that knowledge to trick a grand jury into not issuing a subpoena.

- The FBI says that disclosing the situations in which the FBI requires additional notifications or authorizations could prompt a lawbreaker to intentionally commit a crime in a manner that would be "administratively more burdensome" in hopes that the FBI will not bother to pursue the matter. Suppl. Hardy Decl. ¶ 21. More likely, this is an attempt to keep the public from learning that the NSL approval process is less extensive than for other law enforcement tools, which is troubling given the FBI's history of NSL misuse and the highly questionable constitutionality of the NSL legal regime.

- The FBI has withheld material that it claims would enable wrongdoers to "know[] that certain types of investigative activities are or are not prohibited during specific types of investigations" and "combine this knowledge with other publicly available information to determine whether [their] activities are likely to be detected." Suppl. Hardy Decl. ¶ 23. The public is already well aware that certain law enforcement activities are and are not prohibited during specific types of investigations—and the public needs to know that information to ensure that law enforcement does not exceed its authority. Of course, the

types of investigations in which the FBI may use NSLs is specified by statute. *See* 18 U.S.C. § 2709; 15 U.S.C. § 1681v; 15 U.S.C. §§ 1681u(a) & (b); 12 U.S.C. § 3414(a)(5)(A).

- The FBI argues that if would-be criminals know the procedural requirements that FBI agents must satisfy to issue an NSL, those wrongdoers could somehow take advantage of that information to avoid detection should the FBI fail to adhere to those internal requirements. Suppl. Hardy Decl. ¶ 28. Perhaps this is another way of saying that if the FBI improperly issues NSLs, its actions might be vulnerable to legal challenge. This is not a valid reason to withhold information from the public.

- The FBI suggests that releasing information about its statutory obligation to report to Congress on NSL usage could somehow give criminals "the necessary insight to affect the process (including the triggers) by a better understanding of the likelihood of detection." Suppl. Hardy Decl. ¶ 28. It is difficult to image how this could possibly be the case, and the FBI gives no explanation beyond a bare, unsupported assertion.

- The FBI admits that it has redacted statutory text from 15 U.S.C. § 1681v(a) on FPF-153 and FPF-275, arguing that disclosure would show that the FBI placed emphasis on some portions of the law's wording. Suppl. Hardy Decl. ¶ 28. This is almost certainly emphasis on a public fact: that the FBI can issue an NSL to obtain full credit reports only in counterintelligence investigations that are related to international terrorism. There is nothing secret about that information. It is a matter of public record.

The FBI has invoked Exemption 7(E) to withhold information that is undisputedly already public, and it has provided unsound justifications for doing so. The government has not properly asserted Exemption 7(E).

### 6.   The Government Has Officially Acknowledged Information Now Withheld Under Its Claimed Exemptions

The FBI has already officially acknowledged information that it now attempts to withhold in this case. *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990); *Elec. Frontier Found. v. Nat'l Sec. Agency*, No. 14-cv-03010-RS, 2016 WL 1059389 at *2 (N.D. Cal. March 18, 2016).

- 13 -

Specifically, the FBI publicly released portions of five paragraphs in the unclassified 2011 version of Annex G. Hofmann Decl. Ex. 7. The government has waived any exemption claims it asserts now to cover that same material in other versions of Annex G. The Court should compel disclosure of this information regardless of any FOIA exemption the government asserts to withhold it. *Fitzgibbon*, 911 F.2d at 765.

### 7. The Government Has Failed To Segregate Exempt Material from Non-Exempt Material

The FOIA requires the government to provide "[a]ny reasonably segregable potion of a record" that is responsive to a FOIA request. 5 U.S.C. § 552(b); *see also Church of Scientology v. Dep't of Army*, 611 F.2d 738, 744 (9th Cir. 1980). An agency must "provide the court with its *reasons*—as opposed to its simple conclusion—for its inability to segregate non-exempt portions of the documents, and also [] provide the court with a description of 'what proportion of the information in a document is non-exempt, and how that material is dispersed throughout the document.'" *Lawyers' Comm. For Civil Rights of San Francisco Bay Area v. Dep't of the Treasury*, No. 07-2590 PJH, 2008 WL 448285 at *13 (N.D. Cal. Sept. 30, 2008) (quoting *Mead Data Cent.*, 556 F.2d at 261) (emphasis in original).

In its reply, the government simply points back to the same sweeping conclusory statements it made about segregability in the first instance. Def. Reply & Opp'n at 23-24. Such cursory justifications fall far short of the specificity an agency is required to provide. Pl. Opp'n & Cross Mot. Summ. J. at 34-35; *Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State*, 818 F. Supp. 1291, 1300 (N.D. Cal. 1992) (finding boilerplate, conclusory assertions inadequate to permit the Court to make finding on segregability); *L.A. Times Communs. LLC v. Dep't of Labor*, 483 F. Supp. 2d 975, 986 (C.D. Cal. 2007) ("Agencies may meet this burden by describing through affidavit, *in a non-conclusory manner*, why such information is not reasonably segregable") (emphasis added). The government has not satisfied its burden.

### B. The Court Should Review the Disputed Records *In Camera*

Where, as here, an agency fails to provide a *Vaughn* showing sufficient to justify summary judgment in its favor, a court may examine the disputed material and determine whether it should

- 14 -

be released. 5 U.S.C. § 552(a)(4)(B) (a court "may examine the content of . . . agency records in camera to determine whether such records or any part thereof shall be withheld"); *Church of Scientology*, 611 F.2d at 743; *Wiener*, 943 F.2d at 979.

If the Court has any doubt that FPF is not entitled to summary judgment, an *in camera* inspection of the disputed material would be especially appropriate. As described in detail in FPF's opposition and cross motion for summary judgment and above, the FBI's *Vaughn* showing does not explain the withholdings in sufficient detail to support summary judgment. The Court will best determine whether the exemptions were properly invoked by reviewing the documents. *People of the State of Calif.*, 2009 WL 273411 at *4 (ordering *in camera* review of withheld material where agencies failed to provide sufficiently detailed factual information in support of exemptions claims). Furthermore, the withheld material is not so voluminous as to be burdensome for the Court to review. For these reasons, FPF respectfully urges the Court to conduct an *in camera* inspection of the documents.

## IV.    CONCLUSION

For the foregoing reasons, the government's motion for summary judgment should be denied and FPF's cross motion for summary judgment should be granted. FPF respectfully requests that the Court review all disputed material *in camera* and order the FBI to disclose all improperly withheld records immediately.

DATED: August 8, 2016                            Respectfully submitted,

                                                 /s/ *Marcia Hofmann*
                                                 Marcia Hofmann
                                                 Zeitgeist Law PC
                                                 25 Taylor St.
                                                 San Francisco, CA 94102

                                                 Ahmed Ghappour
                                                 200 McAllister St.
                                                 San Francisco, CA 94102

                                                 Attorneys for Plaintiff
                                                 FREEDOM OF THE PRESS FOUNDATION