UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREEDOM OF THE PRESS FOUNDATION,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>　　　　Defendant. | Case No. 15-cv-03503-HSG<br><br>**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 30, 37 |

Pending before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 30, 37. For the reasons articulated below, the Court GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's cross-motion.

**I.　BACKGROUND**

Plaintiff Freedom of the Press Foundation filed this action on July 30, 2015, seeking an injunction to compel Defendant DOJ to disclose records requested under the Freedom of Information Act ("FOIA"). Plaintiff submitted a FOIA request on March 10, 2015, seeking records related to the Federal Bureau of Investigation's ("FBI") procedures for issuing national security letters ("NSLs") to obtain information regarding any member of the media from January 2009 to the present. Dkt. No. 1. The FBI is empowered to issue NSLs to obtain "subscriber information and toll billing records information, or electronic communication transactional records" from third-party wire or electronic communication providers if such information is "relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities." 18 U.S.C. §§ 2709(a)–(b). Plaintiff, however, suspects government misuse of this investigative tool.

In response to Plaintiff's FOIA request, the FBI conducted a search of its records. *See* Dkt.

1   No. 30-1 (Hardy Decl.) ¶¶ 17–21 & Exs. H, I.  It identified 302 pages of records and released 156,

2   withholding the rest pursuant to FOIA Exemptions 1, 3, 5, 7(C), and 7(E).  *Id.* ¶ 15.  Defendant

3   also consulted with another agency — the Office of the General Counsel ("OGC") — regarding

4   responsive records, identifying another 134 pages of records and releasing 72, again withholding

5   the rest pursuant to FOIA Exemptions 5, 6, 7(C), and 7(E).  *Id.* ¶ 16 & Exs. H, I.   In total,

6   Defendant identified 436 pages of records responsive to Plaintiff's FOIA request and released 228

7   documents (171 in part and 57 in full).  *See* ¶¶ 5, 16 & Ex. H.  The FBI detailed its search and the

8   nature of its withholdings in an affidavit in the form described in *Vaughn v. Rosen*, 484 F.2d 820

9   (D.C. Cir. 1973), generally known as a "*Vaughn* Index," as well as two Declarations from David

10  M. Hardy ("Hardy Declarations"), the Section Chief of the Record/Information Dissemination

11  Section ("RIDS") of the FBI's Record Management Division.  *See* Hardy Decl. Ex. I (*Vaughn*

12  Index); *see also* Dkt. No. 44-1 (Suppl. Hardy Decl.).

## II.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party.  *Id.* But in deciding if a dispute is genuine, the Court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

With respect to summary judgment procedure, the moving party always bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will bear the burden of proof on an issue at trial, it must show that no reasonable trier of fact could not find in its favor.  *Celotex*, 477

1  U.S. at 325. "If a moving party fails to carry its initial burden of production, the nonmoving party
2  has no obligation to produce anything, even if the nonmoving party would have the ultimate
3  burden of persuasion at trial." *Id.* at 1102–03.

4  "If, however, a moving party carries its burden of production, the nonmoving party must
5  produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party
6  "must do more than simply show that there is some metaphysical doubt as to the material facts."
7  *Matsushita Elec.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable
8  particularity the evidence that precludes summary judgment," because the duty of the Court is not
9  to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275,
10 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or
11 defense, courts must enter summary judgment in favor of the movant. *Celotex*, 477 U.S. at 323.

12 **B.    FOIA**
13 FOIA, 5 U.S.C. § 552, "was enacted to facilitate public access to Government documents."
14 *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (internal quotations omitted).
15 The goal of FOIA is to "ensure an informed citizenry, vital to the functioning of a democratic
16 society, needed to check against corruption and to hold the governors accountable to the
17 governed." *Id.* (quotation omitted). At the same time, FOIA contemplates that the government
18 may have legitimate reasons for withholding some information from the public. *Id.* Accordingly,
19 FOIA "requires federal agencies to make Government records available to the public, subject to
20 nine exemptions for specific categories of material." *Milner v. Dep't of Navy*, 562 U.S. 562, 564
21 (2011). These nine FOIA exemptions are "explicitly made exclusive and must be narrowly
22 construed." *Id.* at 565 (quotation omitted).

23 FOIA cases are typically decided on motions for summary judgment because the facts are
24 rarely in dispute. *See Minier v. Cent. Intelligence Agency*, 88 F.3d 796, 800 (9th Cir. 1996).
25 Upon a motion for summary judgment, a district court analyzes the withholding of documents *de*
26 *novo*. 5 U.S.C. § 552(a)(4)(B). FOIA permits a district court to enjoin a defendant agency from
27 withholding agency records or to order a defendant agency to produce any improperly withheld
28 records. *Id.*

A defendant agency "must show that its search for responsive records was adequate, that any claimed exemptions actually apply, and that any reasonably segregable, non-exempt parts of records have been disclosed after redaction of exempt information." *Light v. Dep't of Justice*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013); *accord Lahr*, 569 F.3d at 973; *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008). The agency bears the burden to show that it has complied with its obligations under FOIA. 5 U.S.C. § 552(a)(4)(B).

### III. DISCUSSION

Defendant asserts that it is entitled to summary judgment on Plaintiff's FOIA claim because the FBI, a component of the DOJ, has fully complied with its obligations under FOIA. Dkt. No. 30 at 1 ("Gov't MSJ"). Specifically, Defendant contends that the FBI (1) conducted a reasonable search in response to Plaintiff's FOIA request; (2) properly withheld documents pursuant to FOIA exemptions 1, 3, 5, and 7E;[1] and (3) disclosed all reasonably segregable information that is not covered by a FOIA exemption. *Id.* at 1–2. Plaintiff opposes Defendant's motion for summary judgment and instead seeks judgment that (1) Defendant has failed to conduct an adequate search for responsive documents; (2) Defendant's *Vaughn* Index fails to meet Defendant's burden under FOIA; (3) Defendant has failed to show that it properly withheld documents pursuant to FOIA exemptions 1, 3, 5, and 7E; and (4) Defendant has failed to disclose all reasonably segregable information that is not covered by a FOIA exemption. Dkt. No. 37 ("FPF MSJ").

### C. The FBI Has Conducted an Adequate Search for Responsive Records

FOIA requires a defendant agency to "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Lahr*, 569 F.3d at 986. An agency may make such a showing by "reasonably detailed, nonconclusory affidavits submitted in good faith." *Id.*; *Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995). Because of courts' "limited institutional expertise on intelligence matters" and the risk of

---

[1] The FBI also redacted material under FOIA exemptions 6 and 7(C) and withheld duplicate documents. Gov't MSJ at 2 n.1. Plaintiff does not challenge those withholdings. *Id.*; *see generally* FPF MSJ.

4

adversaries aggregating even "small pieces" of intelligence data, "[a]ffidavits submitted by an agency to demonstrate the adequacy of its response are presumed to be in good faith" when submitted in the national security context. *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 770 (9th Cir. 2015).

"In evaluating the sufficiency of an agency's search, the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Lahr*, 569 F.3d at 987 (quotation omitted). A district court assesses the adequacy of an agency's search against a standard of reasonableness, construing all facts in the light most favorable to the FOIA requestor. *Citizens Comm'n*, 45 F.3d at 1328. Summary judgment is inappropriate "if a review of the record raises substantial doubt, particularly in view of well-defined requests and positive indications of overlooked materials . . . ." *Hamdan*, 797 F.3d at 771 (quotation omitted). Nevertheless, the Ninth Circuit has made clear that a search is not inadequate for failing to turn up a single document or even several documents. *Id.*; *Lahr*, at 987 ("[T]he failure to produce or identify a few isolated documents cannot by itself prove the searches inadequate."). Similarly, "[s]peculative claims about the existence of additional documents are insufficient to rebut the presumption of good faith . . . ." *Coleman v. Drug Enf't Admin.*, 134 F. Supp. 3d 294, 301 (D.D.C. 2015); *accord Lahr*, 569 F.3d at 987–88.

The Court finds the Hardy Declarations establish that the FBI conducted an adequate search that was reasonably calculated to uncover all relevant documents. According to Hardy, while the FBI typically searches its Central Records System ("CRS") database in response to FOIA requests, Plaintiff's request did not lend itself to a CRS index search. Hardy Decl. ¶ 17. The CRS index is organized by individuals, organizations, companies, and events, but Plaintiff's request was for more generalized information about NSLs and agency policy. Accordingly, the FBI conducted a more targeted search of the FBI divisions and offices reasonably likely to possess responsive information about the procedures governing and oversight of NSLs used to obtain records for members of the media. *Id.* ¶¶ 18, 19. RIDS requested records that were created on or before August 10, 2015. *Id.* Specifically, the FBI's Discovery Processing Unit ("DPU") determined that the OGC was reasonably likely to have, or at least know where to locate,

5

responsive records. *Id.* ¶ 20. DPU contacted all three OGC branches — the National Security Law Branch, the Litigation Branch, and the Investigative and General Law Branch — to search for responsive documents. *Id.* Further, RIDS reviewed an unclassified version of the Domestic Investigations and Operations Guide ("DIOG"), which contains substantially all of the FBI's procedures, techniques, and strategies for conducting investigations. *Id.* ¶ 21; Suppl. Hardy Decl. ¶ 7. Through this process, RIDS identified Section 18 — entitled "National Security Letter" — as potentially responsive. Hardy Decl. ¶ 21.

Plaintiff maintains that the FBI failed to perform an adequate search for two reasons: (1) although the FBI represents that it reviewed the DIOG, the FBI failed to identify Appendix G, which falls within Plaintiff's FOIA request because it specifies the procedures for issuing NSLs to obtain telephone records of media members; and (2) the FBI primarily identified records from 2014 and 2015, which Plaintiff finds "surprising" given that the FBI updated the DIOG in 2011. FPF MSJ at 13–14. Plaintiff asserts that these "conspicuous omissions" establish that the FBI did not perform a search reasonably calculated to uncover all responsive documents. *Id.* at 14. The Court is not persuaded.

The Supplemental Hardy Declaration explains that the FBI did not identify Appendix G because it was not included in the unclassified version of the DIOG that RIDS reviewed. Suppl. Hardy Decl. ¶ 7 & n.4. Even if the Court agreed with Plaintiff that Defendant should have otherwise identified Appendix G, that omission, standing alone, is insufficient to render the FBI's search inadequate. *See id.* at 771 (concluding that the Ninth Circuit has made clear that a search is not inadequate for failure to turn up a single document).

Similarly, the Hardy Declaration adequately establishes that the FBI searched for documents for the entire period between January 2009 and March 10, 2015. Hardy attests that the FBI's search actually encompassed a significantly broader time period, directing all OGC branches to locate records created on or before August 10, 2015. Hardy Decl. ¶ 19; *see also* Suppl. Hardy Decl. ¶ 7. Plaintiff's "[s]peculative claims about the existence of additional documents are insufficient to rebut the presumption of good faith" to which Hardy's declarations are entitled. *See Coleman*, 134 F. Supp. 3d at 301.

Because Plaintiff's speculation cannot overcome the FBI's reasonably detailed, non-conclusory declarations, the Court holds that the FBI has conducted an adequate search for responsive records. While the FBI's search may not have been perfect, Plaintiff was "entitled to a reasonable search for records, not a perfect one." *Hamdan*, 797 F.3d at 772.

### D. FOIA Exemptions

Next, the Court must determine whether Defendant properly withheld records under the asserted FOIA exemptions.

"FOIA's strong presumption in favor of disclosure places the burden on the government to show that an exemption properly applies to the records it seeks to withhold." *Hamdan*, 797 F.3d at 772. When a government agency seeks to withhold documents under FOIA exemptions, courts have required the agency to "to supply the opposing party and the court with a *Vaughn* index, identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." *Wiener v. F.B.I.*, 943 F.2d 972, 977–78 (9th Cir. 1991). The purpose of a *Vaughn* index and any accompanying affidavits is to "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding," and thus partially restore the adversary process to judicial review of the agency's decision. *Id.* "Specificity is the defining requirement of the *Vaughn* index." *Id.* at 979.

"Where the government invokes FOIA exemptions in cases involving national security issues, [courts] are required to accord substantial weight to the agency's affidavits." *Hamdan*, 797 F.3d at 769; *Minier*, 88 F.3d at 800. A court must be mindful of its "limited institutional expertise on intelligence matters, as compared with the executive branch." *Hamdan*, 797 F.3d at 770. However, the affidavits still "must describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemptions, and show that the justifications are not controverted by contrary evidence in the record or by evidence of agency bad faith." *Id.* at 769. "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Id.* at 774. "If the affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to establish

an exemption, the district court need look no further." *Lane v. Dep't of Interior*, 523 F.3d 1128, 1135–36 (9th Cir. 2008).

Here, Defendant withheld information from several categories of documents: (1) a Policy Implementation Guide, with instructions for managing and conducting cyber investigations; (2) the DIOG; (3) Media Guidelines, with instructions for investigating and charging members of the news media; (4) a NSL PowerPoint training presentation; (5) internal emails regarding the creation and revision of the Policy Implementation Guide, DIOG, and Media Guidelines; and (6) Office of Information Policy ("OIP") drafts of the Media Guidelines. Hardy Decl. ¶¶ 23–31.

### i. Exemption 1 - Classified Information

Defendant withheld seven pages in full from the DIOG pursuant to Exemption 1 as containing intelligence activities and methods. Hardy Decl. ¶¶ 40–44. Exemption 1 exempts from disclosure records that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy . . . ." 5 U.S.C. § 552(b)(1). Executive Order 13526 permits an agency to classify information as national security information if:

> (1) an original classification authority is classifying the information;
>
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
>
> (3) the information falls within one or more of the categories of information listed in section 1.4 of [Executive Order 13526]; *and*
>
> (4) the original classification authority determines that the unauthorized disclosures of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Exec. Order 13526 § 1.1(a) (emphasis added). Executive Order 13526 § 1.4(c), in turn, allows classification of "intelligence activities (including covert action), intelligence sources or methods, or cryptology."

Plaintiff asserts that Defendant has failed to meet its burden to show that these pages constitute intelligence sources or methods or that disclosure of the withheld documents would reveal intelligence sources or methods. FPF MSJ at 15–19. Specifically, Plaintiff contends that the Hardy Declaration and *Vaughn* Index do "little more than recite the applicable exemption" and thus "fall short" of providing a particularized justification as required under FOIA. *Id.* at 16–17.

The Court finds that the FBI has carried its burden to demonstrate that it properly classified the seven withheld pages under Exemption 1. The Hardy Declaration first explains the procedural and substantive requirements with which Hardy complied in order to properly withhold information under Exemption 1. Hardy Decl. ¶¶ 34–40. Next, in addition to describing the general justifications for shielding intelligence sources and methods from public disclosure, the Declaration explains the specific rationale for withholding the relevant seven pages. *Id.* ¶¶ 41–44. Hardy attests that the withheld pages detail intelligence activities or methods that are still used by the FBI today to gather information. *Id.* ¶ 42. Hardy further elaborates that the withheld intelligence activities or methods contain information gathered by the FBI on a specific type of individual or organization of national security interest. *Id.* ¶ 44. Examined in context, Hardy determined that the withheld information could reasonably be expected to cause serious damage to national security as it would, for example, reveal the breadth of the FBI's intelligence on a specific target. *Id.* ¶ 45–46. He consequently exercised his original classification authority to designate the information under Exemption 1. *Id.*

The Hardy Declaration provides sufficient detail regarding the withheld information to make the Exemption 1 classification plausible. *See Hamdan*, 797 F.3d at 770. Moreover, the Declaration does not contain conditional language or attempt to categorize multiple distinct documents under a single, general justification. Recognizing the Court's "limited institutional expertise on intelligence matters," the Court accords substantial weight to Hardy's representation that "any greater specificity in the descriptions and justifications . . . could reasonably be expected to jeopardize the national security of the United States." Hardy Decl. ¶ 46. In the area of national security, "it is conceivable that the mere explanation of why information must be withheld can convey valuable information to a foreign intelligence agency." *See Hamdan*, 797 F.3d at 775.

9

Accordingly, the Court finds that Defendant properly withheld information under Exemption 1.

### ii. Exemption 3 — Information Protected by Statute

Defendant asserts that the same seven DIOG pages withheld in full under Exemption 1 are also properly withheld under Exemption 3. *Compare* Hardy Decl. ¶ 44 *with* ¶ 47. The Court agrees.

Exemption 3 protects information "specifically exempted from disclosure by statute . . . if that statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refer to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to the paragraph." 5 U.S.C. § 552(b)(3); *Berman v. C.I.A.*, 501 F.3d 1136, 1140 (9th Cir. 2007). In determining whether information has been properly withheld under Exemption 3, the Court asks "whether the statute identified by the agency is a statute of exemption within the meaning of Exemption 3" and "whether the withheld records satisfy the criteria of the exemption statute." *Hamdan*, 797 F.3d at 776.

According to Defendant, the FBI is required to "protect from unauthorized disclosure intelligence sources and methods" pursuant to Section 102A(i)(1) of the National Security Act of 1947. *Id.* ¶¶ 49–50. Section 102A(i)(1) requires the Director of National Intelligence to "protect from unauthorized disclosure intelligence sources and methods." Plaintiff does not appear to contest that Section 102A(i)(1) is a statute of exemption within the meaning of Exemption 3, *see* FPF MSJ at 15–19, and the Court finds that it is. *See Berman*, 501 F.3d at 1140.

The Court is similarly satisfied that the withheld records would disclose intelligence sources and methods. Although, as Defendant acknowledges, the initial Hardy Declaration regarding Exemption 3 contains circular reasoning, the detail provided under Exemption 1 demonstrates that the FBI also properly withheld portions of the DIOG under Exemption 3. Hardy states that the withheld pages detail intelligence activities or methods that are still used by the FBI today and that the relevant pages contain information gathered by the FBI on a specific type of individual or organization of national security interest. Hardy Decl. ¶¶ 42, 44.

Plaintiff vigorously asserts that *Wiener*, 943 F.2d at 977–78, requires more detail than Defendant provided here. FPF MSJ at 15–17. However, the Ninth Circuit has recently rejected that precise argument in a national security context like this one. *See Hamdan*, 797 F.3d at 775 ("It is reasonable to say that the government can explain its reasons for withholding the records at issue in *Wiener*, relating to the government's investigation of John Lennon twenty years earlier, with more detail than the records at issue here, in a case that relates to current intelligence and law enforcement activity of the government, including sensitive issues that may involve possible cooperation with foreign governments."). As such, the Court accords "substantial weight" to the FBI's declarations, *see Hamdan*, 797 F.3d at 769, and finds that Defendant has properly withheld documents under Exemption 3.

### iii. Exemption 5 — Privileged Information

Defendant purports to withhold portions of five categories of documents under Exemption 5: (1) Policy Implementation Guide; (2) DIOG; (3) NSL PowerPoint training presentation; and (4) internal emails regarding the creation and revision of the Policy Implementation Guide, DIOG, and Media Guidelines; and (5) OIP's drafts of the Media Guidelines.

Exemption 5 shields disclosure of "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Information withheld under Exemption 5 must "satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Specifically, Exemption 5 covers the attorney-client privilege and the deliberative process privilege. *Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997). It is to be "applied as narrowly as consistent with efficient Government operation." *Lahr*, 569 F.3d at 979.

Plaintiff argues that Defendant "has failed to provide sufficient information to determine if the [deliberative process or attorney-client] privilege applies" to the withheld information. FPF MSJ at 19.

### a. Deliberative Process Privilege

The deliberative process privilege "shields certain intra-agency communications from disclosure to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Lahr*, 569 F.3d at 979. To qualify under the deliberative process privilege, information must be both "predecisional" and "deliberative." *Id.*

A document is "predecisional" if it is "prepared in order to assist an agency decisionmaker in arriving at his decision . . . ." *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002). This "may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* (quotation omitted); *see also Lahr*, 569 F.3d at 979–80. This contrasts with "postdecisional" documents such as "communications made after [a] decision [that are] designed to explain it . . . ." *N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 152 (1975).

A document is "deliberative" if it is "actually . . . related to the process by which policies are formulated." *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1118–19 (9th Cir. 1988) (quotation omitted). "[T]he key question . . . [is] whether the disclosure of materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Assembly of State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 921 (9th Cir. 1992), *as amended on denial of reh'g* (Sept. 17, 1992).

Defendant withheld information under the deliberative process privilege in four categories of documents: (1) Policy Implementation Guide; (2) DIOG; (3) internal emails; and (4) Media Guidelines. Plaintiff does not dispute that all the withheld documents are either non-final drafts or contain employee comments and recommendations on specific FBI policies. As such, Plaintiff does not appear to dispute that such documents were "predecisional." Regardless, the Hardy Declaration specifically notes that these documents were sent "between personnel responsible for making policy decisions" and that the withheld documents "contain predecisional policy recommendations." Suppl. Hardy Decl. ¶ 9. This is not mere ipse dixit. The Hardy Declarations and *Vaughn* Index provide sufficient detail about the policies and decisions at issue in each

withheld category. In each, the FBI was evaluating its policies for conducting cyber investigations, including investigations into members of the news media and the use of NSLs.

The withheld Policy Implementation Guide was a draft in which "FBI employees were engaged in deliberate comments in order to help formulate the FBI's policies concerning how to conduct cyber investigations." *Vaughn* Index at 1. The withheld pages of the DIOG included draft operational directives about the use of NSLs. *Id.* at 2; *see also* Hardy Decl. ¶ 26. The withheld emails included exchanges between personnel from the FBI's Office of General Counsel about revising the Media Guidelines, including discussions of the legal implications of certain interpretations and applications of the guidelines. *Id.* at 5–6. And the withheld Media Guidelines were a red-lined draft with "comments, suggestions and proposed updates in the margin of the documents." Hardy Decl. ¶ 31. As such, these documents are both predecisional and deliberative, and thus fall squarely within the deliberative process privilege. *Carter*, 307 F.3d at 1089.

Plaintiff suggests that more detail is needed about the character of the decisions being made and how these documents influenced those decisions. *See* FPF MSJ at 20. Yet Defendant has already explained the nature of the withheld information. It need not disclose the specific comments or how the final policies ultimately changed in light of such feedback because that would create an end-run around the exemption. *See Mobil Oil Corp. v. U.S. E.P.A.*, 879 F.2d 698, 703 (9th Cir. 1989) ("[T]here is no merit to [the] argument that in order to establish the privileged character of a draft, [an agency] must show to what extent the draft *differs* from the final document. The effect of this would be to expose what occurred in the deliberative process between the draft's creation and the final document's issuance." (quotation omitted)). Plaintiff's reliance on *United States v. Rozet*, 183 F.R.D. 662, 666 (N.D. Cal. 1998), to argue otherwise is unavailing. That case merely stands for the proposition that even informal documents should be produced if they reflect an agency's existing guidelines or current understanding of its own policies.[2]

---

[2] Plaintiff points to four pages from a partially redacted email thread from February 2015 that it suggests are not deliberative since they contain solicitations from an FBI employee to OGC seeking advice on agency procedure. FPF MSJ at 22. But Defendant stated that these pages were also withheld as exempt under the attorney-client privilege. *Vaughn* Index at 5. The Court

13

Plaintiff next suggests that Exemption 5 cannot be invoked "where there is reason to believe the documents sought may shed light on government misconduct" because "shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997). Plaintiff's argument cannot be reconciled with the Ninth Circuit's opinion in *Hamdan*, which emphasized the deference given to government affidavits in cases involving national security issues. 797 F.3d at 769. The Court highlighted that "government misconduct is easy to allege and hard to disprove, so courts must insist on a meaningful evidentiary showing." *Id.* (citing *Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 175 (2004)) (internal quotation marks omitted). It was not enough in *Hamdan* for the plaintiffs to "pepper[] their briefs with allegations of FBI involvement in Hamdan's abduction and torture by Emirati authorities, and suggestions that the agencies' withholdings . . . are calculated to cover up proxy detention practices that allegedly would allow suspects to be detained and tortured by foreign governments." *Id.* at 772–73. So too here. Moreover, general allegations of misconduct are insufficient to overcome the deliberative process privilege because "disproving the general, substantive allegations of misconduct is not the government's obligation in FOIA litigation." *Lahr*, 569 F.3d at 980. Plaintiff does not point to any specific, contemporaneous misconduct that may warrant disclosure, nor does it provide any evidence of such misconduct.

### b. Attorney-Client Privilege

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). To claim the privilege, a party must show: (1) a communication; (2) between privileged persons; (3) made in confidence; (4) to solicit or provide legal advice. *See United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002), *as amended on denial of reh'g* (Mar. 13, 2002).

Defendant withheld information under the attorney-client privilege for two categories of

---

discusses this exemption below in Section III.D.iii.a.

documents: (1) NSL PowerPoint training presentation and (2) internal emails. Hardy Decl. ¶¶ 53–54; Suppl. Hardy Decl. ¶¶ 11–12. The PowerPoint presentation was created to train employees on the issuance of NSLs. Hardy Decl. ¶ 28; Suppl. Hardy Decl. ¶ 12. Defendant withheld portions of the PowerPoint presentation that contained legal advice from the OGC to FBI employees on the use of NSLs as an investigative technique. Suppl. Hardy Decl. ¶¶ 11–12. The PowerPoint presentation was, at least in part, the method by which OGC provided FBI employees with legal advice. *Id.* ¶ 12. The withheld portions described legal issues and scenarios involving the use of NSLs. *Id.* The withheld emails similarly conveyed legal advice from OGC to FBI employees about the use of NSLs. *Id.* Any public information contained in the emails was intertwined with the attorneys' legal advice in light of specific and general scenarios. *Id.* The information was not otherwise disclosed outside the agency. *Id.*

Plaintiff argues that Defendant failed to describe in sufficient detail the nature of the withheld legal advice and to whom this legal advice was disseminated. Plaintiff further suggests that because the documents were not all marked "confidential" Defendant cannot claim the privilege.

The Court disagrees and finds that Defendant has provided sufficient detail to demonstrate that the privilege applies to the withheld documents. Defendant explained that the withheld information involved advice solicited from or given by the OGC to FBI employees regarding the issuance of NSLs and their use as an investigative technique. *See, e.g.*, Suppl. Hardy Decl. ¶¶ 11–12. The *Vaughn* Index similarly provides a reasonable description of the legal issue in question. *Vaughn* Index at 3–5, 7. The PowerPoint presentation in particular was a training tool for employees on the use of NSLs. Suppl. Hardy Decl. ¶ 12. That some of the documents were not marked confidential is simply inapposite. *See In re Sealed Case*, 737 F.2d 94, 102 (D.C. Cir. 1984) ("[A]n express request for confidentiality is not required."). These documents were maintained internally and Plaintiff has not pointed to circumstances that would suggest Defendant otherwise waived the privilege.

### iv. Exemption 7(E) — Investigative Techniques and Strategies

Exemption 7(E) protects from disclosure law enforcement records that would reveal "techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *see also Hamdan*, 797 F.3d at 778 (rejecting argument that government must prove that disclosing its "techniques and procedures" would risk circumvention of the law). Because the FBI has a clear law enforcement mandate, it "need only establish a 'rational nexus' between enforcement of a federal law and the document for which [a law enforcement] exemption is claimed." *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 808 (9th Cir. 1995) (quotation omitted).

Defendant withheld information from five categories of documents under Exemption 7(E): (1) Policy Implementation Guide; (2) DIOG; (3) Media Guidelines; (4) NSL PowerPoint training presentation; and (5) internal emails regarding the creation and revision of the Policy Implementation Guide, DIOG, and Media Guidelines.

Plaintiff's challenge to Defendant's use of Exemption 7(E) is narrow. First, Plaintiff argues that Defendant improperly withheld information because Defendant failed to provide an adequate explanation of what was withheld and how disclosure would risk circumvention of the law. Second, Plaintiff argues exemption was improper because the use of NSLs is already publicly known.

Here too, however, the Court finds Defendant has met its burden and properly withheld documents under Exemption 7(E) for all five categories of documents. Defendant described with particularity that the withheld documents all contained non-public information about the FBI's investigative techniques and procedures. These pages not only identified NSLs as an investigative technique, but also described information such as the circumstances under which the techniques should be used, how to analyze the information gathered through these techniques, and the current focus of the FBI's investigations. *See, e.g.*, Hardy Decl. ¶¶ 66–67; Suppl. Hardy Decl. ¶¶16–17. As in *Hamdan*, the Court concludes that the declarations, which state that further detail would "reveal[] the very information it seeks to protect," Suppl. Hardy Decl. ¶ 13, are sufficient to satisfy

Defendant's burden. *Hamdan*, 797 F.3d at 778; *accord Lewis-Bey v. U.S. Dep't of Justice*, 595 F. Supp. 2d 120, 138 (D.D.C. 2009) (upholding government's withholding of "the circumstances under which [electronic surveillance] techniques were used, the specific timing of their use, and the specific location where they were employed.").

Plaintiff misreads the statute in demanding an explanation for how disclosure of these techniques would harm the FBI's interests. The Ninth Circuit rejected this very argument in *Hamdan*, finding it "an unpersuasive reading of the statutory text and structure." *Hamdan*, 797 F.3d at 778. Even so, Defendant provided over twelve pages of additional explanation in the Supplemental Hardy Declaration. *See* Suppl. Hardy Decl. at 9–21. Defendant explains, for example, that "[a]ccess to such detailed information would greatly increase the risk that potential lawbreakers would be able to evade detection and/or be emboldened to engage in criminal activities" as they could "improve the ability of such individuals to take countermeasures to circumvent the effectiveness of the techniques and to continue to violate the law and engage in intelligence, terrorist, and criminal activities." *Id.* ¶¶ 16–18, 20. Withholding information about the logistics of where and to whom information is reported is similarly essential to prevent individuals from "seek[ing] to sway, infiltrate, or otherwise undermine the FBI operations . . . ." *Id.* ¶ 19.

### v.   Official Acknowledgment

Plaintiff argues that even if an exemption otherwise applies, five paragraphs of Section 18 and Appendix G of the DIOG have already been publicly released by the FBI in unclassified form and thus that information cannot be withheld. FPF MSJ at 34. An official acknowledgment requires that the information requested be as specific as the information previously released, match the information previously disclosed, and already have been made public through an official and documented disclosure. *Pickard v. Dep't of Justice*, 653 F.3d 782, 786 (9th Cir. 2011) (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990)). Plaintiff "bear[s] the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Wolf v. CIA*, 473 F.3d at 378. Here, although Plaintiff has pointed to an unclassified version of Appendix G, it has missed the critical step of specifying how the material being

withheld "matches" any previously disclosed material. Without more specificity, the Court cannot conclude that Defendant waived its ability to assert any FOIA exemptions.

### vi. Segregability

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed." *Pac. Fisheries, Inc.*, 539 F.3d at 1148. Nevertheless, the agency is also "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). Similarly, the Court "may rely on an agency's declaration in making its segregability determination. Agency affidavits that are sufficiently detailed are presumed to be made in good faith and may be taken at face value." *Hamdan*, 797 F.3d at 779. The Court "need not conduct a page-by-page review of an agency's work." *Id.*

Although the segregability paragraph is boilerplate, the Court finds that Defendant has met its burden through its tailored explanations of the withheld documents. Defendant conducted an extensive review of the documents in question, including "a line by line review of the responsive records." Hardy Decl. ¶ 24. Defendant also provided a description as to why it withheld particular documents — and even why it withheld particular *pages* — in whole or in part following that review. Defendant similarly avers that it "has made every effort to provide plaintiff with all material in the public domain and has taken all reasonable efforts to ensure that no segregable, nonexempt portions were withheld from the plaintiff." *Id.* Plaintiff's only argument in response is that the sheer volume of pages withheld under the deliberate process doctrine "suggests that the FBI likely has failed to make an adequate effort to segregate non-exempt material from exempt material, as FOIA requires." FPF MSJ at 35. The question is not whether Defendant withheld numerous pages, but rather whether they were properly withheld and segregated. Plaintiff's speculative suggestion is not enough to overcome the presumption of good faith. *Hamdan*, 797 F.3d at 779.

### vii. In Camera Review

The Court can review documents *in camera* to determine whether exemptions have been properly asserted. 5 U.S.C. § 552(a)(4)(B). *In camera* inspection, however, should "not be resorted to lightly," *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987), and is "disfavored" where "the government sustains its burden of proof by way of its testimony or affidavits." *Lion Raisins v. Dep't of Agric.*, 354 F.3d 1072, 1079 (9th Cir. 2004). "*In camera* inspection is particularly a last resort in national security situations like this case — a court should not resort to it routinely on the theory that it can't hurt." *ACLU v. Dep't of Def.*, 628 F.3d 612, 626 (D.C. Cir. 2011). The Court finds that *in camera* review is unnecessary here as Defendant already provided sufficiently detailed factual information in support of its exemptions in the Hardy Declarations and *Vaughn* Index. As discussed, Plaintiff has failed to overcome the good faith presumption to which they are entitled. *Hamdan*, 797 F.3d at 770.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Defendant is entitled to summary judgment on Plaintiff's FOIA claim. Accordingly, Defendant's Motion for Summary Judgment is GRANTED in its entirety, and Plaintiff's Motion for Summary Judgment is DENIED. The clerk is directed to enter judgment in favor of Defendant and close the file.

**IT IS SO ORDERED.**

Dated: 3/13/2017

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge